**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICIA A. POWERS-BUNCE, Individually,** ) | |
| **and as Personal Representative of the** ) | |
| **ESTATE OF TERENCE ANTHONY POWERS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DISTRICT DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR
SUMMARY JUDGMENT**

Defendants, District of Columbia (the "District"), Chief Charles H. Ramsey, Commander

Larry D. McCoy and Sergeant Regina W. Gamble, by and through undersigned counsel and

pursuant to Fed. R. Civ. P. 12(b)(6) and 56, hereby move this Court to dismiss the plaintiff's

Complaint, and/or in the alternative, to grant summary judgment on their behalf.  A

Memorandum of Points and Authorities in support of this Motion is attached hereto.  Because

this is a dispositive motion, the District defendants are not required to seek the plaintiff's consent

pursuant to LCvR 7.1(m).

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

_____/s/_____

DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, and as Personal Representative of the ESTATE OF TERENCE ANTHONY POWERS )<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.,*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 06-1586 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DISTRICT DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendants, District of Columbia (the "District"), Chief Charles H. Ramsey, Commander Larry D. McCoy and Sergeant Regina W. Gamble, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 56, hereby move this Court to dismiss the plaintiff's Complaint and/or grant summary judgment in their favor for the following reasons:

1) All common law and constitutional claims against the "Watch Commander" should be dismissed because he/she has not been named or served, nor has the plaintiff alleged any wrongdoing by him/her;

2) All constitutional claims against the District defendants based on the decedent's suicide must fail because there was no constitutional violation, therefore, the District could not be liable for failure to train and/or supervise;

3) All constitutional claims against the District employees based on the decedent's suicide must fail because a suit against the individuals in their official capacity is equivalent to a suit against the District, there is no *respondeat superior* liability, the plaintiff did not allege

any wrongdoing by any of the District employees and, alternatively, the employees are entitled to qualified immunity; and

4) All common law claims against the District defendants based on the decedent's suicide must fail because the plaintiff did not give proper notice consistent with D.C. Code § 12-309, the plaintiff's wrongful death claim is barred by the statute of limitations, the plaintiff has not satisfied the elements of a gross negligence claim and therefore, the District could not be liable for failure to train and/or supervise, and there are no allegations of wrongdoing against any of the individuals.

### *STANDARD OF REVIEW*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). The movant, therefore, is entitled to judgment if there are no allegations in the complaint that, even if proven, would provide a basis for recovery. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Although the non-moving party enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of his complaint, bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Id.* The court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

On the other hand, summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the movant has the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the "moving party is not required to support its motion for summary judgment with 'affidavits or other similar materials *negating* the opponent's claim.'" *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003). At this point, then, "the burden shifts to the non-movant to 'come forward with 'specific facts showing that there is a genuine issue for trial.'" *Shaw v. District of Columbia*, 2006 U.S. Dist. LEXIS 26904 *14 (internal citations omitted).

Fed. R. Civ. P. 56(e) reinforces that the plaintiff's response to the District defendants' Motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but the [plaintiff's ] response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial." To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Moreover, if the plaintiff "does not so respond, summary judgment, if appropriate, shall be entered" against her. Fed. R. Civ. P. 56(e).

By either burden of proof, the plaintiff's claims against the District defendants cannot stand. Therefore, the Court should grant the instant Motion.

## *BACKGROUND*

On July 15, 2004, the decedent, Terence Anthony Powers, was stopped by USSS Officers Burdyn and Giles for running a red light at an intersection in Washington, DC.  (Complaint at ¶ 10.)  A subsequent WALES check revealed that Mr. Powers' driving status was suspended. (Complaint at ¶ 13.)  After cocaine was found in Mr. Powers' car, the USSS officers arrested Mr. Powers for possession with intent to distribute a controlled substance and for not having a valid drivers' permit. (Complaint at ¶ 15.)

Later that same day, at or around 0130 hours, Mr. Powers was transported by the USSS to the 3rd District of the Metropolitan Police Department.  (Complaint at ¶ 16.)  At or around 0200 hours, Mr. Powers was placed in a cell at the 3rd District.  (Complaint at ¶ 17.)  "Mr. Powers, who had earlier allegedly expressed concern about facing possible jail time[,] was left alone in [a cell that was "partially blocked from view"] … and not permitted to make a phone call or make any other contact."  (Complaint at ¶ 17.)  Notably, the plaintiff does not allege that any such statement made by the decedent was conveyed to representatives of the Metropolitan Police Department ("MPD").

Plaintiff also alleges that "Defendants did not check on Mr. Powers while he was alone in his jail cell between 0230 hours and 0416 hours," and that the "failure or refusal to check on or otherwise observe Mr. Powers [in his cell from 0230 to 0416] … was in direct violation of the general orders, policies and procedures of Defendant MPD."  (Complaint at ¶ 21.)[1]  According to the Complaint, "[t]here is no videotape of Mr. Powers' confinement while at the 3rd Precinct ..." (Complaint at ¶ 30.)

---

[1] Notably, the Complaint does not identify the specific general orders, policies and/or practices that the defendants allegedly violated.

At or around 0416 "Defendants found Mr. Powers hanging from the bars of the jail cell by a pair of tube socks tied in a knot…. Medics where summoned and confirmed there was no sign of life." (Complaint at ¶ 22 – 23.) The medical examiner determined that the cause of death was "suicide by hanging." (Complaint at ¶ 24.)

