IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA A. POWERS-BUNCE, Individually,    *
And as Personal Representative of the       *
ESTATE OF TERENCE ANTHONY POWERS    *
                                                 *
       Plaintiff,                       *
                                                 *
v.                                              *      Case No. 06-1586 (RMC)
                                             *
DISTRICT OF COLUMBIA, *et al.*        *
                                             *
       Defendants.                  *
_____*

## OPPOSITION TO DISTRICT DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Patricia A. Powers-Bunce, Individually, and as Personal

Representative of the Estate of Terence Anthony Powers, and hereby Opposes Defendants'

Motion to Dismiss, or alternatively, for Summary Judgment.  A Memorandum of Points and

Authorities in Support of Plaintiff's Opposition is attached hereto and incorporated herein.

Respectfully Submitted,

Rifkin, Livingston, Levitan & Silver, LLC

/S/

_____
M. Celeste Bruce, Esquire
Bar No.: 438343

Ellen B. Flynn, Esquire
Bar No.: 465355

6305 Ivy Lane, Suite 500
Greenbelt, Maryland 20770

(301) 345-7700 phone
(301) 345-1294 facsimile

Dated: January 17, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, | * | |
| And as Personal Representative of the | * | |
| ESTATE OF TERENCE ANTHONY POWERS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 06-1586 (RMC) |
| | * | |
| DISTRICT OF COLUMBIA, *et al.* | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |

## MEMORANDUM IN OPPOSITION TO DISTRICT DEFENDANTS' MOTION TO DISMISS

### I.    Introduction.

Contrary to the Defendants' assertions in their Motions to Dismiss, this case is not simply about recognizing a predisposition to suicide.  Rather, this case is about compound civil rights violations which ultimately resulted in the death of Mr. Powers.  It is the Plaintiff's allegation that Defendants' conducted an unlawful stop, unlawful search, unlawful detainment without properly bringing charges or even processing Mr. Powers, inflicted physical injuries on Mr. Powers while he was in custody, and failed to the follow police procedure which was designed to protect detainees and could have saved Mr. Powers' life and protected him from injury.

### II.    Factual Allegations.

Plaintiff's Complaint for Violation of Civil Rights, Other Causes of Action and Damages ("the Complaint") was filed on July 14, 2006 in the Superior Court for the District of Columbia. The Complaint alleges on July 15, 2004, Terence Anthony Powers was unlawfully arrested and/or picked up and transported by Defendants Burdyn and Giles of the United States Secret Service, after they had unlawfully stopped Mr. Powers for allegedly running a red light at the

intersection of Massachusetts Avenue and Dupont Circle, Northwest, Washington, D.C.

(Complaint at ¶ 10).  Plaintiff alleges that Mr. Powers was followed by these two Secret Service

Officers for approximately seventeen (17) city blocks between the location of the alleged traffic

violation and the stop.  (Complaint at ¶ 12).  Pursuant to uncorroborated information gleaned

from the report provided by law enforcement personnel at the time of his death (as opposed to a

report generated contemporaneously with the stop or even once they arrived at the precinct when

a detainee would normally be booked and processed), the Defendants claim that Mr. Powers was

observed retrieving an object from behind the passenger seat of his vehicle and placing it in a

cigarette box.  (Complaint at ¶ 14).  Allegedly, inside the cigarette box were five (5) plastic bags

containing a white powder substance that allegedly tested positive for cocaine although lab

reports confirming this have not been made available to Plaintiff.  (Complaint at ¶ 14).  Mr.

