IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA A. POWERS-BUNCE, Individually, )
and as Personal Representative of the )
ESTATE OF TERENCE ANTHONY POWERS, )
  )
      **Plaintiff,** )
  )
   v. ) Civil No. 06-1586 (RMC)
  )
DISTRICT OF COLUMBIA, *et al.*, )
  )
      **Defendants.** )
  )

**DISTRICT DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Defendants District of Columbia ("District"), Chief Charles H. Ramsey, Commander Larry D. McCoy and Sergeant Regina W. Gamble (hereinafter "District defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 56, hereby submit this Reply to plaintiff's Opposition to their Motion to Dismiss, or Alternatively, for Summary Judgment. In their Motion, the District defendants made the following arguments:

1) All common law and constitutional claims against the "Watch Commander" should be dismissed because the plaintiff neither named or served the Watch Commander and she failed to alleged any wrongdoing by him/her;

2) All constitutional claims against the District defendants based on the decedent's suicide must fail because there was no constitutional violation, therefore, the District could not be liable for failure to train and/or supervise;

3) All constitutional claims against the District employees based on the decedent's suicide must fail because a suit against the individuals in their official capacity is equivalent to a suit against the District, there is no *respondeat superior* liability, the plaintiff did not allege any

wrongdoing by any of the District employees and, alternatively, the employees are entitled to qualified immunity; and

4) All common law claims against the District defendants based on the decedent's suicide must fail because the plaintiff did not give proper notice consistent with D.C. Code § 12-309, the plaintiff's wrongful death claim is barred by the statute of limitations, the plaintiff has not satisfied the elements of a gross negligence claim, and therefore, the District could not be liable for failure to train and/or supervise, and there are no allegations of wrongdoing against any of the individuals.

**1. THE PLAINTIFF FAILS TO RELY ON THE PROPER LEGAL STANDARD TO SET FORTH HER ARGUMENTS TO OPPOSE THE DISTRICT DEFENDANTS' MOTION.**

The plaintiff attempts to utilize extraneous documents to oppose the District defendants' motion to dismiss arguments. (*See* Opposition at 11 n.1.) However, this is not proper. When considering the arguments made by the District defendants in their Motion (save the D.C. Code § 12-309 argument), this Court should only examine the four corners of the Complaint, not any other documents, unless those documents relate to the District's D.C. Code § 12-309 argument. *See* Part 3 *infra*. In *Tafler v. District of Columbia,* 2006 U.S. Dist. LEXIS 81714, the Honorable Paul L. Friedman reiterated the legal standard for a motion to dismiss:

> A motion to dismiss for failure to state a claim under [Fed. R. Civ. P. 12(b)(6)] … may not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts that supports his claim entitling him to relief … *The Court generally may not look outside the facts contained within the four corners of the complaint* … In evaluating a motion to dismiss under [Fed. R. Civ. P. 12(b)(6)], the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff … While the complaint is to be construed liberally in considering a motion to dismiss for failure to state a claim, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions …

*Tafler*, 2006 U.S. Dist. LEXIS 81714 *20 (internal citations omitted and emphasis added).

In addition, in her Opposition, plaintiff confuses her constitutional and common law claims as well as the legal standards that are associated with each type of claim.[1] Notwithstanding this confusion, the District defendants submit that their Motion to Dismiss, or Alternatively, for Summary Judgment should be granted in its entirety because the plaintiff's Opposition does not successfully rebut any of their arguments.

**2. THE PLAINTIFF'S COMPLAINT DOES NOT SURVIVE THE DISTRICT DEFENDANTS' MOTION TO DISMISS.**

Based on the four corners of the Complaint, the plaintiff has not alleged any constitutional and/or common law violations against any of the District defendants. Accordingly, the Court should grant the District defendants' Motion to Dismiss.

**A) The Plaintiff's Constitutional Claims Do Not Survive a Motion to Dismiss.**

i. The plaintiff failed to allege a constitutional violation based on Mr. Powers' suicide.

