## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PATRICIA A. POWERS-BUNCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1586 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

On July 15, 2004, Terence Anthony Powers committed suicide in a holding cell at the Metropolitan Police Department's Third Precinct Headquarters only hours after he was arrested for possession of cocaine with intent to distribute and driving with a suspended license. Mr. Powers's mother, Plaintiff Patricia Powers-Bunce, has sued the District of Columbia and several individual Metropolitan Police Department ("MPD") and United States Secret Service ("USSS") officers seeking to hold them legally accountable for her son's suicide. Defendants have moved to dismiss on the grounds that Complaint fails to state any cognizable claim and that the Court lacks jurisdiction over Plaintiff's tort claims. The Court will grant the motions to dismiss in part and deny them in part, and will order Plaintiff to provide a more definite statement of her constitutional claims against the individual officers.

## I.  BACKGROUND FACTS

The following facts are taken from Plaintiff's Complaint. Sometime in the early morning hours of July 15, 2004, Officers Michael Burdyn and B. Giles of the USSS allegedly saw a car fail to stop at a red light at the intersection of Massachusetts Avenue and Dupont Circle in the

Northwest quadrant of Washington, D.C.  Compl. ¶ 10.  That vehicle was being driven by Terence Anthony Powers.  *Id.*  Officers Brudyn and Giles followed Mr. Powers for approximately 17 blocks before pulling him over for the red-light infraction.  *Id.* ¶ 12.  When the Officers checked Mr. Powers's drivers license on the Washington Area Law Enforcement System ("WALES"), they learned that the license was suspended.  *Id.* ¶ 13.  According to "uncorroborated information" contained in a report of the incident, Officers Brudyn and Giles observed Mr. Powers reach behind the passenger seat of his vehicle and retrieve something that he then placed inside a cigarette box.  *Id.* ¶ 14.  The Officers searched the vehicle and discovered a cigarette box containing five plastic bags filled with a white powder that allegedly field tested positive for cocaine, although lab reports confirming the test have not been provided to Plaintiff.  *Id.* ¶ 14.  Officers Brudyn and Giles arrested Mr. Powers for possession of cocaine with intent to distribute and for driving with a suspended license.  *Id.* ¶ 15.  The precise time of the stop and arrest is unknown because the Officers failed to prepare a traffic violation citation.  *Id.* at ¶ 11.

At approximately 1:30 a.m. on July 15, "the USSS Uniform Division" took Mr. Powers to the MPD's Third Precinct station at 16th and U Streets Northwest, Washington, D.C., *id.* ¶ 16, although Mr. Powers was "never formally processed by either the USSS or the MPD," *id.* ¶ 18.  After arriving at the Third Precinct station, Mr. Powers was interrogated by officers of the USSS and/or the MPD.  *Id.* ¶ 19.  At approximately 2:00 a.m., Mr. Powers was placed alone in a cell that was isolated from "the general detainees" and "partially blocked from view."  *Id.* ¶ 17.  Before being placed in the cell, Mr. Powers "expressed concern about facing possible jail time."  *Id.* ¶ 17.  The Complaint alleges that he was not permitted to make a phone call "or make any other contact."  *Id.*

According to a police report, officers checked on Mr. Powers in his cell at or around 2:30 a.m. *Id.* ¶ 20. No one checked on Mr. Powers again until 4:16 a.m., at which time Mr. Powers was found hanging from the bars of the cell by a pair of tube socks tied in a knot. *Id.* ¶ 22. The failure to check on Mr. Powers for a two-hour period allegedly violated MPD's general orders, policies, and procedures. *Id.* ¶ 21. At the time he was discovered hanging, Mr. Powers exhibited no signs of life; medics were summoned and confirmed that Mr. Powers appeared to be deceased. *Id.* ¶¶ 22-23. Mr. Powers was transported to the Office of the Medical Examiner where he was pronounced dead at 8:35 a.m. *Id.* ¶ 23. The Medical Examiner determined the cause of death to be suicide by hanging. *Id.* ¶ 24.

In addition to neck injuries caused by hanging, the Medical Examiner documented contusions on Mr. Powers's lateral chest, back, thighs, and shins. *Id.* ¶ 25. "An independent medical examiner found that some of the bruising to Mr. Powers's back, buttocks and legs was consistent with inflicted blows and excessive force used upon him by police officer night sticks." *Id.* ¶ 26. There is no indication or evidence that Mr. Powers was combative during the arrest and confinement that ended with his suicide. *Id.* ¶ 25. There is no videotape of Mr. Powers's confinement at the Third Precinct station, which allegedly violated MPD's general orders, policies, and procedures. *Id.* ¶ 30.

Based on the foregoing allegations, Plaintiff filed suit in D.C. Superior Court on July 14, 2006. Defendants removed the case to this Court on September 13, 2006. The Complaint asserts six causes of action against Chief Charles Ramsey, Commander Larry McCoy, Sergeant R.W. Gamble, and the Third District Watch Commander of the MPD (the "individual District Defendants"); Director Mark Sullivan, Officer Michael Burdyn, Officer B. Giles, and "Chief of the

Uniformed Division" of the USSS (the "Federal Defendants") (collectively, the "individual Defendants"); and the District of Columbia. The first cause of action is titled "Violation of Civil Rights" and alleges violations of the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. The remaining causes of action are generic tort claims based on statute and the common law. Specifically, Plaintiff asserts claims for intentional infliction of emotional distress (Count II), gross negligence (Count III), "Survival Action" (Count IV), wrongful death (Count V), and "Direct Liability to the District of Columbia for Failure to Train and Supervise" (Count VI).