On July 14, 2006, almost two years after Mr. Powers' suicide, the plaintiff, through his representative, filed suit in the Superior Court for the District of Columbia against the District of Columbia, Chief Charles H. Ramsey, Commander Larry D. McCoy, a "Watch Commander," and Sergeant R.W. Gamble. The plaintiff also named as defendants Mark Sullivan, Director of the United States Secret Service ("USSS"), the Chief of the Uniformed Division of the USSS and USSS Officers Burdyn and Giles.[2] On September 13, 2006, the District of Columbia removed the case to this Honorable Court.

The Complaint alleges six counts based on the above facts. Count I is a broad claim that the decedent's constitutional rights were violated pursuant to the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution. (Complaint at ¶ 28 - 33.) Count II is a claim of intentional infliction of emotional distress. Count III is a claim of gross negligence based both on the acts of the USSS officers and MPD. (Complaint at ¶ 40.) Count IV is a survival action pursuant to D.C. Code § 12-101. Count V is a wrongful death claim pursuant to D.C. Code § 16-

---

[2] At numerous times in the Complaint, the plaintiff alleges that the United States Secret Service ("USSS") agents, defendants Burdyn and Giles, were acting as agents of the District of Columbia and, in so doing, attempts to hold the District liable for Burdyn and Giles' alleged violations. (See Complaint at ¶ 15, 31, 35, 38.) However, pursuant to 18 U.S.C. § 3056 and § 3056(A), the United States Secret Service ("USSS") Uniformed Division is a federal executive agency and not a branch of the District government. See 18 U.S.C. § 3056(g) ("The United States Secret Service shall be maintained as a distinct entity within the Department of Homeland Security and shall not be merged with any other Department function."). In fact, the plaintiffs concede in their Complaint that the USSS "is an agency of the United States Government." (Complaint at ¶ 6.) They also concede that the "Chief of the Uniformed Division of the USSS, [Burdyn] and Giles, at all times relevant hereto, were members of and employed by the USSS." (Complaint at ¶ 8.) These statutory sections and plaintiff's concessions make clear that, as the USSS is a federal executive agency, the District has no control or responsibility for the actions of USSS officers. Therefore, any constitutional and/or common law claims against the District based on USSS Officers Burdyn and Giles' actions must be dismissed for failure to state a claim upon which relief can be granted. This includes claims based on facts that occurred before the plaintiff's decedent was even transported to an MPD station and any claims based on the initial stop, search and seizure of the plaintiff's decedent by the USSS.

2701.  Count VI is entitled "Direct Liability to the District of Columbia for Failure to Train and Supervise."

According to the Complaint, the plaintiff sued a "Watch Commander" from the 3rd District.  However, upon information and belief, the plaintiff has not, to date, named or served the Watch Commander.

On or around October 27, 2004, the plaintiff sent a letter entitled "Notice of Claim" to Gregory Jackson, then-General Counsel for the Department of Corrections, which reads in its entirety:

> Pursuant to D.C. Code § 12-309 (2004), this letter is to serve as formal notice to the Mayor of a pending action against the District of Columbia. On July 15, 2004, the claimant suffered the death of her son, Terence Anthony Powers (case # 04-1745), as a result of his being involuntarily detained at the District of Columbia Jail.  Mr. Powers died while in the custody of the District of Columbia Department of Corrections.  The Department of Corrections failed to perform the duty of care and protection owed to Mr. Powers.  Due to this failure, the claimant lost her son.

(Exhibit A.)

### *ARGUMENT*

I.    **ANY CLAIMS AGAINST THE "WATCH COMMANDER" MUST BE DISMISSED BECAUSE THE PLAINTIFF FAILED TO NAME AND TIMELY SERVE HIM/HER.**

In this case, the plaintiff named a Watch Commander at the 3rd District station as a defendant in this matter.  However, upon information and belief, the Watch Commander has not been named or served in this matter.  In addition, the plaintiff did not allege any particular wrongdoing by the Watch Commander.  Therefore, the District respectfully requests that the Court dismiss all common law and constitutional claims against the Watch Commander.

**II.    PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST THE DISTRICT DEFENDANTS MUST FAIL.**

    **A.    All Constitutional Claims Against the District Defendants Based on the Decedent's Suicide Must be Dismissed as a Matter of Law Because the Plaintiff Has Not Alleged a Constitutional Violation.**

Notably, the Complaint alleges that Mr. Powers' Fifth, Eighth and Fourteenth Amendment rights were violated because the defendants "showed deliberate indifference for his safety and well-being." (Complaint at ¶ 28.) This Court should dismiss plaintiff's constitutional claims because the plaintiff has failed to assert sufficient facts to establish such claims.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court reaffirmed the principle that the rights of convicted persons under the Eighth Amendment is extended to pretrial detainees under the due process clause of the Fourteenth Amendment. *Id.* at 537 n.16, *citing*, *Ingraham v. Wright*, 430 U.S. 651, 671-72, n.40 (1977) ("Where the State seeks to impose punishment without such an adjudication [of guilt], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.") However, as the District of Columbia is not a state, the Fourteenth Amendment is *per se* inapplicable, but the protections contained therein are extended to District residents through the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).[3] Therefore, in this case, the same substantive principles that

---

[3] The Supreme Court has been reluctant "to expand the concept of substantive due process because the guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Albright v. Oliver*, 510 U.S. 266, 272-73 (1994), quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Accordingly, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright*, 510 U.S. at 272. Furthermore, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273, quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989).

would guide an analysis of an Eighth Amendment violation apply in the instant case through the due process mechanism of the Fifth Amendment.[4]

Accordingly, in order to determine whether, as a matter of law, the plaintiff has asserted sufficient facts to make out a claim that the District defendants were deliberately indifferent to Mr. Powers' health and safety, as alleged in the Complaint, the Court should apply the two-prong test established by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994). First, the alleged deprivation must be sufficiently serious, meaning that the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, *quoting, Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, the official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, *quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state a claim and establish liability, a government official must be "'deliberate[ly] indifferen[t]' to a substantial risk of serious harm to [a pretrial detainee]." *Id.* at 828. In explaining the standard of deliberate indifference, the *Farmer* Court stated that there could not be governmental liability "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The District defendants will address each of these elements in turn.