Powers was transported to the 3rd Precinct of the Metropolitan Police Department by the United

States Secret Service.  (Complaint at ¶ 16).  At or around 0200 hours, Mr. Powers, who was

Caucasian and gay, was placed in a jail cell, isolating him from the general detainees.  The view

into the jail cell was partially blocked from view.  Mr. Powers, who had earlier allegedly

expressed concern about facing possible jail time was left alone in this isolated area and not

permitted to make a phone call or make any other contact.  (Complaint at ¶ 17).  Mr. Powers was

never formally processed by the USSS or the MPD.  (Complaint at ¶ 18).  In violation of the

general orders, policies and procedures of the MPD requiring the Defendants to check on a

detainee at least every thirty minutes, the Defendants failed to check on Mr. Powers while he was

alone in his cell between 0230 and 0416.  (Complaint at ¶ 21).  Mr. Powers was allegedly found

hanging in the cell at 0416.  The Medical Examiner, Dr. Constance Diangelo ruled the cause of

death as suicide by hanging.  (Complaint at ¶ 24).  Dr. Diangelo also documented contusions to

the lateral chest, back, thighs and shins of Mr. Powers' body.  (Complaint at ¶ 25).  An independent medical examiner found that some of the bruising to Mr. Powers' back, buttocks and legs was consistent with inflicted blows and excessive force used upon him by police officer night sticks.  (Complaint at ¶ 26).  Interestingly, despite a general order and policy that the areas of confinement be videotaped, there is no videotape of Mr. Powers' confinement.  (Complaint at ¶ 30).

The Complaint contains six counts.  Count One alleges violations of civil rights, including an unlawful stop, illegal search, unreasonable segregation of Mr. Powers, intentionally failing to monitor him in violation of the MPD general orders and deliberate indifference for his safety and well being, and the use of unreasonable and unnecessary force all causing Mr. Powers to suffer conscious pain and suffering, and ultimately death. (Complaint at ¶¶ 28-32) Count II alleges intentional infliction of emotional distress.  The Complaint alleges that the anxiety and mental anguish inflicted by the Defendants resulted from their use of unreasonable and unnecessary force, as well as their unreasonable isolation of him.  (Complaint at ¶¶ 35-36) Count III alleges Gross Negligence in the Defendants' wanton and reckless disregard for the rights of Mr. Powers, and for his safety while in custody, including failing to observe and monitor him thus permitting him to commit suicide allegedly without another person seeing him, hearing him or coming to his aid.  (Complaint at ¶¶38-39).  Counts IV and V allege Survival and Wrongful Death Actions respectively.  Count VI alleges direct liability of the District of Columbia for failure to train and supervise allegedly constituting gross negligence and deliberate indifference to the safety of detainees in disregard to their constitutional rights.

The Defendants removed the case to the United States Court for the District of Columbia on or about September 13, 2006.

### III.    Legal Standard.

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed unless "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4t Cir. 2005); Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  Moreover, when such a dismissal involves a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."  Harrison v. United States Postal Serv., 840 F.2d 1149 (4th Cir. 1988) (internal quotation marks omitted).

A court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957). When reviewing a motion to dismiss, a court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations" and examines only the legal sufficiency of the complaint. Id.  While the court must view the facts in a light most favorable to the plaintiff, the court "need not accept the legal conclusions drawn from the facts," nor should it "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Eastern Shore Markets, Inc. v. J.D. Associates, Ltd. Partnership, 213 F.3d 175 (4th Cir. 2000).  A judge may not grant a 12(b)(6) motion based on a

disbelief of a complaint's factual allegations. Wright v. MetroHealth Medical Center, 58 F.3d 1130, 1138 (6th Cir. )

The Federal Rules of Civil Procedure provide a powerful presumption against rejecting pleadings for failure to state a claim.  Rule 8 sets aside the hypertechnical pleading rules by requiring nothing more than a plain recitation of the facts that a party believes entitles her to relief. Thus, although Rule 12(b)(6) authorizes prompt dismissal of claims where the party's belief proves mistaken, its sanction extends only to a formal testing of the legal sufficiency of the factual basis the pleader asserts in support of her claim.