The Opposition does not rehabilitate the major weakness in the Complaint, namely that she alleges no facts from which this Court could conclude that Mr. Powers' suicide was based on or caused by a constitutional violation. The allegation that Mr. Powers "expressed concern about facing possible jail time" does not put the District or any District employee on any notice that he might kill himself. (Complaint at ¶ 17.) Nor does it demonstrate that the District and/or any of its employees knew of and regarded an excessive risk to Mr. Powers' health or safety, as required by *Farmer v. Brennan*, 511 U.S. 825 (1994).

The plaintiff contends in her Opposition that, "[a]t the Motion to Dismiss stage … the fact that there was a general order that the prison official failed to follow at the time of Mr.

---

[1] For reasons that are not clear to undersigned counsel, the plaintiff almost exclusively relied on Fourth Circuit case law for her section on the applicable legal standards.

Powers' detainment is some evidence of the Defendants' knowledge of a substantial risk of serious harm which the general order was designed to protect against." (Opposition at 12.) This is an absurd premise. The fact that an MPD official allegedly failed to follow a general order during the two hours that Mr. Powers was detained prior to his suicide is *not*, in and of itself, evidence of a substantial risk of serious harm. Even assuming that the District defendants violated MPD general orders, policies and procedures by "fail[ing] or refus[ing] to check on or otherwise observe Mr. Powers" during the two-hour time period before his death, the plaintiff alleges no facts from which this Court could conclude that the District and/or any of its employees knew of and regarded an excessive risk to Mr. Powers' health or safety, as required by *Farmer, supra*. (Complaint at ¶ 21.) Therefore, as a matter of law, the Court should dismiss any claims of constitutional violations against the District defendants based on Mr. Powers' suicide.[2]

Notably, the District defendants' Motion presented two cases with similar facts and claims to buttress their contention that the plaintiff failed to articulate sufficient facts about Mr. Powers' suicide to support a constitutional claim. *See Barber v. Salem*, 953 F.2d 232 (6th Cir. 1992); *Payne v. Churchich*, 161 F.3d 1030 (7th Cir. 1998). Surprisingly, the Opposition cited *Bradich v. City of Chicago*, 413 F.3d 688 (7th Cir. 2005), but that case further validates the District defendants' position that there was no constitutional violation based on the decedent's suicide. In *Bradich*, the plaintiff's decedent, like Mr. Powers here, hung himself after he was placed in a police cell pursuant to a lawful arrest on an outstanding warrant. *Id.* at 689.

---

[2] The failure to train and/or supervise constitutional and common law claims derive from the original constitutional and/or common law violations. Accordingly, if the Court finds no constitutional and/or common law violations, or otherwise determines that the plaintiff is barred from filing such claims, the plaintiff's respective failure to train and/or supervise constitutional and/or common law claims must fail as well.

The *Bradich* plaintiff sued the City of Chicago, the arresting officers and the lockup keepers and alleged that they violated the decedent's rights by failing to "protect him from the risk of suicide and react properly once they discovered the hanging." *Id.* at 689. The district court granted summary judgment in favor of the municipal and individual defendants. The Seventh Circuit affirmed the district court's decision with respect to the claim that the defendants failed to protect him from the risk of suicide and concluded as follows:

> The arresting officers did not violate any of Bradich's rights by taking him into custody on an outstanding warrant and handing him over at the lockup for detention. The lockup keepers did not display deliberate indifference to a substantial risk of suicide by putting Bradich in a regular cell, and allowing him to keep his civilian clothes, rather than placing him on suicide watch or sending him to a hospital until he sobered up … Bradich had been arrested many times before yet never attempted to injure himself, and he did not have a mental-health history implying any disposition toward suicide.

*Id.* at 690.[3]

---

[3] The Complaint lacks any facts describing what happened to Mr. Powers after he was found hanging in his cell (with the exception of the autopsy). However, the plaintiff – for the first time – appeared to claim in her Opposition that the District defendants had a continuing obligation to revive Mr. Powers, even after he was found hanging in his cell. (Opposition at 11, n.1.) Specifically, she claimed that the "individual defendants' failure to respond appropriately to Mr. Powers' condition upon discovering him hanging in his cell would also support a ruling that they are not entitled to qualified immunity." (*Id.*, citing, *Bradich v. City of Chicago*, 413 F.3d 688 (7th Cir. 2005).) The plaintiff should not be able to assert such a claim in her Opposition because she did not make that claim in her Complaint. However, even if the plaintiff was permitted to amend her complaint to include a claim, she failed to allege any facts to support such a claim. Moreover, the Complaint lacks any facts that are comparable to what was described in *Bradich*.