The Complaint is vague about which Defendants are subject to which causes of action. As best as the Court can discern, the "Violation of Civil Rights," "Survival Action," and wrongful death causes of action are asserted against all Defendants in both their personal and official capacities; the infliction of emotional distress and gross negligence claims are asserted against Officers Burdyn and Giles in their personal and official capacities and against the District of Columbia as their employer; and the "failure to train and supervise" cause of action is asserted only against the District of Columbia. Plaintiff seeks $20 million in damages.

Defendants have moved to dismiss the Complaint in its entirety. They argue that the constitutional claims and certain tort claims are subject to dismissal under Rule 12(b)(6). In addition, the Federal Defendants argue that the Court lacks jurisdiction over the tort claims against them because Plaintiff failed to comply with the exhaustion requirements of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* Similarly, the District of Columbia argues that the tort claims against it must be dismissed because Plaintiff failed to provide adequate notice of her claims under D.C. Code § 12-309. The motions have been fully briefed and are now ripe for decision.

-4-

## II.  LEGAL STANDARDS

### A.     Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences therefrom in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).  The court need not, however, accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In deciding a Rule 12(b)(6) motion, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).  However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

### B.     Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction.  *See Shekoyan v. Sibley Int'l Corp.*, 217 F.

Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19

(D.D.C. 1998).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause

lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  Because

"subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties

can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339

F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*,

456 U.S. 694, 702 (1982)).  It is well established that, in deciding a motion to dismiss for lack of

subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but

may also consider material outside of the pleadings in its effort to determine whether the court has

jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138,

142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

## III.  ANALYSIS

### A.     Constitutional Claims.

Although the Complaint does not mention the laws under which Plaintiff advances

her constitutional claims, the Court will assume that the claims against the individual District

Defendants are brought under 42 U.S.C. § 1983, the claims against the Federal Defendants are

brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

(1971), and the claims against the District of Columbia are brought under *Monell v. N.Y. City Dep't

of Social Servs.*, 436 U.S. 658 (1978).  It is elementary that in order to state a claim under  § 1983,

*Bivens*, and *Monell*, a plaintiff must allege that the defendant violated a right protected by the

Constitution.  Here, the Complaint contends that Defendants violated Mr. Powers's Fifth, Eighth, and Fourteenth Amendment rights.  Compl. ¶ 28.  The question under Rule 12(b)(6) is whether the facts alleged, if shown to be true, would establish that Defendants violated rights guaranteed by those Amendments.

   1. *Eighth and Fourteenth Amendment Claims*.

   The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishment" on prison inmates, which includes "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Under well-settled law, the Amendment's prohibition applies only to persons who are subject to "punishment" by the government, which the Supreme Court has defined to mean persons against whom the government "has secured a formal adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979) (internal quotation marks omitted).  Thus, the Eighth Amendment does not apply to pretrial detainees like Mr. Powers who have not been adjudicated guilty of any crime and are therefore not subject to "punishment." *See id.*

   Plaintiff is incorrect that Eighth Amendment rights have been extended to pretrial detainees under the Fourteenth Amendment. *See* Pl.'s Opp. to District Defs.' Mot. to Dismiss ("Pl.'s Opp. to D.C.") at 9.  Rather, courts have held that pretrial detainees have an *independent* due-process right under the Fifth and Fourteenth Amendments to be free from prison officials' "deliberate indifference" to their substantial medical needs. *See O.K. v. Bush*, 344 F. Supp. 2d 44, 61 n.23 (D.D.C. 2004) ("The standard of care for a pre-trial detainee who has not yet been convicted . . . is governed by the Due Process Clause of the Fifth and Fourteenth Amendments rather than by the

Eighth Amendment."); *see also Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992) ("[A] pretrial detainee does not enjoy protection of the Eighth Amendment").  Courts have consistently held that this right belonging to pretrial detainees is "at least as great as" the analogous Eighth Amendment right and, therefore, generally treat the two claims as analytically identical.  *See Barber*, 953 F.2d at 235 ("[T]he Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process right under the Fourteenth Amendment."); *accord Payne v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1999).  Notwithstanding the similarity of these rights, it is clear that the right belonging to pretrial detainees arises under the Fifth or Fourteenth Amendment, not the Eighth Amendment.  As a result, the Court must dismiss Count I of the Complaint to the extent that it is based on alleged violations of the Eighth Amendment because Mr. Powers, as a pretrial detainee, had no Eighth Amendment rights that could have been violated.

Similarly, Plaintiff has failed to assert a valid claim under the Fourteenth Amendment.  The Due Process Clause of the Fourteenth Amendment reads in pertinent part: "No State shall . . . deprive any person of life, liberty, or property without due process of law . . . ."  Thus, by its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia.  *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the [defendant] and the Federal Government. Therefore, the Fourteenth Amendment does not apply."); *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia).  Because Plaintiff has sued only the District of Columbia, employees of the District of Columbia, and

officers of the USSS (an agency of the Federal Government), the Fourteenth Amendment is inapplicable.  Thus, Count I must be also dismissed to the extent it is based on an alleged violation of the Fourteenth Amendment.