---

[4] *See Payne v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998) ("A pretrial detainee has not been found guilty of a crime and therefore may not be 'punished' by the state … With respect to his treatment while in custody, the detainee is protected by the Due Process Clause of the Fourteenth Amendment; that protection is at least as great as the protection a convicted prisoner is afforded under the Eighth Amendment … As the Supreme Court made clear recently in *County of Sacramanto v. Lewis*, 523 U.S. 833 (1998), a detainee therefore is protected from the "deliberate indifference" of prison officials: Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners … it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial.").

1. <u>The Plaintiff Has Not Alleged Any Facts to Show That a District Employee Had Notice that the Decedent Had a Serious Medical Need.</u>

Upon information and belief, this Circuit has not decided whether a risk of suicide is a serious medical need under the Fifth or Eighth Amendment.[5] The United States District Court for the District of Columbia, however, has provided some guidance to assess whether the facts of this case merit the conclusion that the plaintiff's decedent presented a serious medical need. In *Cox v. District of Columbia*, the Court acknowledged that a "medical need qualifies as serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Charles 2X (Cox) v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992) (internal citations omitted).

In this case, the Complaint lacks any allegations that government officials had knowledge that Mr. Powers was either predisposed to committing suicide or had a serious medical need. A review of the Complaint reveals that that plaintiff has not alleged any facts that Mr. Powers had been diagnosed by a physician as requiring treatment. In fact, there are no facts in the Complaint that, even taken as true, would support the conclusion that the alleged risk of Mr. Powers' suicide was "so obvious" that even a lay person would recognize the need for medical attention.

---

[5]     The District acknowledges that other circuits have concluded that mental health needs are considered serious medical needs. That being said, undersigned counsel has observed that other circuits have resolved this issue of whether a risk of suicide is a serious medical need in slightly different ways. For instance, the following circuits have identified suicidal tendencies or a generalized risk of suicide as a serious medical need. *See Perez v. Oakland County*, 2006 FED App. 0382P (6th Cir.) (internal citations omitted) ("This court has also said more specifically that "a prisoner's ... 'psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies."); *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir 2000) (internal citations omitted) ("It was also well established on June 11, 1994, that a risk of suicide by an inmate is a serious medical need."); *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3rd Cir. 2005) (internal citations omitted) ("A particular vulnerability to suicide represents a serious medical need ... There must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.").
        Other courts, including the Fourth Circuit, appeared to conclude that a "significant" or "substantial" risk of suicide is a serious medical need. *See Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001) ("A substantial risk of suicide is certainly the type of 'serious harm' that is contemplated by the first prong of *Farmer*.."); *Payne v. Churchich*, 161 F.3d 1030, 1042 (7th Cir. 1998) ("our cases dealing with § 1983 claims based on a pretrial detainee's suicide have held that a state actor like Deputy Papa can be held liable for a detainee's suicide only if the defendant was deliberately indifferent to a substantial suicide risk.").

Here, the only statement in the Complaint relating to the alleged risk of suicide for Mr. Powers is the statement that: "Mr. Powers, who had earlier allegedly expressed concern about facing possible jail time was left alone in this isolated area and not permitted to make a phone call or make any other contact." (Complaint at ¶ 17.) However, this bare allegation is not enough to establish a constitutional claim against the District. The plaintiff does not even claim that the above statement was made to a District employee. Moreover, the statement in no way makes it obvious that the plaintiff's decedent required medical attention. Accordingly, the Court cannot find that there was a Fifth Amendment violation because the District employees had no notice that the decedent had a serious medical need. Therefore, any constitutional claims based on the decedent's suicide must be dismissed.

2.    The Plaintiff Has Not Alleged Any Facts to Support the Conclusion that the District or Any District Employee Was Deliberately Indifferent to a Substantial Risk of Serious Harm.

Alternatively, the plaintiff's Fifth Amendment claim must fail because the plaintiff has not alleged that any District employee was deliberately indifferent to a substantial risk of harm. A review of decisions from two other circuits involving pretrial detainee suicides are instructive to the analysis of whether, as a matter of law, the District or its employees were deliberately indifferent to the plaintiff's alleged medical needs.

In *Barber v. Salem*, 953 F.2d 232 (6th Cir. 1992), a case that has striking factual similarities to the instant case, the decedent had been arrested for driving under the influence and driving without a valid license. *Id.* at 233. After his arrest, the decedent expressed "concern over his job, his engagement, and his ability to obtain custody of his young son due to his arrest." *Id.* at 240. Shortly thereafter, the decedent was placed alone in a jail cell and could not be observed. *Id.* The decedent subsequently hung himself. *Id.* The plaintiff sued the individual

officers and the city, claiming that each violated the decedent's due process rights by failing "to properly screen Kenneth Robert Barber for suicidal tendencies and to take proper precautions to deter his suicide" and failure "to train police officers to detect suicidal tendencies and to take precaution to deter suicide including the failure to modify the jail in such a way as to discourage suicides" respectively. *Id.* at 236.