The Rules also protect parties who have tried but have not completely succeeded in stating a claim.  Rule 15 authorizes amendments that seek, among other things, to cure pleading defects.  Under Fed. R. Civ. P. 15(a), a plaintiff may amend his complaint one time as a matter of course before the defendant files a responsive pleading. Fed. R. Civ. P. 15(a). Once the defendant files a responsive pleading, however, the plaintiff may amend his complaint only by leave of the court or by written consent of the defendant.  Id.  Rule 15(a) directs that leave to amend "shall be freely given when justice so requires."  Id.  This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities. See Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99 (1957)(" The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999)("The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that [the] plaintiff be given every opportunity to cure a formal defect in his pleading." (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure*

§ 1357 (2d ed. 1990))).

The Courts have interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *See* Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." Id. An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred. David v. Piper Aircraft Co., 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

IV. **LEGAL ARGUMENT**

A. **Plaintiff has Properly Plead Constitutional Claims Against the District Defendants.**

1. **Claims against the "Watch Commander" are Appropriate.**

Defendants seek to dismiss the "Watch Commander" as a defendant to this matter because the Plaintiffs have not specifically identified the individual who held the post of the Watch Commander at the time of Terence Anthony Powers unlawful arrest, detainment and death while in MPD custody. However, Rule 25 (d)(2) provides in pertinent part:

**Rule 25 Substitution of Parties:**
….
(d) **Public Officers; Death or Separation from Office:**

(2)  A public officer who sues or is sued in an official capacity may be described as a party by the officer's official title rather than by name; but the court may require the officer's name to be added.

Since discovery has not yet begun in the matter, and the identity of the Watch Commander is unknown to the Plaintiff, Plaintiff appropriately complied with Federal Rule 25 and named the "Watch Commander" as a party-defendant.

Defendants next seek to dismiss the Watch Commander alleging that Plaintiff has failed to identify any specific allegation against the Watch Commander.  To the contrary, Plaintiff alleges that the Watch Commander was employed by the Metropolitan Police Department (MPD) (Complaint at ¶ 7), and was acting under the color of law and within the scope of his employment. (Complaint at ¶ 9) when Mr. Powers was placed in a jail cell, isolating him from the general detainees and when Mr. Powers was never formally processed by either the USSS or the MPD.  (Complaint at ¶ 18)

Following the unlawful stop and illegal search of Mr. Powers vehicle and property, Defendants (including the Watch Commander), intentionally failed to monitor him, violated MPD general orders, policies and procedures, and showed deliberate indifference for his safety and well being in violation of his 5th, 8th and 14th Amendment rights.  (Complaint at ¶ 28).  There is no videotape of Mr. Powers' confinement while at the 3rd Precinct in violation of the MPD general orders, policies and procedures.  (Complaint at ¶ 30).  Finally, Plaintiff alleges that the Watch Commander is vicariously liable on the basis of respondeat superior for any violations of the Mr. Powers' civil and constitutional rights.  (Complaint at ¶ 32).  Certainly these, and other, allegations in the Complaint relate to the Watch Commander and are sufficient to support a claim against the Watch Commander at this stage in the proceedings.

**B.    Plaintiff's Constitutional Claims Against the District Defendants.**

**1.    Plaintiff has alleged Constitutional Violations of the 5th, 8th and 14th Amendments.**

The District Defendants argue that Plaintiff has failed to allege a Constitutional Violation.  It is difficult to imagine a more poignant constitutional violation than being unlawfully stopped, unlawfully searched, unlawfully detained, and subject to injuries which, upon information and belief, are caused by nightsticks, then isolated, unsupervised and unprotected without being properly booked and processed resulting in the loss of life. Individually and collectively, these events support the Plaintiff's allegations that Mr. Power's Constitutional rights were violated.