In *Bradich*, the district court also granted summary judgment in favor of the lockup keepers. The reported actions of the lockup keepers are as follows: Bradich was found hanging at approximately 6:15 p.m., which was about 90 minutes after he was placed in a cell. *Id.* at 691. The decedent appeared to be alive when he was first found. *Id.* The lockup keepers used unorthodox methods to revive Bradich (including non-CPR sanctioned techniques, including shouting at, shaking and slapping Bradich). *Id.* An ambulance was "dispatched at 6:25 p.m., implying that [the officers on duty at the police station] had waited ten minutes to summon assistance." *Id.* Bradich was dead by the time the paramedics had reached him at 6:34 p.m. *Id.* There were also allegations that the lockup keepers may have doctored the logbook entries during the intervening 10 minutes between when Bradich was found hanging and when the ambulance was dispatched. *Id.* at 691.

The Seventh Circuit reversed the district court's decision to grant summary judgment in the lockup keepers' favor because "when the non-moving party receives the benefit of all reasonable inferences … we must assume that [those] officers took ten minutes to seek help—and that they wasted much of that interval." *Id.* at 691. Notably, the *Bradich* lockup keepers were alleged to be directly involved with what happened to Bradich. The Seventh Circuit further concluded that the lockup keepers

5

Simply, the Complaint does not allege any facts from which this Court could conclude that Mr. Powers' constitutional rights were violated based on his suicide. There are no facts that any District defendant had any notice that Mr. Powers might kill himself nor are there any facts that they disregarded any risk to his health or safety. Accordingly, the Court should grant the District defendants' motion to dismiss based on his suicide.[4]

> ii. <u>The District defendants are not liable for any constitutional or common law claims arising out of either the initial stop, arrest and/or search of the plaintiff's decedent or for any alleged violation that occurred prior to the decedent's arrival at the 3D station.</u>

The plaintiff contends that the District defendants are liable for any constitutional violation that stems from Mr. Powers' allegedly unlawful stop, search and arrest. *See* Opposition at 9 (criticizing the District defendants for neither challenging the allegations that the "stop, search and detention were all unlawful" nor "address[ing] the injuries to Mr. Powers' body which were consistent with injuries sustained from blows with a police officers' night stick, which injuries would also fall under the 8th Amendment protection against cruel and unusual punishment."). However, there is no reason that the District defendants would reasonably believe that the allegations regarding Mr. Powers' initial stop, search and arrest were directed to any of the District defendants for several reasons.

First, it is undisputed that the United States Secret Service (USSC) officers, and not MPD or any other District officer, were responsible for initially stopping, searching and arresting Mr.

---

may not be entitled to qualified immunity. *Id.* at 692. Here, none of the named District defendants herein was alleged to be involved in anything that happened to Mr. Powers. Moreover, there are absolutely no facts from which the plaintiff could make such a claim.

[4] Alternatively, the plaintiff claimed that the Court should deny the District defendants' motion because she needs an opportunity to "discover all of the actions and intentions of each defendant." (Opposition at 13.) However, discovery is not necessary because the facts of the Complaint—and only the facts in the Complaint—demonstrate what was allegedly communicated by Mr. Powers to the officers and those are the only facts that are relevant in order for the Court to determine whether the plaintiff alleged a constitutional violation based on Mr. Powers' suicide.