> 2.     *"Unlawful search and seizure" and "excessive force" claims.*

Plaintiff also contends, in her opposition papers, that Count I is based on "an unlawful stop, unlawful search, unlawful detainment . . . [and] physical injuries inflicted on Mr. Powers while he was in custody."  Pl.'s Opp. to D.C. at 2.  But the Complaint fails to allege facts to support claims for an unlawful search and seizure or excessive force.

First, any claims alleging an unlawful stop and search would arise under the Fourth Amendment.  *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").  But Count I of the Complaint does not mention the Fourth Amendment and, as discussed above, the Fourteenth Amendment is not applicable to these Defendants.  In any event, there are insufficient facts in the Complaint to state a claim for an unlawful search and seizure.  According to the Complaint, Officers Burdyn and Giles observed Mr. Powers run a red light and pulled him over.  When they ran a WALES search they learned that Mr. Powers's driver's license was suspended.  The Officers then observed Mr. Powers hide something inside a cigarette box and, after searching the vehicle, they found five packets allegedly containing cocaine inside the cigarette box.  Based on these facts, the Officers arrested Mr. Powers.  These are the only facts alleged in the Complaint regarding the stop, search, and arrest.  There is simply no factual basis to support a conclusion that the Officers' conduct was "unreasonable" under the Fourth Amendment.  Merely asserting that the

stop and search were "unlawful" or "illegal," Compl. ¶ 28, is, of course, nothing more than a legal conclusion that the Court need not accept as true. *See Browning*, 292 F.3d at 242.

Second, Plaintiff contends that Mr. Powers was subjected to "excessive force" in violation of the Constitution, and purports to support that contention with the factual assertion that a medical examiner determined that "some of the bruising" on Mr. Powers's back and legs "was consistent with inflicted blows and excessive force used upon him by police officer night sticks." Compl. ¶ 26. Claims of excessive force arising from an unlawful arrest are typically based on a violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct.") (citation omitted). The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Here, Plaintiff alleges that Mr. Powers — who indisputably died by hanging himself from the bars of his holding cell — had "some" bruising that was "consistent with" blows from police batons. She also contends that Mr. Powers was not combative with officers during his arrest and detainment. Although Plaintiff is subject only to a notice pleading standard, these allegations fail to state a claim for excessive force in violation of the Fourth Amendment. The Complaint does not state that there was a beating, let alone that it was carried out by the named Defendants. The

-10-

Complaint's factual contentions are simply insufficient to establish that the named Defendants used a degree of force that was objectively unreasonable under the circumstances. *See id.*

The Court recognizes, however, that, under the circumstances of this case, Plaintiff is at an informational disadvantage and must be given some leeway in stating a viable claim based on the alleged unconstitutional arrest and use of excessive force. *See, e.g.*, *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (noting that "civil rights plaintiffs . . . often face informational disadvantages"). Therefore, the Court will dismiss the "unlawful stop, search, and detainment" and "excessive force" claims without prejudice.

>        3.        *Fifth Amendment Claim.*

Stripped of its chaff, Count I asserts that Defendants violated Mr. Powers's Fifth Amendment right to due process when they showed deliberate indifference to his substantial medical needs by failing to prevent his suicide. Compl. ¶ 28. The Complaint asserts Count I against the District of Columbia and against the individual Defendants in their official and individual capacities. Because different legal standards apply to municipal and individual defendants in civil rights cases, the Court will analyze those Defendants separately.

>        a.        Claim against the District of Columbia.

Reading the Complaint liberally, Plaintiff contends that the District of Columbia violated her son's Fifth Amendment rights by failing to provide "proper training" and to "instruct officers of [their] heightened duty to prevent injury and harm to detainees in their direct care and control." Compl. ¶ 49. Plaintiff also alleges that the District failed to supervise its officers properly. *Id.* ¶ 48. The District argues that the Complaint fails to state a claim based on a violation of the Fifth

Amendment because it does not allege that the District maintained a policy that rose to the level of deliberate indifference to the rights of pretrial detainees. *See* D.C.'s Mem. of P. & A. in Support of Mot. to Dismiss or, in the Alternative, for Summ. J. ("D.C.'s Mem.") at 17.