The Sixth Circuit in *Barber* held that although "a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment." *Id.* at 235. Thereafter, the Court concluded that the decedent's comments were not "abnormal and would not alert the jail authorities to a strong likelihood that Kenneth Robert Barber would commit suicide ..." *Id.* Moreover, the Circuit determined that "the failure to take special precautions in this case as to suicide prevention [did] not amount to a constitutional ... violation of deliberate indifference to Kenneth Robert Barber's serious medical needs. Moreover, where no constitutional violation exists for failure to take special precautions, none exists for failure to promulgate policies and to better train personnel to detect and deter jail suicides." *Id.*

In *Payne v. Churchich*, 161 F.3d 1030 (7th Cir. 1998) (internal citations omitted), the plaintiff claimed that the police officer should have known that the decedent, a pretrial detainee, intended to kill himself because "his tattoo questioned life and because he cursed angrily." *Id.* at 1042. The Seventh Circuit acknowledged that "[w]hen the § 1983 claim is based on a jail suicide, the degree of protection accorded a detainee is the same that an inmate receives when raising an inadequate medical attention claim under the Eighth Amendment-- deliberate indifference." *Id.* at 1041 (other internal citations omitted). Applying that standard, the Court concluded that there was no due process violation based on these facts:

> [W]e do not believe that the allegations in the complaint about Mr. Hicks' conduct and tattoo message, without more, indicate an obvious, substantial risk of suicide. There is no allegation of Mr. Hicks' suicidal tendencies, no claim or evidence of past suicide attempts or warnings from family members of a mental disturbance and suicidal condition. ... Mr. Hicks' behavior was not alleged to be increasingly bizarre, erratic or wild. ... None of the facts alleged in this case--Mr. Hicks' intoxication, cursing and tattoo--raises an issue of whether Deputy Papa had knowledge of, or even particular **...** reason to suspect, a substantial risk of suicide on Mr. Hicks' part.

*Id.* at 1042.  Accordingly, the Court dismissed the plaintiff's federal constitutional claims.  *Id.*

As with *Barber* and *Payne*, the Complaint in this case does not allege any conduct on the part of District employees that can lead to an inference of deliberate indifference.  The only statement that the plaintiff can rely upon to make its case of a constitutional violation is paragraph 17, which states: "Mr. Powers, who had earlier allegedly expressed concern about facing possible jail time was left alone in this isolated area and not permitted to make a phone call or make any other contact."  (Complaint at ¶ 17.)  However, this statement was not made to any of the named District defendants or any District employee.  For that reason alone, any claim of a constitutional violation should be dismissed because the Complaint does not even allege that District officials even talked to plaintiff's decedent.  Even if the Complaint alleged that this statement about his concern of facing jail time was made to a District employee, like in *Barber,* the decedent's generalized concerns about serving jail time simply do not give the District any notice that Mr. Powers might be suicidal.  Moreover, as in *Payne*, there are no facts in the Complaint of bizarre or erratic behavior by the decedent.  Very simply, the plaintiff cannot meet her burden of proof under *Farmer.*  There are no allegations that a District officer knew of an excessive risk to Mr. Powers' health or safety or, more seriously, that such a risk was disregarded.

Accordingly, none of the allegations presented in the Complaint can lead to an inference that the District of Columbia or its employees were deliberately indifferent to Mr. Powers' medical needs.  Based on these facts—which are all that is alleged with regard to the District's conduct or its employees' conduct—the plaintiff does not allege unconstitutional conduct on the part of the District of Columbia or its employees.

3.    Any Constitutional Claim Based on MPD's Alleged Violation of its General Orders, Policies and Procedures Must Fail.

In Count I, which is entitled "Violations of Civil Rights," the plaintiff alleges that the defendants' alleged "violations of MPD general orders, policies and procedures … violat[ed] his constitutional rights under the 5th, 8th, and 14th Amendments of the U.S. Constitution." (Complaint at ¶ 28.)  Further, the Complaint alleges, "[t]here is no videotape of Mr. Powers' confinement while at the 3rd Precinct in violation of the MPD general orders, policies and procedures."  (Complaint at ¶ 30.)  Moreover, the Complaint also alleges that the "failure or refusal to check on or otherwise observe Mr. Powers [in his cell from 0230 to 0416] … was in direct violation of the general orders, policies and procedures of Defendant MPD."  (Complaint at ¶ 21.)[6]

However, this Court should dismiss all constitutional claims against MPD (or the District) that are predicated on a claim that MPD violated its own general orders, policies and procedures, because such evidence may be relevant to the standard of care in *negligence* claims, not constitutional claims.  "Agency protocols and [procedures], like agency manuals, do not have the force or effect of a statute or an administrative regulation. Rather, they … provide officials with guidance on how they should perform those duties which are mandated by statute or regulation."  *Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C. 1990) (internal citations

---

[6] Notably, the Complaint does not identify the specific general orders, policies and/or practices that the defendants allegedly violated.

omitted). Accordingly, any assertion by the plaintiff that the District violated an agency order, policy or procedure does not support a claim that the District violated the Fifth, Eighth and/or Fourteenth Amendment rights of the decedent.