Defendants have framed their challenge to the Constitutional violations alleged in the Complaint by focusing only on the Defendants' collective failure to recognize the risk of suicide of a detainee while in custody as a potential prohibition of the infliction of cruel and unusual punishments.  They have made no challenge to the allegations that the stop, search and detention were all unlawful, nor do they address the injuries to Mr. Power's body which were consistent with injuries sustained from blows with a police officers night stick, which injuries would also fall under the 8th Amendment protection against cruel and unusual punishment.  Therefore, before even considering the failure of the Defendants to protect Mr. Powers' from suicide while he was in their custody, Count I survives the Defendants' Motion to Dismiss as there are numerous violations of Mr. Powers' Constitutional rights not just the deliberate indifference to a substantial risk of serious harm to Mr. Powers while in their custody.

With respect to the Defendants' collective failure to recognize the risk of injury and death, the Eighth Amendment protection against the infliction of cruel and unusual punishment is applicable to pretrial detainees under the due process clause of the Fourteenth Amendment.  See,

Payne v. Churchich, 161 F. 3d 1030, 1040 (7th Cir. 1998).  This protection afforded to pretrial detainees is at least as great as the protection afforded to prisoners.  Therefore, we may consider cases involving treatment of prisoners as instructive on treatment of pretrial detainees.  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475 (1993).  A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.  Id.; Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).  In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners.  See Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992).  The 8th Amendment also imposes duties on the officials, who must provide humane conditions of confinement, including a requirement that they must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194 (1984)(recognizing that prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves).

In DeShaney v. Winnebago County Department of Social Services, the Supreme Court established that states are constitutionally obligated under the Due Process Clause to provide "reasonable safety" whenever a "state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself.  489 U.S. 189, 200 (1989).  As discussed in Payne v. Churchich, supra, a detainee is protected by the Due Process Clause of the Fourteenth Amendment; that protection is at least as great as the protection a convicted prisoner

is afforded under the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463

U.S. 239, 244, 103 S. Ct. 2979 (1983); Bell, 441 U.S. at 535 n.16. As the Supreme Court stated

in County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708 (1998), a detainee therefore is

protected from the "deliberate indifference" of prison officials: Since it may suffice for Eighth

Amendment liability that prison officials were deliberately indifferent to the medical needs of

their prisoners, see Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285 (1976), it follows that such

deliberately indifferent conduct must also be enough to satisfy the fault requirement for due

process claims based on the medical needs of someone jailed while awaiting trial.  County of

Sacramento, 118 S. Ct. at 1718.

In the case at hand, the Plaintiff has alleged that Mr. Powers was subject to personal

injury to his body consistent with blows sustained from a night stick, as well as a lack of care in

his confinement and deliberate indifference to his safety and wellbeing as demonstrated by the

Defendants' collective failure to process and book Mr. Powers, including the removal of items

that could cause him injury while in custody, and deliberately failing to monitor his condition

when they unreasonably placed him in an isolated area.[1]  The Plaintiff has alleged that

Defendants' acts and omissions prior to finding Mr. Powers' hanging support a constitutional

claim.

---

[1] Defendants duties with respect to Mr. Powers' health and safety do not end when they find him hanging in his cell by the socks they permitted him to possess in an unsupervised and remote cell even after he had expressed concern numerous times over the possibility of jail time.  Rather, their obligations continue throughout their individual and collective responses to finding Mr. Powers hanging in his cell.  The MPD Incident Report which was prepared on the date of Mr. Powers' death fails to document any attempts by the officers to revive Mr. Powers.  (See, Exhibit No. 1), MPD Incident Report.  Rather, it appears from the information documented in their own report that the officers waited for medics to arrive.  See, id.  This alone would be sufficient to support Plaintiff's claims.  See, Bradich v. City of Chicago, 413 F.3d 688 (7th Cir. 2005)(reversing summary judgment granted to lockup keepers in a 42 U.S.C.S. § 1983 action when, during the critical 10 minutes after they found the inmate hanging in his cell, they did not call for help, did not attempt CPR but instead shouted and shook the inmate, and altered their log books).  The individual Defendants' failure to respond appropriately to Mr. Powers' condition upon discovering him hanging in his cell would also support a ruling that they are not entitled to qualified immunity.  See id. at 692 (suggesting that lockup keepers are not entitled to qualified immunity because no reasonable officer could think that the Constitution allowed him to cover up his own misconduct at the expense of a prisoner's life).