Powers. (Complaint at ¶ 10-15.) Second, there are no allegations in the Complaint that any District officer was present for Mr. Powers' initial stop, search and arrest. Third, the stop, search and arrest of Mr. Powers occurred *prior* to him even arriving at the 3D station. (Complaint at ¶ 10-16.) As stated in the District defendants' Motion, and conceded by the plaintiff in the Complaint, the USSC is not an agent of the District (or MPD). Consequently, the District defendants cannot be liable for USSC's actions. Therefore, as a matter of law, this Court should dismiss any and all common law and/or constitutional claims against any of the District defendants arising out of Mr. Powers' stop, search and arrest and any other events that occurred before he arrived at the 3D station.[5]

      iii.    <u>As a matter of law, an official capacity suit cannot be maintained against any District employees because it is duplicative of a suit against the District.</u>

In its Motion, the District argued that any official capacity suits against the District employees are duplicative of a suit against the District. (Motion at 18.) In the Opposition, the plaintiff responds by stating: "this is true only if the District accepts responsibility for all of its employee's and agent's actions and will not raise the defense that any of the Defendants acted outside the scope of their employment. Further, this is true only when the District Employees are entitled to qualified immunity." (Opposition at 19.) Notably, the plaintiff cites no legal authority for these statements.

The District defendants submit that the plaintiff's response to this argument is simply inaccurate. The case law from the District of Columbia is clear and is reflected in the District defendants' Motion. (Motion at 18.) Any official capacity suit against the individual employees

---

[5] As to the allegations that Mr. Powers had injuries "consistent with inflicted blows and excessive force used upon him by police officer night sticks," *see* Complaint at ¶ 26, the District defendants likewise assume that these allegations are directed to the USSC, as the Complaint fails to allege that a District employee was present for or otherwise responsible for these acts. Moreover, the plaintiff's purported D.C. Code § 12-309 letters and the Incident Report lacks any such information. *See* Part 2(C), *infra*.

must be dismissed because it is duplicative of the suit against the District, which is already a named party. As the plaintiff's Opposition fails to rebut this argument, the Court should dismiss all official capacity suits against the District employees with prejudice.

    iv.    <u>As a matter of law, there is no *respondeat superior* liability for claims brought pursuant to 42 U.S.C. § 1983.</u>

The District defendants argued in their Motion that respondeat superior liability does not apply to claims brought pursuant to 42 U.S.C. § 1983 and cited supporting legal authority. *See* Motion at 19; *Arnold v. Moore*, 980 F. Supp. 28, 35 (D.D.C. 1997); *Fields v. District of Columbia Department of Corrections*, 789 F. Supp. 20, 22 (D.D.C. 1992). However, without citing any authority in her Opposition, the plaintiff continues to argue that respondeat superior liability is applicable. *See* Opposition at 8 ("…the Watch Commander is vicariously liable on the basis of respondeat superior for any violations of … Mr. Powers' civil and constitutional rights."). Moreover, the Complaint identifies no specific wrongdoing by any of the named District defendant officers. Accordingly, as *respondeat superior* is not a viable legal theory for constitutional claims, the Court should dismiss with prejudice all constitutional claims against the individual District defendants that are premised on *respondeat superior* liability.

    v.    <u>The plaintiff has not alleged any wrongdoing by any of the individually named defendants.</u>

In its Motion, the District defendants asked the Court to dismiss with prejudice the individually named defendants because the Complaint did not allege any specific wrongdoing by these individuals. Therefore, any constitutional claims against the District employees in their individual capacity should be dismissed. Moreover, the District defendants asked the Court to dismiss all common law and constitutional claims against the Watch Commander because s/he has not been named or served, nor has the plaintiff alleged any wrongdoing.

8

In response to this argument, the plaintiff's Opposition reiterates that the "Watch Commander is vicariously liable on the basis of respondeat superior for any violations of Mr. Powers' civil and constitutional rights." (Opposition at 8, citing Complaint at ¶ 32.) However, as explained in the District defendants' motion, and Part 1(A)(iv), *supra*, there is no *respondeat superior* liability in cases brought pursuant to 42 U.S.C. § 1983. Therefore, any constitutional claims premised on *respondeat superior* liability must be dismissed. *See* Part 1(A)(iv).