It is well settled that a municipality like the District of Columbia is not liable for the unconstitutional conduct of its employees based on *respondeat superior* or vicarious liability; it can be held liable only if it maintains a policy that causes a constitutional violation. *See Monell*, 436 U.S. at 693. In cases involving detainee suicides, the D.C. Circuit has held that a municipality cannot be held liable under § 1983 "unless the inadequate police training alleged and proved rises to the level of a 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Dorman v. District of Columbia*, 888 F.2d 159, 163 (D.C. Cir. 1989) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Plaintiff does not explain how the District's training policies were deficient, nor does she allege that the failure to supervise officers was systematic within the MPD such that it rose to the level of a policy. The Complaint does, however, generally recount the circumstances of Mr. Powers's suicide and makes the assertion that the District's "failure to provide proper training and supervision showed . . . deliberate indifference to the safety of civilians with whom its officers detain [sic], bring into custody[,] and to whom they owe a heightened duty with regard to their personal safety." Compl. ¶ 49. Thus, drawing all reasonable inferences in her favor, Plaintiff alleges that the District's failure to train its police officers in the proper detection and treatment of potentially suicidal detainees amounts to deliberate indifference to the rights of detainees like Mr. Powers. Under D.C. Circuit precedent, these allegations are sufficient to survive a motion to dismiss

under Rule 12(b)(6).  *See Atchison v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996) (holding that a complaint alleging a single incident of police officer misconduct together with an assertion that the District's failure to train its officers showed deliberate indifference was sufficient to state a claim under *Monell*).  Accordingly, the motion to dismiss the Fifth Amendment claim against the District of Columbia must be denied.  *See id.*; *see also Harris*, 489 U.S. at 389.

    b.  Claim against the individual Defendants.

  In order to establish that the individual Defendants were "deliberately indifferent" in violation of the Fifth Amendment, Plaintiff must allege that they "had subjective knowledge of [Mr. Powers's] serious medical need and recklessly disregarded the excessive risk to [his] health or safety from that risk." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  Recently, the Seventh Circuit cogently described the requirements for proving prison suicide claims against individual officers in the context of the Eighth Amendment which, as discussed above, are identical to the requirements for proving claims brought under the Fifth Amendment based on pretrial detainee suicides:

> [A] claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety.  In prison suicide cases, the objective element is met by virtue of the suicide itself, as "[i]t goes without saying that 'suicide is a serious harm.'"
>
>  Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.

*Collins v. Seeman*, 462 F.3d 757, 760-61 (7th Cir. 2006) (citations omitted); *accord Perez v. Oakland County*, 466 F.3d 416, 423-24 (6th Cir. 2006); *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006). Although a plaintiff must allege that the defendant had a subjective knowledge of a substantial risk of suicide, that knowledge "can be inferred from the obviousness of the risk." *Churchich*, 161 F.3d at 1042.

Here, Plaintiff has pled facts sufficient to satisfy the first element of her claim — *i.e.*, that Mr. Powers's suicide was a sufficiently serious harm. *Collins*, 462 F.3d at 760; *see also Baker*, 326 F.3d at 1306. As to the second element — that the individual Defendants subjectively knew of a substantial risk of suicide and intentionally disregarded that risk — Plaintiff alleges that Mr. Powers "expressed concern about facing possible jail time," Compl. ¶ 17; that Defendants did not formally book Mr. Powers and therefore failed to remove from his person items that he could have used to harm himself, *id.*; and that Defendants placed Mr. Powers alone in an isolated cell and intentionally failed to monitor him every 30 minutes in violation of MPD policy, *id.* ¶ 28. *See* Pl.'s Opp. to D.C. at 13. The Complaint also alleges that "Defendants . . . showed deliberate indifference for [Mr. Powers's] safety and well being." Compl. ¶ 28. Plaintiff asserts that every Defendant is directly liable and that "Defendants District of Columbia, MPD, Commander McCoy, the Watch Commander, Sgt. Gamble, USSS and Chief of the Uniformed Division"[1] are "vicariously liable on the basis or [sic] *respondeat superior* for any violation of Mr. Powers' civil and/or constitutional rights." Compl. ¶ 32.

---

[1] Because the MPD and USSS are not named as a Defendants, the Court assumes that these are references to MPD Chief Ramsey and USSS Director Sullivan, respectively.

As an initial matter, there is no vicarious liability for constitutional violations. This point of law is incontrovertible; it is directly established by Supreme Court and D.C. Circuit precedent. *See Monell*, 436 U.S. at 693 ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 27 (D.C. Cir. 2004) (holding that a supervisor cannot be held personally liable for the unconstitutional conduct of a subordinate based on vicarious liability); *Arnold v. Moore*, 980 F. Supp. 28, 35 (D.D.C. 1997) ("It is well settled that public officials are not vicariously liable for the acts of their subordinates. *Respondeat superior* cannot form the basis for liability for a § 1983 claim."). Plaintiff's argument to the contrary is frivolous. *See* Pl.'s Opp. to D.C. at 8. Moreover, § 1983 claims against municipal officers in their official capacities are equivalent to suits against the municipality itself and are typically dismissed as repetitive. *See Atchison*, 73 F.3d at 423. Similarly, *Bivens* claims against federal officers in their official capacities are barred by sovereign immunity. *See Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984). Accordingly, the constitutional claims against the individual Defendants based on vicarious liability, and the claims against the individual Defendants in their official capacities, must be dismissed with prejudice.