For instance, in the case of *District of Columbia v. Walker*, 689 A.2d 40, 47 (D.C. 1997), the Court of Appeals addressed, in post-trial motions, the District's liability under the D.C. Employee Non-Liability Act (D.C. Code § 1-1212) as the result of a high-speed police chase. In that case, MPD General Order 301.3, an internal police guideline relating to the "initiation and continuation of vehicular pursuits," was admitted into evidence. *Id.* at *47 n.12. The Court ultimately determined that "evidence that the police violated the general order was one factor that the jury could consider, [but that] liability would attach only if the MPD officers were grossly negligent with reference to the national standard of care." *Id.* at 47 n.13. *See also District of Columbia v. Banks*, 646 A.2d 972, 983 (D.C. 1994) (Farrell, J., concurring) (internal citations omitted) (the General Order "'provides officials with guidance on how they should perform those duties . . . mandated by statute or regulation' but is not itself a regulation whose violation by itself may support a finding of negligence, let alone gross negligence."). Therefore, any constitutional claim predicated on an alleged failure to comply with general orders, practices and procedures should be dismissed.

> **B.    The Plaintiff Has Failed to State Facts That the District's Failure to Train and Supervise Its Officers Rose to the Level of a Constitutional Violation So as to be the Cause of Mr. Powers' Death.**

In Count VI of the Complaint, the plaintiff alleges that the "city's failure to properly train and supervise its officers demonstrates a gross disregard for constitutional rights and was directly related to the death of Terence Anthony Powers and to the injuries and damages suffered by his survivors." (Complaint at ¶ 51.)

It is well-established that the District of Columbia courts have recognized that a "municipality cannot be held liable under section 1983 in a detainee suicide case unless the inadequate police training alleged and proved rises to the level of a 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Dorman v. District of Columbia*, 888 F.2d 159, 163 (D.D.C. 1989), *citing*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

However, as demonstrated above, the facts of this case, though tragic, simply do not rise to the level of a constitutional violation. There are no facts that any District official, including those officials named as defendants, had any knowledge whatsoever that Mr. Powers had a serious medical need or that his behavior made it obvious that he had such a need. Therefore, based on the allegations in the Complaint, there are simply no facts or evidence to support the plaintiff's broad assertion that the District employees were deliberately indifferent to Mr. Powers' needs. *See* Part II(A). Moreover, the plaintiff failed to state any specific facts from which the Court could conclude that the District's alleged inadequate policy of training and/or supervising its employees was "directly related" to the injuries suffered by the plaintiff's decedent. In the absence of any facts to support the plaintiff's claim that the District or its employees violated Mr. Powers' rights, the plaintiff cannot recover against the District under the theory of failure to train and/or supervise. *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) ("Plaintiffs have not established the deprivation of any constitutional … right … and the Section 1983 claim against the District of Columbia [for failure to train] therefore cannot be sustained.").

**C.    All Claims Against the Individual District Defendants Must be Dismissed As a Matter of Law.**

    1.    <u>A Suit Against Any District Employees in Their Official Capacity Is Duplicative of A Suit Against the District.</u>

The Complaint does not indicate whether the District employees are being sued in their individual or official capacities. However, a review of the Complaint makes clear that there is no wrongdoing alleged against any of the named District employees. (*See* Complaint, generally; Part II(C)(3) *infra.*) Therefore, it is reasonable to interpret the Complaint to be a suit against the District employees in their official capacity only.

However, "there is no longer a need to bring official capacity actions against local government officials, for . . . local government units can be sued directly . . ." *Kentucky v. Graham*, 473 U.S. 159, 165-168 (1985). A suit against District employees in his/her official capacity is equivalent to a suit against the District itself. *See Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (internal citations omitted) ("When sued in their official capacities, government officials are not personally liable for damages … A section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself."). Since the plaintiff has already named the District as a defendant, the constitutional claims against all of the named District employees, including Commander McCoy, Sergeant Gamble, Watch Commander, and Chief Ramsey should be dismissed with prejudice.

    2.    <u>Respondeat Superior is Inapplicable in 42 U.S.C. § 1983 cases.</u>

The Complaint alleges that "Defendants District of Columbia, MPD, Commander McCoy, the Watch Commander, Sgt. Gamble [and the other federal defendants] are vicariously liable on the basis of *respondeat superior* for any violations of Mr. Powers' civil and/or

constitutional rights."  (Complaint at ¶ 32.)[7]  Under Section 1983, however, individual government employees cannot be held vicariously liable for the unconstitutional actions of others.  *See Arnold v. Moore*, 980 F. Supp. 28, 35 (D.D.C. 1997) (internal citations omitted) ("It is well settled that public officials are not vicariously liable for the acts of their subordinates.  Respondeat superior cannot form the basis for liability under § 1983.").  *See also Fields v. District of Columbia Department of Corrections*, 789 F. Supp. 20, 22 (D.D.C. 1992) (internal citations omitted) ("It is clear that fellow government employees cannot be held liable under the theory of respondeat superior for either constitutional or common law torts").  Therefore, any claims of individual liability under the theory of *respondeat superior* must be dismissed with prejudice.