Despite all of the Defendants' failures to act, Defendants argue that Plaintiff has failed to meet the two part test identified in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994) for the sufficiency of allegations of deliberate indifference to the health and safety of a detainee.  The Supreme Court defined the first prong of the test as an alleged deprivation of sufficient seriousness such that the official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  Second, the government official must be "deliberately indifferent to a substantial risk of serious harm to the person in custody."  <u>Id.</u> at 828.  In order to establish liability, a government official must be "deliberately indifferent to a substantial risk of serious harm to a pretrial detainee."  <u>Id.</u> at 828.  With "deliberate indifference" lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the courts of Appeals have routinely equated deliberate indifference with recklessness.  <u>Id.</u> at 824.  Under the <u>Farmer</u> test, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.  <u>Id.</u> at 842.  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.  <u>Id.</u>  At the motion to dismiss stage of the litigation, this would be where the fact that there was a general order that the prison official failed to follow at the time of Mr. Powers' detainment is some evidence of the Defendants' knowledge of a substantial risk of serious harm which the general order was designed to protect against.

Prior to being permitted any discovery on this issue, the Plaintiff has alleged that there was a policy and procedure that was ignored in this case.  While this failure alone may be insufficient to prove the Plaintiff's allegation of constitutional violation in its entirety, it is

evidence that is appropriately considered in determining directly or inferentially the individual

defendants' knowledge of a substantial risk.  See, District of Columbia v. Walker, 689 A. 2d 40,

47 (D.C. 1997).  Further, an examination of the state of mind of the Defendants through the

discovery process is required to fully evaluate the deliberate indifference standard defined in

Farmer.  Therefore, this issue is more appropriately addressed after factual discovery has

proceeded as the Plaintiff has not had a full opportunity at this stage in the proceedings to

discover all of the actions and intentions of each defendant.  Finally, whether the Defendants'

individual and collective failure to follow the MPD's General Orders rises to gross negligence is

a question of fact for the jury.  As even the District Defendants point out in their motion,

"evidence that the police violated the general order was one factor that the jury could consider".

See, District of Columbia v. Walker, 689 A.2d 40, 47 (D.C. 1997).

        2.         **The Plaintiff has alleged sufficient facts to support a Conclusion that the District and District Employee's were Deliberately Indifferent to a Substantial Risk of Serious Harm.**

Defendants argue that the Plaintiff has not alleged fact sufficient to suggest that the

Defendants were deliberately indifferent to a substantial risk of serious harm in order to support

the claim under the Fifth Amendment.  The Defendants argue that the only facts alleged in the

Complaint which support the notion that Defendants were deliberately indifferent is Mr. Powers

expressed concern about facing possible jail time and was then left alone in an isolated area.

However, the Complaint also suggests that the Defendants failed to monitor Mr. Powers every 30

minutes as required by the General Orders, and they failed to process and book Mr. Powers

which would have resulted in the removal of items which could be used to inflict injury to

himself and/or others.  Contrary to the Defendants' argument, the Plaintiff is not suggesting that

Defendants should have taken "special precautions".  Rather, Plaintiff asserts that Defendants'

failure to take any precautions is evidence of their deliberate indifference to Mr. Powers' risk of serious injury.

> ### C.   Plaintiff has properly alleged common law claims against the District Defendants.

> #### 1.   Defendants have received proper notice pursuant to D.C. Code 12-309.