Moreover, there are no allegations that the Watch Commander had any contact with Mr. Powers, let alone placed Mr. Powers in a jail cell, isolated him from the general detainees or any other allegations (including the excessive force allegation) from which he could be reasonably held liable. The fact that the Watch Commander was identified by title, rather than name, is inconsequential. Significantly, there is not even an allegation that defendants Ramsey, McCoy and Gamble were even present at the 3D station before or during the timeframe in which Mr. Powers was housed there and/or killed himself. As there is no factual and/or legal basis for liability against either the unnamed and not-yet-served Watch Commander or defendants Ramsey, McCoy, Gamble and Watch Commander, all constitutional claims against them in their individual capacity must be dismissed with prejudice.[6]

    vi.    <u>The individually-named District defendants are entitled to qualified immunity.</u>

The District defendants argued, alternatively, that the individually named defendants are entitled to qualified immunity. The plaintiff's response was that "the determination of whether an individual defendant is entitled to qualified immunity is a factual question, and as such, a determination on this issue at this stage is premature." (Opposition at 21.) However, this response is legally incorrect. Qualified immunity is a question of *law* and is appropriately

---

[6] For the same reasons, all common law claims against the individual District defendants must be dismissed with prejudice. *See* page 12, *infra*.

decided at this early stage of litigation. *See* Motion at 20; *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (internal citations omitted) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'"). *See also Young v. Scales*, 873 A.2d 337, 341 (D.C. 2005) ("The issue of whether an officer is entitled to qualified immunity is a question of law to be determined by the trial court.").

In this case, in the absence of *any* facts describing any of the District employees' participation in—or even awareness of—any of the incidents described in the Complaint relating to Mr. Powers' suicide, the District employees are entitled to a dismissal of all claims because the plaintiff's complaint, even when viewed in the light most favorable to the plaintiff, does not state a constitutional violation committed by Chief Ramsey, Commander McCoy, Sergeant Gamble and/or the unnamed Watch Commander.

As to the plaintiff's purported excessive force allegation, the same analysis applies. There are no facts whatsoever in the Complaint from which this Court could conclude that any of the District employees named as defendants was either present for—or actually involved in–the facts surrounding the excessive force claim. Therefore, all excessive force claims against the individual District defendants must be dismissed with prejudice.

   vii. <u>Evidence that the General Orders Were Not Followed Is Not Relevant to the Plaintiff's Constitutional Claims.</u>

The Complaint alleges that the defendants' failure to comply with the MPD General Orders violated Mr. Powers' constitutional rights. (Complaint at ¶ 28.) In its Motion, the District defendants conceded that evidence that the police violated the general order is relevant for the jury to consider in a *negligence* case only, not a constitutional case. (*See* Motion at 15.)

This was consistent with District of Columbia precedent in *District of Columbia v. Walker*, 627 A.2d 40 (D.C. 1997).

The plaintiff fails to distinguish the relevant legal standards for her constitutional and common law claims. She argued in her Opposition that "there was a policy and a procedure that was ignored in this case" and that that fact should be considered in the Court's assessment of "the individual defendants' knowledge of a substantial risk." (Opposition at 13.) The plaintiff cites *Walker* to support her argument. (*Id.*) As both parties acknowledged in their filings, the "knowledge of a substantial risk" language comes from *Farmer v. Brennan* and relates to Mr. Powers' suicide as a violation of the Fifth Amendment. However, the plaintiff's reliance on *Walker* to support this proposition is unfounded, because *Walker* is a negligence case and the plaintiff was discussing the legal standard for her constitutional claim. Therefore, the Court should conclude that such evidence is not relevant to the plaintiff's constitutional claims.

Moreover, the *Bradich* court was similarly faced with a claim that the City of Chicago was liable for the employees' mistakes. The *Bradich* court affirmed the district court's decision to grant summary judgment in the municipality's favor, noting:

> [M]unicipalities are not vicariously liable under 42 U.S.C. § 1983 for their employees' errors. See *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). They are liable only for their own policies. The record in this case shows that some of these policies were not followed--for example, the City's rules called for close monitoring of the cells (intoxicated prisoners must be checked in person or by closed-circuit video every 15 minutes), and the lockup keepers did not follow this rule. The record suggests that they were playing cards and watching television instead of watching the monitors that displayed what the prisoners were doing. None of Chicago's policies is constitutionally inadequate; indeed, the Estate does not take issue with any of them. Its argument, rather, is that Chicago did not ensure that all of its employees followed all of its policies all of the time. That theory of liability is incompatible … with *Monell*.

*Bradich*, 413 F.3d at 690.