This leaves claims against the individual Defendants in their personal capacities for alleged direct violations of Mr. Powers's Fifth Amendment rights. Defendants argue that the Complaint does not allege that any of the individual Defendants heard Mr. Powers state that he was concerned about going to jail and, even assuming they did, this statement alone could not possibly have created in the individual Defendants a subjective knowledge that Mr. Powers was at risk for

suicide. *See* D.C.'s Mem. at 14. The Complaint does not allege that Mr. Powers was behaving erratically, that he was morose, despondent, or overly intoxicated, or that he exhibited any non-verbal indicia of suicidal tendencies. The individual Defendants argue that there is simply nothing in the Complaint establishing that they subjectively knew (or that it was so obvious that they should have known) that Mr. Powers was suicidal when they placed him alone in a holding cell. *See id.*

As noted above, Plaintiff alleges that Defendants "showed deliberate indifference for [Mr. Powers's] safety and well being," Compl. ¶ 28, and the D.C. Circuit has held that a complaint that generally describes an incident of police misconduct together with an allegation of "deliberate indifference" is sufficient to state a claim for municipal liability under *Monell*. *See Atchison*, 73 F.3d at 422-23. But unlike this case, *Atchison* did not involve claims against individual defendants; it was limited to a single claim against the District of Columbia. That difference is important because constitutional claims against individual government officials raise different questions, most significantly qualified immunity, that were simply not before the court in *Atchison*. The Court thus concludes that *Atchison* does not apply to Plaintiff's claims against the individual Defendants.

Indeed, the assertion of a qualified immunity defense significantly changes and complicates the analysis that the Court must perform in the context of these motions to dismiss. Although the Supreme Court has been clear that there is no heightened pleading standard in civil rights cases, *see Crawford-El v. Britton*, 523 U.S. 574, 591-92 (1998), it has also been clear that qualified immunity should be resolved "at the earliest possible stage in litigation," *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). This creates a tension between a civil-rights plaintiff's entitlement to meet only the liberal notice pleading standards of Rule 8, and an individual civil-rights defendant's

entitlement to have the court scrutinize the facts early in the proceedings to determine whether the defendant's alleged conduct was legally reasonable. *Compare, e.g.*, *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980) (holding that a civil-rights plaintiff need not plead facts relevant to a qualified immunity defense in order to state a claim), *with Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (internal quotation marks omitted). That tension is at its greatest where, as here, the complaint's factual allegations are scant and nonspecific.

In reconciling these competing rights, the Supreme Court has advised that district courts should use the tools available to them under the Federal Rules of Civil Procedure. *See Britton*, 523 U.S. at 598. For instance, a "court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal." *Id.* One such tool is Rule 12(e), under which a court may order a plaintiff to provide a more definite statement of her claims. *See id*; *see also Thomas v. Independence Twp.*, 463 F.3d 285, 289 (3d Cir. 2006) ("[A] lack of factual specificity in a complaint . . . precludes the district court from engaging in a meaningful qualified immunity analysis. The appropriate remedy is the granting of a defense motion for a more definite statement under Federal Rule 12(e)."). District courts have inherent authority to order a more definite statement in the absence of a defense motion "in order to protect the substance of the qualified immunity defense and avoid subjecting government officials who may be immune from suit to needless discovery and the other burdens of litigation." *Thomas*, 463 F.3d at 289.

Here, Plaintiff's factual averments are too vague and conclusory for the Court to conduct a meaningful analysis of the individual Defendants' motions to dismiss. Accordingly, the Court will treat Defendants' motions to dismiss as motions for a more definite statement under Rule 12(e), and will order Plaintiff to file more specific factual allegations supporting her contention that the individual Defendants knew, or should have known, that Mr. Powers was potentially suicidal when he was placed alone in the holding cell. In providing a more definite statement of her claims against the current individual Defendants, Plaintiff should bear in mind that there is no vicarious liability for constitutional violations. *See, e.g.*, *Bell v. City of Washington, D.C.*, No. 05-1372, 2006 WL 1933815, at *3 (D.D.C. July 10, 2006) ("A § 1983 claim can only be brought against a government official who was personally and directly involved in the wrongful acts."). Once Plaintiff has provided a more definite statement, the individual Defendants may renew their motions to dismiss, if necessary.

### B. Common-Law and Statutory Tort Claims.

Defendants raise a number of arguments supporting dismissal of Plaintiff's tort claims. Because the Federal Defendants challenge the Court's jurisdiction, the Court will address their arguments first.

#### 1. *Claims against the Federal Defendants*.

The FTCA is the exclusive remedy for obtaining damages based on tortious conduct committed by a federal employee acting within the scope of his employment. *See* 28 U.S.C. § 1346(b); 28 U.S.C. § 2679(b)(1); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997). Here, Plaintiff has sued four federal employees for damages based on alleged torts that

those employees committed while acting in the scope of their employment as officers of the USSS. Compl. ¶¶ 8-9. Accordingly, Plaintiff's tort claims against the Federal Defendants are governed by the FTCA. *See, e.g.*, *Ignatiev v. United States*, 238 F.3d 464, 465 (D.C. Cir. 2001) (holding that the FTCA applied to negligence claims against Secret Service Uniformed Division officers).[2]

The United States's waiver of sovereign immunity in the FTCA is contingent upon a plaintiff's compliance with certain procedural prerequisites, including filing a claim with the appropriate federal agency within two years of the alleged injury. *See* 28 U.S.C. § 2401(b). A plaintiff may not commence suit until either the agency denies the claim or six months have passed without any response from the agency. *See* 28 U.S.C. § 2675(a). If a plaintiff fails to exhaust these requirements before filing suit, the district court lacks jurisdiction over her claims. *Simpkins*, 108 F.3d at 371 ("[T]he FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action is jurisdictional.").