        3.      <u>The Complaint Identifies No Specific Wrongdoing by Any of the District Employees Named in the Complaint.</u>

The Complaint further alleges that "[e]ach and every Defendant is also liable for their direct violations of Mr. Powers' civil and constitutional rights."  (Complaint at ¶ 32.)  This allegation lacks merit because the individual defendant must be alleged to have *personally* committed or participated in the unconstitutional act.  *See, e.g., Nowlin v. Director, Dist. of Col. Dep't of Corr.*, 689 F. Supp. 26, 27 (D.D.C. 1988) (prerequisite to individual liability under § 1983 is "a showing of direct responsibility for the improper action").  Here, however, the Complaint identifies no particular wrongdoing by any of the District defendants.  Aside from the mention that "[d]efendants Ramsey, McCoy, Watch Commander and Gamble at all times relevant hereto, were police officers employed by MPD," the plaintiff does not allege any personal involvement between any of these individuals and the plaintiff's decedent.  (Complaint

---

[7] Notably, the Metropolitan Police Department ("MPD") is not even named as a defendant in this matter.  Even if it was, a suit against MPD must be dismissed because MPD is "*non sui juris*" and "is not an entity with the power to sue or be sued."  *Robinson v. District of Columbia*, 2005 U.S. Dist. LEXIS 3556 *9-10.  Therefore, any claim against MPD should be dismissed with prejudice

at ¶ 7)  Accordingly, any constitutional claims against any of these District employees must be dismissed with prejudice.

> 4.    Alternatively, the Named District Employees Are Entitled to
>       Qualified Immunity.

To the extent that the Court determines that the plaintiff's Complaint is a properly framed suit against the District employees in their individual capacity, and that the Complaint has identified specific wrongdoing by these employees, they are immune from suit in the instant case.

It is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002).  Qualified immunity arguments are especially appropriate early in the proceedings of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, *a ruling on that issue should be made early in the proceedings* so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added).  "As a result," the Supreme Court wrote, "'we repeatedly have stressed the importance of resolving immunity questions at the *earliest possible stage* in litigation.'"  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (emphasis added).

The Supreme Court outlined its two-part test for examining claims of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [Mayor's] conduct violated a constitutional right? … If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view

of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal citations omitted).[8]

The plaintiff's Complaint should be dismissed against all of the District employees because they are each entitled to qualified immunity. *See Barham v. Ramsey*, 2006 U.S. App. LEXIS 807 * 14 (internal citations omitted) ("Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").

In this case, in the absence of *any* facts describing any of the District employees' participation in—or even awareness of—any of the incidents described in the Complaint, the Court cannot answer the threshold question in the affirmative. The District employees are entitled to a dismissal of all claims because the plaintiff's complaint, even when viewed in the light most favorable to the plaintiff, does not state a constitutional violation committed by Chief Ramsey, Commander McCoy, Sergeant Gamble and/or the unnamed Watch Commander. See Part II *supra*. As argued earlier, there are no facts that the named District defendants were even present for any of the incidents described in the Complaint. Additionally, there are no facts that any District officials had notice that the plaintiff's decedent was suffering from a serious medical need. Mr. Powers neither communicated that he was suffering from any type of illness nor did he exhibit bizarre or questionable behavior that would raise an inference that he was ill. Moreover, there are no facts or evidence that any District employee acted with the intent to deprive the plaintiff's decedent with a minimal civilized measure of life's necessities. *Farmer*, 511 U.S. at 834.

---

[8] The *Saucier* Court also noted that "[t]his inquiry … must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." *Id.* at 201.

Furthermore, even if this Court was to determine that Mr. Powers' rights were violated, there was no constitutional right that had been clearly established in the District that would put any reasonable District officer on notice that, given the specific facts of this case, the alleged conduct violated Mr. Powers' rights. *See Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). As such, all of the District employees are entitled to qualified immunity and all constitutional claims against them should be dismissed with prejudice.

## III.    ALL COMMON LAW CLAIMS AGAINST THE DISTRICT DEFENDANTS MUST BE DISMISSED.

### A.    All Common Law Claims Against the District Are Barred Because the Plaintiff Failed to Give Notice As Required By D.C. Code § 12-309.

The plaintiff alleged several common law claims, including intentional infliction of emotional distress, gross negligence, survival action, wrongful death and a count entitled "Direct Liability to the District of Columbia for Failure to Train and Supervise." The Court must enter judgment in favor of the District on all of these common law claims for the incidents described in the Complaint because the plaintiff failed to give notice pursuant to D.C. Code § 12-309.

Under this statutory section:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

(D.C. Code § 12-309.)  The requirement of compliance with the time limit specified in § 12-309

is absolute, strict, and unqualified.  In *District of Columbia v. Dunmore*, the D.C. Court of

Appeals held that § 12-309 must be construed narrowly against claimants, writing:

> Section 12-309 is not, and does not function as, a statute of limitations.  Rather, it
> imposes a notice requirement on everyone with a tort claim against the District of
> Columbia, and *compliance with its terms is "mandatory as a prerequisite to filing
> suit against the District*." [citations omitted]

662 A.2d 1356, 1359 (D.C. 1995) (emphasis added).  For purposes of calculating the timeliness

of a § 12-309 letter, "the six-month clock begins to run from the moment the plaintiff sustains

the injury."  *Id.*; *see also DeKine v. District of Columbia*, 422 A.2d 981, 986 (D.C. 1980)

(affirming dismissal of action for false arrest where §12-309 letter arrived *one day* late); *Kelton

v. District of Columbia*, 413 A.2d 191, 921 (D.C. 1980) ("§ 12-309 starts the clock at the

moment 'the injury or damage was sustained'").

Here, the plaintiff's § 12-309 notice is attached hereto as Exhibit A.  It reads in its

entirety:

> Pursuant to D.C. Code § 12-309 (2004), this letter is to serve as formal notice to
> the Mayor of a pending action against the District of Columbia. On July 15, 2004,
> the claimant suffered the death of her son, Terence Anthony Powers (case # 04-
> 1745), as a result of his being involuntarily detained at the District of Columbia
> Jail.   Mr. Powers died while in the custody of the District of Columbia
> Department of Corrections.  The Department of Corrections failed to perform the
> duty of care and protection owed to Mr. Powers.  Due to this failure, the claimant
> lost her son.