The District of Columbia alleges that the Plaintiff's common law claims against the District should be dismissed because the Notice of Claim provided to the General Counsel's office of the Department of Corrections, Government of the District of Columbia was insufficient notice to the District.  The District further argues that the October 27, 2004 Notice of Claim doesn't mention the date, time or cause of the injury or damage in order to put the Defendants' on notice of the claim.  Strangely absent from the District's arguments is a statement that the Defendants did not have actual notice of the claim.  In fact, the copy of the Notice of Claim attached to the Defendants' Motion bears the stamp of the Office of Risk Management dated November 4, 2004.  See, Exhibit No. 2, October 27, 2004 Notice of Claim.  Effective January 20, 2004, the Mayor delegated to the Office of Risk Management the authority to accept a Notice of Claim letter.  See, Exhibit No. 3, "Office of Attorney General, Filing a Claim." Notice received by the Office of Risk Management on November 4, 2004 would certainly be within the six month time period and would have permitted the office the opportunity to investigate the claim.  On November 5, 2004 an additional Notice of Claim was sent to Terrence Ryan, General Counsel, District of Columbia Metropolitan Police Department.  See, Exhibit No. 4.  Notwithstanding the foregoing, the Office of Risk Management for the government of the District of Columbia responded to Plaintiffs Notice of Claim.  See, Exhibit 5, May 18, 2005

Correspondence.  In the correspondence, the government never raises a concern over when or how they received a copy of the Plaintiff's Notice of Claim.

Section 12-309 of the District of Columbia Code provides:

> **§ 12-309. Actions against District of Columbia for unliquidated damages; time for notice**
>
> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

The Notice of Claim sent by counsel references Case No. 04-1745 to permit the District Defendants to review the circumstances of the Plaintiff's claims.    Case No. 04-1745 is the case number that the Government of the District of Columbia, Office of the Chief Medical Examiner assigned to the Terence Anthony Powers.  The Autopsy Report identifies the Date of Death, July 15, 2004, and reports a final diagnosis of hanging and contusions on Mr. Powers' lateral chest, back, thighs and shins.  <u>See</u>, Exhibit No. 6, Autopsy Report.  The Notice of Claim states that "On July 15, 2004, the claimant suffered the death of her son, Terence Anthony Powers as a result of being involuntarily detained at the District of Columbia Jail.  Mr. Powers died while in the custody of the District of Columbia Metropolitan Police Department.  The Metropolitan failed to perform the duty of care and protection owed to Mr. Powers.  Due to this failure, the claimant lost her son."  Should this statement be insufficient for some reason in identifying the date, time and cause of the injury, unlike many other lawsuits involving claims against the District of Columbia, there was also an incident report generated by the Metropolitan Police Department which documents the date, time, location and circumstances of Mr. Power's death while he was in the Department's custody.  This information together with the Notice of Claim and the

autopsy of July 15, 2004 is a wealth of information upon which the District could ascertain whether additional investigation was merited.

The requirements of § 12-309 are to be interpreted liberally as the purposes of § 12-309 are (1) to allow the District to investigate potential claims so that evidence may be gathered while still available, (2) to enable the district to correct defective conditions, thus increasing public safety, and (3) to facilitate settlement of meritorious claims and resistance of frivolous ones. Hardy v. District of Columbia, 616 A.2d 338 (D.C. App. 1992)(Reversing the trial court's dismissal of plaintiff's claim when plaintiff provided a general explanation of the location of the incident giving rise to the claim and holding that the purpose of § 12-309 was to allow the district to investigate potential claims, correct defective conditions, and settle meritorious claims).

The Metropolitan Police Department's Incident Report indicates that Defendants Gamble, Burdyn, and Giles all received copies of the Incident report, and that Notification was sent to MPD-OSD/Violent Crimes Unit, MPD-Cruiser 300 Lt. Robinson, MPD Force Investigation Team, MPD CR 28 Captain Keigan, and SOCC. See, Exhibit 1. The incident report was also sent to the Secret Service UDFMB, including Ltd. Berry, Lt Rigsby, and Inspector Joswiak. Id. The incident report documents that Mr. Powers was arrested by the United States Secret Service after a traffic stop. Id. Contrary to MPD procedure, it appears that they did not process Mr. Powers, and instead placed him in a remote cell. Reportedly, Mr. Powers asked the arresting officer numerous times if he was going to do jail time. Id. In violation of MPD procedure, the officers did not check on Mr. Powers every thirty minutes. Rather, he was left from 2:30 a.m. to 4:10 a.m. when he was reportedly found hanging by the arresting officer in the remote jail cell with no signs of life. Id.