11

Here, too, the plaintiff is trying to hold the District liable because its employees allegedly did not follow MPD General Orders, policies and procedures.  Like *Bradich*, the plaintiff alleges that the officers violated the policies because they did not properly monitor the detainee.  Similarly, too, there is no allegation that MPD's General Orders, policies and procedures were themselves constitutionally inadequate.  Accordingly, the Court should follow the Seventh Circuit's ruling in *Bradich* and determine that the plaintiff's proposed theory of liability is inconsistent with *Monell*.  Further, the Court should limit any evidence relating to the alleged failure to follow General Orders, policies and procedures to a negligence claim, if such a claim remains after the Court rules on the instant Motion.

**B) The Plaintiff's Common Law Claims Do Not Survive a Motion to Dismiss.**

The District defendants argued in their Motion that all common law claims against the District defendants based on the decedent's suicide must fail.  (Motion at 22-27.)  The plaintiff's Opposition does not sufficiently rebut these arguments.

      i.      <u>Plaintiff Essentially Concedes that Her Wrongful Death Claim is Barred by the Statute of Limitations.</u>

In its Motion, the District defendants argued that the plaintiff's wrongful death claim was barred by the statute of limitations.  (*See* Motion at 25; D.C. Code § 16-2702.)  The plaintiff's Opposition failed to respond to that argument or offer any contrary legal authority.  The Court should therefore treat this argument as conceded.  Accordingly, as the one-year statute of limitations period expired long before the plaintiff brought the instant suit, the Court should dismiss the wrongful death claims against all of the District defendants with prejudice.

### 3. SUMMARY JUDGMENT MUST BE GRANTED IN THE DISTRICT'S FAVOR ON PLAINTIFF'S COMMON LAW CLAIMS BECAUSE THE PLAINTIFF FAILED TO GIVE THE DISTRICT PROPER D.C. CODE § 12-309 NOTICE.

In its Motion, the District argued that summary judgment should be granted in its favor because the plaintiff did not provide notice consistent with D.C. Code § 12-309. Specifically, the District alleged that the plaintiff's October 27, 2004 letter to the then-General Counsel for the Department of Corrections failed to provide notice that complied with D.C. Code § 12-309.[7] The plaintiff responded as follows: 1) The October 27, 2004 letter was received by the Office of Risk Management; 2) A second letter, dated November 5, 2004, was sent to Terrance Ryan, General Counsel for MPD; and 3) The incident report, attached to the plaintiff's Opposition as Exhibit 1, provided sufficient information to give the District notice. However, the plaintiff's responses are insufficient to rebut the District's argument.

#### A. The Plaintiff's October 27, 2004 Letter Does Not Comply with D.C. Code § 12-309.

In addition to the reasons states in the Motion, the fact that the October 27, 2004 letter was received by the Office of Risk Management does not change the fact that it was not sent to the Mayor, as required by D.C. Code § 12-309.[8]

#### B. The Plaintiff's November 5, 2004 Letter Does Not Comply with D.C. Code § 12-309.

The November 5, 2004 letter, attached to plaintiff's Opposition as Exhibit 4, fails for the same reasons that the October 27, 2004 letter fails. That letter was sent to Terrance Ryan, General Counsel for the Metropolitan Police Department. Again, there is no indication that any

---

[7] This letter was attached to the District defendants' Motion as Exhibit A and the plaintiff's Opposition as Exhibit 2.

[8] The plaintiff contends that the October 27, 2004 letter "references Case No. 04-1745," which the District was supposed to automatically know was the number assigned by the Office of the Chief Medical Examiner. Without any language identifying this as the number assigned by the Office of the Chief Medical Examiner, there is no way the District could have known that reference. The formulation of numbers could have just as easily been a federal or superior court case number or a number that has an entirely different purpose.

13

copy of this letter was sent to the Mayor, as required by D.C. Code § 12-309. Moreover, the letter does not describe the "approximate time, place, cause, and circumstances of the injury or damage" because it continues to misstate the place of the injury and did not state the time of the injury.[9] Moreover, the § 12-309 letter does not aptly describe the "cause and circumstances of the injury or damage." Here, the § 12-309 notice was apparently revised to state that the decedent "died while in the custody of the District of Columbia Metropolitan Police Department." Significantly, the letter does not identify the actual cause of death, which the Medical Examiner apparently ruled as "suicide by hanging." (Complaint at ¶ 24.) Moreover, it does not identify what "duty of care and protection" was allegedly lacking and/or how this alleged failure caused the decedent to hang himself while at the MPD station. The notice lacks any information that the District could understand as relating to a claim of *intentional* infliction of emotional distress, gross negligence, survival action, wrongful death and/or direct liability for failure to train and/or supervise.