Plaintiff filed a claim with the USSS on July 13, 2006, within two years of Mr. Powers's death. *See* Nagel Decl. Ex. A. Plaintiff filed this lawsuit the very next day; she did not wait for a response from the USSS. Plaintiff therefore concedes, as she must, that she failed to comply with the FTCA's exhaustion requirement. Pl.'s Opp. to Fed. Def.'s Mot. to Dismiss at 7. As a result, the Court lacks jurisdiction over Plaintiff's tort claims against the Federal Defendants. *See Simpkins*, 108 F.3d at 371. Accordingly, Counts II, III, IV, and V against the Federal Defendants

---

[2] The FTCA does not apply to Plaintiff's constitutional claims. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims.").

must be dismissed without prejudice.  *See id.* at 372 (noting that dismissal for lack of jurisdiction based on a failure to exhaust FTCA procedural requirements should be without prejudice).

> 2.     *Claims against the individual District Defendants*.

The Complaint alleges two tort claims against the individual District Defendants: Count IV, which is titled "Survival Action," and Count V for wrongful death under D.C. Code § 16-2701.  Defendants argue that the Complaint contains no allegations that the individual District Defendants engaged in any wrongdoing and that the wrongful death claim is barred by the statute of limitations.  D.C.'s Mem. at 25-27.

In Count IV of the Complaint, Plaintiff asserts a "Survival Action" under D.C. Code § 12-101 as a separate cause of action.  Compl. ¶¶ 41-44.  Section 12-101 "preserves for the benefit of the decedent's estate a right of action the decedent had before death.  Its purpose is to place the decedent's estate in the same position it would have occupied if the decedent's life had not been terminated prematurely." *Lewis v. Lewis*, 708 A.2d 249, 252 (D.C. 1998) (citation omitted).  In other words, § 12-101 allows a person representing a decedent's estate to assert tort claims belonging to the deceased victim that would have been precluded at common law; it does not create a distinct, substantive cause of action.  *See Henson v. W.H.H. Trice & Co.*, 466 F. Supp. 2d 187, 192 (D.D.C. 2006) ("[A]t common law, tort claims do not survive a plaintiff's death; however, [§ 12-101] permits legal representatives to bring tort claims on behalf of a decedent's estate.").  Thus, § 12-101 merely provides the legal basis for Plaintiff to bring tort claims, such as intentional infliction of emotional distress and negligence, that belonged to her son before his death.  Accordingly, the Court will dismiss Count IV for failure to state a claim because it alleges no underlying, substantive tort.

-20-

With respect to the wrongful death claim, the District argues that it is barred by the applicable one-year statute of limitations. *See* D.C. Code § 16-2702. The Complaint alleges that Mr. Powers died on July 15, 2004, and that Plaintiff learned of his death on July 28, 2004. Compl. ¶ 40. This action was filed on July 14, 2006, nearly a year after the limitations period had expired. Plaintiff failed to respond to Defendants' statute of limitations argument in her opposition briefs. The Court therefore treats the argument as conceded, *see* LCvR 7.1(b); *Hester v. District of Columbia*, 433 F. Supp. 2d 71, 78 (D.D.C. 2006), and will dismiss Count V.

The Complaint does not appear to include the individual District Defendants in the other tort Counts (intentional infliction of emotional distress and negligence). But even assuming that Plaintiff meant to include the individual District Defendants in those Counts, the Complaint still fails to allege a viable claim against them. If the other Counts were brought against those Defendants in their official capacities, such claims would be redundant to the claims against the District of Columbia and subject to dismissal on that basis. *Arnold v. Moore*, 980 F. Supp. 28, 35 (D.D.C. 1997). And if the other Counts were brought against those Defendants in their personal capacities, the Complaint fails to allege facts demonstrating that they engaged in any wrongdoing. For example, Defendant McCoy is mentioned in only two places in the Complaint: paragraph 7, which identifies him as an MPD employee; and paragraph 32, which simply asserts that he is vicariously liable for violations of Mr. Powers's constitutional rights. The Complaint says literally nothing else about him. The same is true for Chief Ramsey, Sgt. Gamble, and the unnamed "Watch Commander." The Complaint clearly fails to state any tort claim against the individual District Defendants. Therefore, Counts II – V against the individual District Defendants must be dismissed.

-21-

3.    *Claims against the District of Columbia.*

The only remaining tort claims are found in Counts II, III, and VI against the District of Columbia.  The District's primary defense to these claims is that Plaintiff failed to satisfy the requirements of D.C. Code § 12-309, which states that any person wishing to bring a personal injury action against the District of Columbia must, within six months of sustaining the injury, notify the Mayor in writing "of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."

On October 27, 2004, within six months of Mr. Powers's death, counsel for Plaintiff sent a letter to Gregory Jackson, General Counsel for the D.C. Department of Corrections, regarding "Notice of Claim."  That letter states in pertinent part:

> Pursuant to DC Code § 12-309 (2004), this letter is to serve as formal notice to the Mayor of a pending action against the District of Columbia.
> On July 15, 2004, the claimant suffered the death of her son, Terence Anthony Powers (case # 04-1745), as a result of his being involuntarily detained at the District of Columbia Jail.  Mr. Powers died while in the custody of the District of Columbia Department of Corrections.  The Department of Corrections failed to perform the duty of care and protection to Mr. Powers.  Due to this failure, the claimant lost her son.