(Exhibit A.)

The plaintiff's § 12-309 notice must fail as a matter of law for several reasons.  First, the

notice was not sent to the Mayor.  Rather, it was mailed to Gregory Jackson, the former General

Counsel for the Department of Corrections.  Moreover, there is no indication in the letter that a

copy of the notice was mailed to the Mayor.  Therefore, in the absence of any proper notice to the Mayor, all common law claims must be dismissed.

Second, the letter does not describe the "approximate time, place, cause, and circumstances of the injury or damage" as required by D.C. Code § 12-309.  In fact, the purported notice identifies a different place where the decedent died than the Complaint.  The notice states that the decedent was in the custody of the Department of Corrections and was at the D.C. Jail when he died.  However, the Complaint does not allege that the decedent was ever in the custody of the Department of Corrections or that he was ever at the D.C. Jail during the time frame described in the Complaint.  Rather, the Complaint alleges that the decedent was transported to the 3rd District MPD station, located at 16th and U Streets, NW, and died there.  (Complaint at ¶ 16, 19-23.)  The District would be unable to investigate this incident at the claims stage because the Department of Corrections had no record of Terrence Powers being incarcerated at the Jail.  Therefore, the failure to identify the proper place where the alleged injury occurred is a sufficient reason for this Court to conclude that the § 12-309 notice is defective.  *See Hunter v. District of Columbia*, 943 F.2d 69, 73 (D.C. Cir. 1991) (concluding that the plaintiff's § 12-309 notice was insufficient because "the letter gave neither the approximate time nor place of the injury, as required by the statute.").  Additionally, the plaintiff's purported § 12-309 notice did not identify the approximate time of the decedent's death.

Moreover, the § 12-309 letter does not aptly describe the "cause and circumstances of the injury or damage."  Surprisingly, the § 12-309 notice only states that the decedent "died while in the custody of the Department of Corrections."  (Exhibit A.)  Obviously, this statement has proven to be incorrect.  The letter further states that the "Department of Corrections failed to

perform the duty of care and protection owed to Mr. Powers.  Due to this failure, the claimant

lost her son."  (*Id.*)  This letter omits several important facts.

Significantly, the letter does not identify the actual cause of death, which the Medical

Examiner apparently ruled as "suicide by hanging."  (Complaint at ¶ 24.)  Moreover, it does not

identify what "duty of care and protection" was allegedly lacking and/or how this alleged failure

caused the decedent to hang himself while at the MPD station.  The notice lacks any

information that the District could understand as relating to a claim of intentional infliction of

emotional distress, gross negligence, survival action, wrongful death and/or direct liability for

failure to train and/or supervise.  For all of these reasons, the plaintiff's purported § 12-309

letter must fail and the Court should enter judgment in favor of the District on all of the

plaintiff's common law claims.

**B.    Plaintiff's Wrongful Death Claim is Barred By the Statute of Limitations.**

The plaintiff's Complaint recites that the wrongful death claim is brought pursuant to

D.C. Code § 16-2701 *et seq*.  However, the plaintiff is barred from pursuing this claim because

there is a one-year statute of limitations on this claim.  *See* D.C. Code § 16-2702 ("An action

pursuant to this chapter shall be brought by and in the name of the personal representative of the

deceased person, and within *one year* after the death of the person.") (emphasis added).  The

Complaint reads that the plaintiff's decedent died on July 15, 2004 and that the plaintiff learned

of her son's death on July 28, 2004.  (Complaint at ¶ 40.)  As the instant Complaint was filed in

Superior Court on July 14, 2006, almost two years after she learned of Mr. Powers' death, the

plaintiff's claim is barred by the statute of limitations.

**C.    The Complaint Does Not Allege that the District Had Any Notice that the Decedent Might Kill Himself.**

To state a claim of gross negligence, the plaintiffs must allege: "(1) that there is a duty of care owed to the plaintiffs by the defendants; (2) that there was a breach of that duty; (3) that there was damage to the plaintiff; and (4) that the breach of the duty by the defendants … proximately caused the damage." *See Lyles v. Micenko*, 2006 U.S. Dist. LEXIS 44260 *22-23.

Here, the only allegation that is relevant to the plaintiff's apparent conclusion that the District had a duty of care to prevent Mr. Powers' suicide is the following: "Mr. Powers, who had earlier allegedly expressed concern about facing possible jail time was left alone in this isolated area and not permitted to make a phone call or make any other contact." (Complaint at ¶ 17.)   The plaintiff also makes conclusory allegations about the "wanton" conduct of the defendants.  (Complaint at ¶ 39.)