Section 12-309 does not require that the Plaintiff serve an entire complaint together with all legal theories and all facts which might support the Plaintiff's claim. Rather, the purpose of 12-309 is to make the Defendant aware of the claim so that they might conduct their own investigations and ascertain the character and extent of the injuries and its responsibility for them. In this case, the District was aware of the potential claims through the police report and investigation conducted as well as the Plaintiff's Notice of Claim. In instances where a police report describes the basic incident, the Courts have found the report to serve as sufficient notice of the claim. See, Jacqueline R. v. District of Columbia, 370 F.Supp.2d 267 (D.D.C. 2005). In Jacqueline R., the court found that a police report that described and gave the date of an alleged sexual assault by a suspect on a complainant and that stated that (1) the suspect also assaulted plaintiff's minor son, (2) the camp where the assaults occurred was owned and operated by the District of Columbia, and (3) that the suspect was "in charge" of younger boys at the camp, was sufficient notice to the District of plaintiff's tort claims under § 12-309. 370 F. Supp. 2d 267. Similarly, in this case, the Plaintiff has alleged (1) the death of Mr. Powers on July 15, 2004; (2) the location of Mr. Powers at the time of his death, i.e., in the custody of the Metropolitan Police Department; (3) and that the Metropolitan Police Department filed to perform the duty of care and protection owed to Mr. Powers which resulted in his death.

Even if the Plaintiff's Notice of Claim in this matter is found to be insufficient under § 12-309, the Courts have acknowledged that an incident report of the police department is sufficient notice under the statute. In James v. District of Columbia, 610 F.Supp. 1027 (D.D.C. 1985), the Court held that Plaintiff's failure to give timely notice of a claim against the District of Columbia under § 12-309, did not lead to dismissal in a suit arising when plaintiff was injured from the discharge of a police officer's revolver while being arrested for larceny. Id. The Court

held that notice would be superfluous where the District received an arrestee's injury report, acquired statements regarding the officer's conduct, had a copy of the police report of the arrest itself, and got the results of the police department investigation on the use of force. Id.  Similarly, in this case, the MPD completed an incident report which was disseminated to numerous individuals in the department including the "MPD-Force Investigation Team," and "the MPD-OSD/Violent Crime Unit"; and with the United States Secret Service.

> **D.** **The Plaintiff has alleged sufficient facts to support a claim against the District for Failure to Train and Supervise its Officers:**

Despite being only at the preliminary motions stage of this litigation, the Defendants seems to require the Plaintiffs to prove the entirety of her case before being afforded discovery. Plaintiff has alleged sufficient facts to put the Defendants failure to train and supervise its officers at issue.  Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain prohibited by the 8th Amendment to the U.S. Constitution.  Brewer v. City of Daphne, 111 F.Supp.2d 1299 (1999); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976).  The deliberate indifference standard also applies to inmates' psychiatric and psychological needs, including the proclivity for inflicting injury or death upon himself/herself.  See, Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994); Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996).  In Canton v. Harris, the Supreme Court held that a municipality can be liable for failure to train its employees when the municipality's failure in training shows "a deliberate indifference to the rights of its inhabitants."  489 U.S. 378, 109 S.Ct. 1197 (1989).  (Failure to teach and enforce constitutional requirements exposes municipalities to financial liability).  Here, the failure of the District to enforce the General Orders Policies and Procedures, or train the Defendants on the General Orders supports Plaintiffs allegations in the Complaint.