### C. The 4-Page Incident Report Does not Satisfy the Statutory Requirements of D.C. Code § 12-309.

Alternatively, the plaintiff's contends that the incident report, attached to her Opposition as Exhibit 1, is sufficient to satisfy the requirements of D.C. Code § 12-309 notice. However, the plaintiff incorrectly designated all five pages as the incident report. In fact, what the plaintiff designated as Exhibit 1 is actually two separate documents, the P.D. 251 (also called an Incident-Based Event Report) and a separate, unidentified handwritten document (with a November 3, 2004 date). The P.D. 251 itself is the Incident Report. The separate, unidentified handwritten document is not.

---

[9] The November 5, 2004 letter also mistakenly stated that Mr. Powers died while being detained at the D.C. Jail.

14

To support this distinction, the District defendants attached a declaration from Lieutenant William O'Connor, who is assigned to the Records Branch of the Metropolitan Police Department. (Declaration attached hereto as Exhibit B.) Lieutenant O'Connor described the P.D. 251 as a "4-page, computer print-out document that officers use to describe an incident that has occurred. Notably, the CCN number is on every page of the P.D. 251." (Exhibit B at ¶ 4.) Further, Lieutenant O'Connor stated, "[i]f an officer needs more space to complete the narrative section on page 3 of the P.D. 251, there is a supplemental form, called P.D. 251-A, that can be used." (Exhibit B at ¶ 5.) A blank P.D. 251-A is attached hereto as Exhibit C.

After reviewing plaintiff's Exhibit 1, Lieutenant O'Connor stated that, "the handwritten document, dated November 3, 2004, is not part of the P.D. 251." (Exhibit B at ¶ 6.) He provided the following reasons for his conclusion that the handwritten document is not part of the P.D. 251: "First, the handwritten document is not a P.D. 251, which is the proper form to be used if an officer needs additional pages to complete the narrative section. Second, there is no notation on the P.D. 251 that additional pages were to be included. Third, the handwritten document itself does not even reference the P.D. 251 or the CCN number, which is on every page of the P.D. 251." (Exhibit B at 6.) Based on this declaration, to the extent that the Court considers plaintiff's Exhibit 1, it should only consider the computer-generated 4 page printout, commonly referred to as the P.D. 251, and not the separate, unidentified handwritten document.

Hence, the plaintiff's reliance on the substance of the handwritten document to meet the legal requirements of D.C. Code § 12-309 is not appropriate because it is not part of the P.D. 251, the actual incident report. Additionally, her reliance on *Jacqueline R. v. District of Columbia*, 370 F. Supp. 2d 267 (D.D.C. 2005), to support this proposition is misplaced, given the abundant information available to the District in the *Jacqueline R.* police report and relative

15

lack of information available to the District from the P.D. 251 in the instant case.[10]  However, there are other cases, more factually similar to the instant case, where the Courts have concluded that the police report did not give sufficient notice to the District of its potential liability.

In *Braxton v. National Capital Housing Authority*, 396 A.2d 215 (1978), the District of Columbia Court of Appeals found that a plaintiff failed to satisfy the notice requirements of D.C. Code § 12-309 where there was an inadequate description of the "cause" of the injury in the police report.  There, the police report indicated that plaintiff's apartment was burglarized when the back door lock was pried open.  By the time the case came to court, the plaintiff modified the theory of liability to argue that the District negligently allowed a thief to steal the key to the apartment. However, the Court of Appeals found that plaintiff could not recover on this theory because the District did not have timely notice of this "cause" as required by Section 12-309. The Court of Appeals concluded:

> While the police reports of January 13 and 14 contain the name of [complainant] and the approximate time and place of the burglary, they do not state such cause and circumstances as would give the District of Columbia notice of a forthcoming claim that careless handling of a master key on the part of NCHA enabled the burglary to take place. The report of January 13 states that the apartment had been entered by prying open rear lock on door." There is no indication that a skeleton key possessed by … NCHA employees was the mode of entry. The follow-up report of January 14 states that the complainant … had nothing further to add to the information already given. Taken together, these reports yield no facts from which the District could reasonably conclude that there was a claim against it for negligent action on the part of NCHA.