D.C.'s Mem. Ex. A.  Approximately one week later, Plaintiff's counsel sent a letter to Terrence Ryan, the MPD's General Counsel, that was identical to the October 27 letter in all respects except it stated that Mr. Powers died in the custody of the MPD and that the MPD "failed to perform the duty of care and protection to Mr. Powers."  Pl.'s Opp. to D.C. Ex. 4.

The District argues that these letters fail to satisfy § 12-309 because (1) they were not sent to the Mayor, and (2) they fail to specify the "approximate time, place, cause, and

-22-

circumstances" of Mr. Powers's death. D.C.'s Mem. at 23-24. Plaintiff responds that the letters did not need to be sent to the Mayor because the Mayor has delegated authority to receive notice letters under § 12-309 to the Office of Risk Management; and the letters' reference to "case # 04-1745," which was the number assigned to Mr. Powers's case by the Office of the Chief Medical Examiner ("OCME"), was sufficient to satisfy § 12-309's substantive requirements. Pl.'s Opp. to D.C. at 14-15.

The District is correct that the letters in question are deficient in several respects. Putting aside the fact that they were sent neither to the Mayor nor to the Office of Risk Management, the letters incorrectly state that Mr. Powers died at the D.C. Jail when, in fact, he died at the Third Precinct station as alleged in the Complaint. Moreover, they give not the slightest indication how Mr. Powers died, let alone that his death was a suicide. And the citation to "case # 04-1745" is essentially meaningless because it is completely detached from any reference to OCME. So not only were the letters imprecise, they actually contained misinformation about the circumstances of Mr. Powers's death. Omissions and errors of this magnitude render the letters insufficient under § 12-309. *See Winters v. District of Columbia*, 595 A.2d 960, 960-61 (D.C. 1991).

Nevertheless, the Court concludes that the MPD's incident report on Mr. Powers's suicide is sufficient to satisfy § 12-309. By its terms, § 12-309 states that a written MPD report, prepared in the regular course of duty, is sufficient notice of a claim. "Permitting police reports to serve as an alternative form of notice is based on the idea that written notice by a claimant should not be a prerequisite to legal action if, in fact, *actual notice* in the form of a police report has been received by the District." *R. v. District of Columbia*, 370 F. Supp. 2d 267, 271 (D.D.C. 2005)

-23-

(internal quotation marks omitted).  A police report will satisfy § 12-309 if it contains "information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice." *Id.* (internal quotation marks omitted).  When deciding whether a police report meets these criteria, a court should consider "the particular facts of the case, the nature of the report itself and the objectives sought to be obtained by the notice provision." *Id.* (internal quotation marks omitted).

Here, officers of the MPD prepared an "Incident-Based Event Report," known as a "P.D. 251," only minutes after Mr. Powers committed suicide.  Pl.'s Opp. to D.C. Ex. 1.  The P.D. 251 described the stop, search, and arrest of Mr. Powers much as it is alleged in the Complaint.  *Id.* It then stated that at 4:16 a.m. on July 15, 2004, Mr. Powers was found in his cell hanging from the bars by a makeshift noose made from his socks.  *Id.*  It continued that Mr. Powers was taken to the OCME and pronounced dead at 8:35 a.m. by Dr. DiAngelo.  *Id.*  It finally posited that Mr. Powers "committed suicide by strangling himself" and indicated by name the officers assigned to investigate the incident.  *Id.*  Thus, the P.D. 251 contained the time, place, cause and circumstances of Mr. Powers's death.

The District argues that the report does not adequately state the "cause" of the alleged injury, citing *Braxton v. Nat'l Capital Housing Auth.*, 396 A.2d 215 (D.C. 1978), and *Doe v. District of Columbia*, 697 A.2d 23 (D.C. 1997).  D.C.'s Reply Mem. at 16-17.  But this case is nothing like *Braxton* or *Doe*, both of which involved claims that the District of Columbia was liable for the torts of a third party:  in *Braxton* for the burglary of a D.C. Housing Authority apartment based on the District's negligence in allowing the thieves to steal a master key; and in *Doe* for burns inflicted on

a child by her godmother based on the District's failure to remove the child from her birth mother's custody. The courts in those cases held that the police reports contained no information that would have put the District on notice that it might be held liable for the acts of those third parties. That is, there was nothing in the police reports that would "suggest any basis for liability on the part of the District of Columbia." *Doe*, 697 A.2d at 27. Here, by contrast, the P.D. 251 unambiguously stated that the victim died while in the custody and control of the MPD. No elaborate legal theory is needed to establish a causal nexus between the District of Columbia's actions and the alleged injury.