Similar to the discussion above regarding the plaintiff's failure to allege constitutional violations, it appears that the Complaint alleges that the District and its employees were grossly negligent because it/they should have known that Mr. Powers might kill himself.[9]  However, this single sentence about the decedent expressing concern about being in jail *in no way* puts the District on notice that the decedent might kill himself.  In the absence of any factual allegations, the District could not reasonably know that the decedent might kill himself.  Accordingly, the

---

[9] Notably, however, "[t]he act of suicide generally is considered to be a deliberate, intentional, and intervening act which precludes a finding that a given defendant is, in fact, responsible for the decedent's death." *Washington Metro. Area Transit Auth. v. Johnson*, 726 A.2d 172, 177 (1987), *citing*, *Peters v. District of Columbia*, 527 A.2d 1269, 1275 (D.C. 1987).  The District of Columbia Court of Appeals has noted two exceptions to this rule.  The first exception is "where the defendant's conduct '*produces* an abnormal condition which results in an uncontrollable impulse to commit suicide.'" *Johnson, 726 A.2d at 177 n.8, citing, Peters,* 527 A.2d at 1276.  The second exception is the case of an "institution, such as a psychiatric hospital, having a duty of custodial care to the suicide victim." *Id.*, *citing*, *McLaughlin v. Sullivan*, 461 A.2d 123, 125 (N.H. 1983).  However, in the absence of any notice that Mr. Powers was at risk of killing himself, the District cannot be liable for the injuries described in the Complaint.

plaintiff has not alleged the requisite elements of a claim of negligence and/or gross negligence.[10]   Therefore, the Court should dismiss these claims against the District.[11]

D.    **In the Absence of Any Notice to the District that the Decedent Might Kill Himself, the District Cannot Be Liable for Failure to Train and/or Supervise.**

In Count VI, the plaintiff alleged that the District "failed to effectively instruct officers of [their] heightened duty to prevent injury and harm to detainees in their direct care and control." (Complaint at ¶ 50).  However, as shown above, in the absence of any alleged notice to the District that the decedent might harm himself, the District cannot be liable for failing to train and/or supervise its employees.

E.    **The Complaint Identifies No Specific Wrongdoing by Any of the District Employees Named in the Complaint.**

The plaintiff's common law claims against the District employees must fail because they fail to allege any wrongdoing by any of the District employees named as defendants.  *See* Part II(C)(3) *supra*.  In the absence of such allegations, the plaintiff's common law claims against the individual District defendants must be dismissed as a matter of law or in the alternative to enter judgment in favor of the District of Columbia.

WHEREFORE, for the reasons stated herein, the District defendants respectfully request that the Court dismiss all common law and constitutional claims against them.

---

[10] In the gross negligence count, the plaintiff alleges that no one from the MPD notified the plaintiff of the decedent's death and that the plaintiff learned this information approximately two weeks later, when she went to the impound lot to recover the decedent's car.  (Complaint at ¶ 40.)  Notably, no such facts were included in her § 12-309 letter.  Moreover, to the extent that the plaintiff is attempting to recover emotional distress damages based on these facts, she is precluded from such a recovery because she failed to allege that she was within the zone of danger.  *See Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990) ("if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence.").  As the plaintiff has not alleged, nor could she allege, that as a result of the defendant's negligence, she was within the zone of danger that caused her to fear for her own safety, the plaintiff is precluded from recovering any emotional distress damages under District of Columbia law.

[11] Moreover, if the plaintiff cannot demonstrate that the District defendants are grossly negligent or even negligent, then Court should conclude as a matter of law, that the plaintiff did not satisfy the elements of intentional infliction of emotional distress.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III


_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, ) | |
| and as Personal Representative of the ) | |
| ESTATE OF TERENCE ANTHONY POWERS ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| DISTRICT OF COLUMBIA, *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DISTRICT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Comes now, the District defendants, by and through undersigned counsel and pursuant to

Fed. R. Civ. P. 56, and hereby submit the following statement of material facts as to which there

is no genuine issue:

1) The plaintiff's D.C. Code § 12-309 letter was addressed to Gregory Jackson, not the Mayor.

   (Exhibit A.)

2) The plaintiff's D.C. Code § 12-309 letter reads in its entirety:

   > Pursuant to D.C. Code § 12-309 (2004), this letter is to serve as formal notice to
   > the Mayor of a pending action against the District of Columbia. On July 15, 2004,
   > the claimant suffered the death of her son, Terence Anthony Powers (case # 04-
   > 1745), as a result of his being involuntarily detained at the District of Columbia
   > Jail.  Mr. Powers died while in the custody of the District of Columbia
   > Department of Corrections.  The Department of Corrections failed to perform the
   > duty of care and protection owed to Mr. Powers.  Due to this failure, the claimant
   > lost her son.

   (Exhibit A.)

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III



_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICIA A. POWERS-BUNCE, Individually,** ) | |
| **and as Personal Representative of the** ) | |
| **ESTATE OF TERENCE ANTHONY POWERS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**ORDER GRANTING DISTRICT DEFENDANTS' MOTION TO DISMISS THE
PLAINTIFF'S COMPLAINT**

Upon consideration of the District defendants' Motion, the opposition thereto, and the

relevant facts and law considered, it is this _____ day of December 2006,

HEREBY ORDERED that the District defendants' Motion is GRANTED; and it is

FURTHER ORDERED that the Complaint against the District defendants is

DISMISSED.


_____
Judge Rosemary M. Collyer
United States District Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATRICIA A. POWERS-BUNCE, Individually,** | ) |
| **and as Personal Representative of the** | ) |
| **ESTATE OF TERENCE ANTHONY POWERS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil No. 06-1586 (RMC)** |
| | ) |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## ORDER GRANTING DISTRICT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Upon consideration of the District defendants' Motion, the Statement of Undisputed Facts, any opposition thereto, and the relevant facts and law considered, it is this ____ day of December 2006,

HEREBY ORDERED that the District defendants' Motion is GRANTED; and it is

FURTHER ORDERED that judgment shall be entered in favor of the District defendants.

_____
Judge Rosemary M. Collyer
United States District Court

32