**E.      District Employees have been Properly Named as Defendants and are Not Subject to Qualified Immunity.**

Defendants next argue that suit against the District Employees in their official capacity is duplicative of the action against the District. However, this is true only if the District accepts responsibility for all of its employee's and agent's actions and will not raise the defense that any of the Defendants acted outside the scope of their employment. Further, this is true only when the District Employees are entitled to qualified immunity. The inquiry into whether a defendant can assert qualified immunity proceeds in two steps. First, the court must determine if the pleaded facts demonstrate that the defendant's conduct violated a constitutional right. Ridpath, 447 F.3d at 306. The alleged violations of the constitutional rights of Mr. Powers have already been discussed above. If the facts do not establish the violation of a right, qualified immunity will apply, and the motion to dismiss on that basis should be granted. But, if a violation is established, "the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). The Defendants' claims of qualified immunity are founded on an alleged lack of facts that the individual defendants had notice that Mr. Powers may commit suicide while in their custody and control. What Plaintiff has plead are the facts that were available to her at the pleading stage, prior to obtaining discovery from the defendants. Certainly, the allegations in the Complaint suggest that all of the Defendants participated in numerous constitutional violations, including their failure to take appropriate steps to ensure Mr. Powers safety and protect him from excessive force. Qualified immunity is not the law simply to save trouble for the Government and its employees; it is recognized because the burden of trial is unjustified in the face of a colorable claim that the law on point was not clear when the official took action, and the action was reasonable in light of the law as it was. In this case, however, the allegations made by the Plaintiff relate to violations of clearly

established rights. Plaintiff has alleged an unlawful stop, an unlawful search, excessive force, and deliberate indifference to the health of Mr. Powers. Qualified immunity protects public officials from individual liability in a 1983 action unless the officials violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" Workman v. Jordan, 32 F.3d at 478 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982) To successfully rebut a defense of qualified immunity, the plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right," and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue."

In 1989 the Supreme Court decided Graham v. Connor, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989), and directed lower courts to analyze constitutional claims of excessive force by applying Fourth Amendment standards of objective reasonableness. See id. at 395 ("Today we make explicit . . . that all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."). The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. The Supreme Court further clarified its test for qualified immunity in excessive force cases laid down in the Graham Court in Saucier v. Katz, 121 S.Ct. 2151 (2001) when it enunciated a two-part inquiry: the threshold question is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 121 S.Ct. at 2156. The Supreme Court of the United States has defined the test for excessive force, therefore the prohibition against a law enforcement official's use of excessive force is clearly

established. The individual District Defendants to not attempt to challenge whether the other

constitutional violations alleged in the Plaintiff's Complaint were clearly established in their

Motion.  As such, the Defendants are not entitled to dismissal.  Furthermore, the determination

of whether an individual defendant is entitled to qualified immunity is a factual question, and as

such, a determination on this issue at this stage is premature.

     WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Honorable

Court deny the District Defendants' Motion to Dismiss, or in the alternative grant the Plaintiff

leave to amend the Complaint.

     **<u>REQUEST FOR HEARING</u>**

     Plaintiff hereby respectfully requests this matter be set in for a hearing on Defendants'

Motion to Dismiss.

Respectfully Submitted,

Rifkin, Livingston, Levitan & Silver, LLC

   /S/
_____
M. Celeste Bruce, Esquire
Bar No.: 438343

Ellen B. Flynn, Esquire
Bar No.: 465355

6305 Ivy Lane, Suite 500
Greenbelt, Maryland 20770

(301) 345-7700 phone
(301) 345-1294 facsimile

Dated:     January 17, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA A. POWERS-BUNCE, Individually, *
And as Personal Representative of the *
ESTATE OF TERENCE ANTHONY POWERS *
 *
  Plaintiff, *
 *
v. * Case No. 06-1586 (RMC)
 *
DISTRICT OF COLUMBIA, *et al.* *
 *
  Defendants. *
_____*

## **ORDER**

UPON CONSIDERATION of Plaintiffs' Opposition to Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment, and for good cause shown, it is this _____ day of _____, 2007, hereby and the same

ORDERED that District Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment is hereby and the same DENIED.


_____
Judge, United States District Court for the
District of Columbia