---

[10] In *Jacqueline R.*, the Court concluded that the police report put the District on notice as to its potential liability for the following reasons:
> First, the report contains a description of the alleged assault by Mark on the complainant and the statement that Mark assaulted other campers, including Ronnie. In addition, the report documents that Camp Riverview is run by the D.C. Department of Parks and Recreation and is owned and operated by the District of Columbia … Critically, the report also includes a note that "Mark is the oldest and he was in charge." … As there is no dispute … that the District owns and operates Camp Riverview, any authority that Mark had at the camp would have to have flowed from the District.

*Id.* at 274 (internal citations omitted).

*Id.* at 217. Hence, the *Braxton* Court dismissed plaintiff's case pursuant to Section 12-309, finding that the plaintiff failed to timely give the District notice that its handling of the keys to the plaintiff's apartment was the cause of the injury. Notably, in *Braxton*, the District was aware that plaintiff was injured based on the police report. However, merely describing the injury is not enough. Rather, the plaintiff must give notice of *how* the District caused the injury so that it can investigate according to *Braxton*.

Similarly, in *Doe by Fein v. District of Columbia*, 697 A.2d 23 (D.C. 1997), the plaintiff also sought to rely on a police report to satisfy § 12-309. There, the plaintiff claimed that the District was liable for burns that a child suffered because the District did not remove the child from her mother's custody. "Although the police reports in [that] case recite[d] the time, place, and circumstances of Jane Doe's injuries, they fail[ed] to disclose or suggest any basis for liability on the part of the District of Columbia." *Id.* at 27. The police report did not indicate that the injury occurred because the child was allowed to live her mother. Hence, the Court found that the police reports at issue did not disclose "the District's role in [Jane Doe's] injury." *Id.* Holding that "[a]ny uncertainty about the nature of the District's connection to the claimant's injury would surely hinder an investigation," the Court held plaintiff's case was barred by the failure to adequately describe the "cause" of the injury as required by D.C. Code § 12-309.

Based on the content of the 4-page Incident Report, here are the only relevant facts: Mr. Powers' was stopped, searched and arrested by the USSC for possession with intent to distribute and failure to have a D.C. permit. Mr. Powers was transported to a holding cell at the 3D police station and subsequently strangled himself. Notably, the report does not describe any contact between any MPD officer and Mr. Powers. In fact, the incident report was prepared by the USSC, not MPD. The reporting officer was Officer Burdyn and the second officer was Officer

17

Giles, both of the USSC. Simply, the plaintiff's purported § 12-309 letters and the 4-page incident report fail to identify any meaningful connection between the District and the plaintiff's injury as required by *Braxton* and *Doe*. There is nothing in the plaintiff's purported D.C. Code § 12-309 letters or in the 4-page Incident Report to alert the District to investigate either a possible wrongful death or constitutional claim based on the plaintiff's suicide or any claim relating to excessive force or contusions or bruises on his body. Nor is there anything in those documents from which the District could be on notice of its potential liability for common law claims of intentional infliction of emotional distress, gross negligence, survival action, wrongful death and/or direct liability for failure to train and/or supervise.[11] Accordingly, as the District did not have proper notice, consistent with D.C. Code § 12-309, summary judgment must be entered in the District's favor on her common law claims, including wrongful death, survival action, gross negligence, intentional infliction of emotional distress and failure to train and/or supervise.

WHEREFORE, the District defendants respectfully request that the Court dismiss the plaintiff claims against them with prejudice and/or grant summary judgment in the District's favor.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

---

[11] Moreover, if this Court was to determine that the incident report in and of itself satisfies D.C. Code § 12-309, such a finding has serious public policy implications as it would potentially expose the District to liability in every single case where an incident report is generated, regardless of the content of that report.

18

        /s/
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

19