It is true that the P.D. 251 did not establish, on its face, that District employees were negligent with respect to Mr. Powers's suicide. But the purpose of § 12-309 is not to require claimants to submit proof of their claims before suing the District. The question is whether a police report contains information "from which it could be reasonably anticipated that a claim against the District might arise." *R.*, 370 F. Supp. 2d at 273 (internal quotation marks omitted). Put differently, § 12-309 requires only that the report "furnish a reasonable guide for inspection and provide [an] early warning to District of Columbia officials regarding litigation likely to occur in the future." *Id.* at 272 (internal quotations and modifications omitted). Under that standard, the Court finds that the P.D. 251 contains enough detail regarding the "time, place, cause and circumstances" of Mr. Powers's death to meet the requirements of § 12-309.[3]

---

[3] The District also argues that a handwritten page, which Plaintiff attached to the back of the P.D. 251, should not be considered because it was not part of the official P.D. 251. *See* D.C.'s Reply Mem. at 14-15. The Court finds that argument to be immaterial because the P.D. 251, even without the final page, contains sufficient information to satisfy § 12-309.

The District also argues that, even if Plaintiff complied with § 12-309, her claims are still subject to dismissal because the facts alleged in the Complaint do not establish that the District was negligent.  Specifically, the District argues that the facts do not establish that any District employee knew, or reasonably should have known, that Mr. Powers was suicidal and, as a result, there was no duty to treat Mr. Powers as a potentially suicidal detainee.  D.C.'s Mem. at 26-27.

With respect to Count III for gross negligence, the Court agrees that the allegations specific to that Count, standing alone, fall short of establishing that the District had a heightened duty to Mr. Powers based on his suicidal condition.  But Count VI of the Complaint alleges "Direct Liability to the District of Columbia for Failure to Train and Supervise."  "Direct Liability" is not, of course, a substantive cause of action under applicable tort law.  But the Court construes Counts III and VI, when read together, to allege that (1) the District has a duty to ensure the safety of persons it detains, (2) it failed to provide its officers with adequate training regarding the detection of potentially suicidal detainees and, (3) as a result, the individual Defendants failed to realize that Mr. Powers was suicidal and placed him alone in a cell where he killed himself.  Those allegations are sufficient to state a claim for ordinary negligence.  *See, e.g.*, *Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C. 2001) ("Generally, in order to prevail on a claim of negligence, the plaintiff must establish a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff.").

Further, the Complaint alleges that the officers on duty failed to follow existing MPD procedures regarding the monitoring of detainees, which also contributed to Mr. Powers's death. In other words, the Complaint alleges that those officers had a duty to follow standard MPD

procedures, they breached that duty, and their breach of that duty contributed to Mr. Powers's death. *See id.* Indeed, the District has conceded "that evidence that the police violated the general order [regarding the monitoring of detainees] is relevant for the jury to consider in a *negligence* case." D.C.'s Reply Mem. at 10. The Court finds that, taken together, Counts III and VI adequately state a claim for negligence against the District of Columbia.

The only Count left to address is Count II, which alleges intentional infliction of emotional distress based on Officers Burdyn and Giles's alleged use of excessive force on Mr. Powers and their failure to monitor him after isolating him in a holding cell. Compl. ¶ 35. The District does not address this Count specifically, but it does argue generally that it cannot be held liable for the acts of Officers Burdyn and Giles because they are employees of the USSS, not the District of Columbia. D.C.'s Reply Mem. at 6-7. The Complaint clearly alleges, however, that Officers Burdyn and Giles were acting as "servants, agents and employees" of the District. Compl. ¶¶ 35, 38. Although that allegation may be inconsistent with other allegations in the Complaint, that inconsistency does not mandate dismissal under Rule 12(b)(6). *See* Fed. R. Civ. P. 8(e) (allowing a party to plead inconsistent facts in support of alternative theories of recovery). The Court concludes that, taking the entire Complaint in the light most favorable to Plaintiff, it states a claim for intentional infliction of emotional distress against the District based on the conduct of Officers Burdyn and Giles. *See Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362, 373 (D.C. 2003) ("[E]lements of [a *prima facie* case of intentional infliction of emotional distress] are: (1) 'extreme or outrageous conduct' which (2) 'intentionally or recklessly' causes (3) 'severe emotional distress to another.'"). Whether this claim can survive discovery is not the issue; Plaintiff is entitled to all reasonable

inferences that can be drawn in her favor, and her Complaint's allegations in Count II are sufficient to state a claim.

## IV.  CONCLUSION

In sum, Count I (violation of civil rights), Count II (intentional infliction of emotional distress), and Count III (gross negligence) will be dismissed in part; Count IV (survival action) and Count V (wrongful death) will be dismissed entirely; and Count VI (negligent failure to train and supervise against the District of Columbia) will not be dismissed.

Count I fails to state a claim under the Eighth and Fourteenth Amendments, and the Complaint's factual allegations are too vague to state a Fourth Amendment claim for an illegal search and seizure or excessive force.  Plaintiff will be ordered to provide a more definite statement of her constitutional claims against the individual Defendants, but Plaintiff has adequately plead a Fifth Amendment claim against the District of Columbia based on a policy of deliberate indifference towards potentially suicidal pretrial detainees.

With respect to Plaintiff's tort claims (Counts II – VI), her failure to comply with the FTCA deprives the Court of jurisdiction over her claims against the Federal Defendants.  And although she fails to state a tort claim against the individual District Defendants, she does adequately allege negligence and intentional infliction of emotion distress against the District of Columbia.  A memorializing order accompanies this Memorandum Opinion.

Date: March 28, 2007                                          /s/
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge

-28-