**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, ) | |
| and as Personal Representative of the ) | |
| ESTATE OF TERENCE ANTHONY POWERS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| DISTRICT OF COLUMBIA, *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DISTRICT DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR
SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants, District of Columbia (the "District"), Chief Charles H. Ramsey, Commander

Larry D. McCoy and Sergeant Regina W. Gamble, by and through undersigned counsel and

pursuant to Fed. R. Civ. P. 12(b)(6) and 56, hereby move this Court to dismiss the plaintiff's First

Amended Complaint, and/or in the alternative, to grant summary judgment in their favor.[1]  A

Memorandum of Points and Authorities in support of this Motion is attached hereto.  Because

this is a dispositive motion, the District defendants are not required to seek the plaintiff's consent

pursuant to LCvR 7.1(m).[2]

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE

---

[1] The Watch Commander was named as a defendant but has not been identified or served.  Moreover, there has not been a request for representation made on the Watch Commander's behalf to the Office of the Attorney General.  However, the Office of the Attorney General urges dismissal of all claims against the Watch Commander for the reasons stated herein.

[2] The District defendants incorporate by reference the arguments made in their Motion to Dismiss or Alternatively for Summary Judgment filed on December 6, 2006.

Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III


_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 727-7164
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, ) | |
| and as Personal Representative of the ) | |
| ESTATE OF TERENCE ANTHONY POWERS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| DISTRICT OF COLUMBIA, *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DISTRICT DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants, District of Columbia (the "District"), Chief Charles H. Ramsey, Commander Larry D. McCoy and Sergeant Regina W. Gamble, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 56, hereby move this Court to dismiss the plaintiff's First Amended Complaint and/or grant summary judgment in their favor for the following reasons:

1)  The United States Secret Service ("USSS") is not an agent, servant or employee of the Metropolitan Police Department or the District of Columbia and, therefore, the District is not liable for any constitutional or common law violations committed by USSS officers Giles and Burdyn;

2)  The plaintiff should not be permitted to recover against any of the District defendants for the claimed Fourth Amendment violations;

3)  All constitutional claims against the District defendants based on the decedent's suicide must fail because no constitutional violation was alleged, no specific wrongdoing was

alleged against Chief Ramsey and/or Commander McCoy or, alternatively, the employees are entitled to qualified immunity;

4) All common law claims against the District defendants based on the decedent's suicide must fail because the USSS is not an agent, servant or employee of the District and/or MPD and the plaintiff cannot recover emotional distress damages because she failed to allege that she was in the zone of danger; and

5) All common law and constitutional claims against the "Watch Commander" should be dismissed because he/she has not been named or served.

### *STANDARD OF REVIEW*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the First Amended Complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). The movant, therefore, is entitled to judgment if there are no allegations in the First Amended Complaint that, even if proven, would provide a basis for recovery. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Although the non-moving party enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of his First Amended Complaint, bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Id.* The court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the First Amended Complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

On the other hand, summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the movant has the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the "moving party is not required to support its motion for summary judgment with 'affidavits or other similar materials *negating* the opponent's claim.'" *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003). At this point, then, "the burden shifts to the non-movant to 'come forward with 'specific facts showing that there is a genuine issue for trial.'" *Shaw v. District of Columbia*, 2006 U.S. Dist. LEXIS 26904 *14 (internal citations omitted).

Fed. R. Civ. P. 56(e) reinforces that the plaintiff's response to the District defendants' Motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial." To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Moreover, if the plaintiff "does not so respond, summary judgment, if appropriate, shall be entered" against her. Fed. R. Civ. P. 56(e).

By either burden of proof, the plaintiff's claims against the District defendants cannot stand. Therefore, the Court should grant the instant Motion.

## *BACKGROUND*

On July 15, 2004, the decedent, Terence Anthony Powers, was stopped by USSS Officers Burdyn[3] and Giles[4] for running a red light at an intersection in Washington, DC.  (First Amended Complaint at ¶ 10.)  A subsequent WALES check revealed that Mr. Powers' driving status was suspended.  (First Amended Complaint at ¶ 13.)  After cocaine was found in Mr. Powers' car, the USSS officers arrested Mr. Powers for possession with intent to distribute a controlled substance and for not having a valid drivers' permit. (First Amended Complaint at ¶ 14-15.)

Later that same day, at or around 0130 hours, Officers Burdyn and Giles transported Mr. Powers to the 3rd District of the Metropolitan Police Department.  (First Amended Complaint at ¶ 16.)  Mr. Powers was allegedly interrogated by Officer Giles, Officer Burdyn and other unidentified MPD officers, without being apprised of his constitutional rights, booked and/or processed, all of which allegedly does not comport with MPD general orders, policies and procedures.  (First Amended Complaint at ¶ 17.)

During this time, Officer Giles, Officer Burdyn and other unidentified MPD officers "questioned Mr. Powers in an emotionally abusive manner" and led him "to believe that he was going to jail for the alleged drug possession."  (First Amended Complaint at ¶ 18.)  Notably, possession with intent to distribute is a jailable offense.  *See* D.C. Code § 48-904.01 (2007).  These officers questioned him in such a way "so as to cause Mr. Powers a serious belief that he would be seriously harmed if he were to go to jail."  (First Amended Complaint at ¶ 18.)  The MPD Watch Commander and Sergeant Gamble "supervised and were aware of the interrogation

---

[3] The First Amended Complaint repeatedly refers to Officer Brudyn.  However, upon information and belief, the proper spelling of this officer's name is Burdyn.  Therefore, undersigned counsel will refer to him as Officer Burdyn.

[4] Officers Burdyn and Giles, "at all time relevant hereto, were members of and employed by the United States Secret Service."  (First Amended Complaint at ¶ 7.)

of Mr. Powers" as well as the statements made to Mr. Powers by Officers Giles and Burdyn. (First Amended Complaint at ¶ 19.) During the interrogation and thereafter, Mr. Powers became "extremely concerned, nervous, worried and anxious, based on the threats of Officers Giles, Brudyn and other [unidentified] officers of the MPD that he would be going to jail." (First Amended Complaint at ¶20.) "Mr. Powers asked repeatedly if he were going to jail and stated on numerous occasions that he could not go to jail." (First Amended Complaint at ¶ 20.) Notably, Mr. Powers made these statements to Officers Giles and Brudyn. (First Amended Complaint at ¶ 20.) Sergeant Gamble and the Watch Commander "either heard or were made aware of Mr. Powers' statements, concerns, and generally nervous and anxious state of mind." (First Amended Complaint at ¶ 20.) Yet, Mr. Powers was "not combative," he did not "require force to be subdued," he "did not attempt to resist arrest," nor did he "attempt to flee the scene" or "attempt to escape from the officers." (First Amended Complaint at ¶ 22-23.) The First Amended Complaint also specifically alleges that Officers Giles and Burdyn used excessive force on Mr. Powers during his "arrest and detention," which resulted in contusions on his body. (First Amended Complaint at ¶ 21, 24-25.)

At or around 0200 hours, Mr. Powers was placed in a "jail cell, isolating him from the general detainees." (First Amended Complaint at ¶ 32.) Mr. Powers "was not permitted to make a phone call or make any other contact with anyone from outside the Third District after he was detained." (First Amended Complaint at ¶ 32.)

Plaintiff also alleges that "Defendants did not check on Mr. Powers while he was alone in his jail cell between 0230 hours and 0416 hours," and that the "failure or refusal to check on or otherwise observe Mr. Powers [in his cell from 0230 to 0416] … was in direct violation of the

general orders, policies and procedures of Defendant MPD." (First Amended Complaint at ¶ 34.)[5]

At or around 0416 "Defendants found Mr. Powers hanging from the bars of the jail cell by a pair of tube socks tied in a knot…. Medics where summoned and confirmed there was no sign of life." (First Amended Complaint at ¶ 37-38.) The medical examiner determined that the cause of death was "suicide by hanging." (First Amended Complaint at ¶ 39.)

The "Watch Commander and [Sergeant] Gamble, either placed or were aware that Mr. Powers had been placed in a separate jail cell, away from the general population." (First Amended Complaint at ¶ 27.) The First Amended Complaint alleges that unspecified defendants as well as Officers Giles and Burdyn "knew that Mr. Powers was gay or had a reasonable belief that he was gay." (First Amended Complaint at ¶ 28.) Further, it alleges that Mr. Powers was segregated in a separate jail cell because he was gay. (First Amended Complaint at ¶ 27.) Notably, the First Amended Complaint provides no facts from which these conclusions could be drawn.

Without providing any specific facts as to his behavior, the First Amended Complaint alleges that Mr. Powers was "clearly and observably … traumatized by the arrest, interrogation, and the assault on him [by the USSS officers] while in custody." (First Amended Complaint at ¶ 30.) The First Amended Complaint further concludes that Mr. Powers' "stated fears that he could not go to jail as well as his behavior while in custody should have signaled to Officers Giles and Burdyn, Defendant Gamble as well as the Watch Commander that Mr. Powers could possibly harm himself." (First Amended Complaint at ¶ 30.) As a result, the plaintiff alleges

---

[5] Notably, the First Amended Complaint does not identify the specific general orders, policies and/or practices that the defendants allegedly violated.

that the "Defendants recklessly disregarded the risks to Mr. Powers' health and/or safety." (First Amended Complaint at ¶ 30.)

"Defendants, including the Watch Commander and Sergeant Gamble, knew that they had not removed items that could be used to cause harm to Mr. Powers, and that Mr. Powers could be in danger of inflicting self-harm yet failed to check on [him] in his jail cell for almost a 2 hour period." (First Amended Complaint at ¶ 35.) The failure to check on him and remove items – namely his socks – that could be used to "cause him harm created a known substantial risk that serious harm would occur, in the form of his suicide." (First Amended Complaint at ¶ 35.)

The First Amended Complaint charges Officers Giles and Burdyn and defendant Gamble and the Watch Commander with being aware of Mr. Powers' "certain sensitivities … including his highly emotional state, his stated fear that he could not go to jail, and that he was capable of hurting himself with items that they failed to remove from his possession." (First Amended Complaint at ¶ 36.) Notably, no wrongdoing was alleged against Chief Ramsey and/or Commander McCoy in the First Amended Complaint. In fact, there are no allegations that either Chief Ramsey and/or Commander McCoy was even present at the 3D station when these events allegedly occurred.

On July 14, 2006, almost two years after Mr. Powers' suicide, the plaintiff, through his representative, filed suit in the Superior Court for the District of Columbia against the District of Columbia, Chief Charles H. Ramsey, Commander Larry D. McCoy, a "Watch Commander," and Sergeant R.W. Gamble. The plaintiff also named as defendants Mark Sullivan, Director of the United States Secret Service ("USSS"), the Chief of the Uniformed Division of the USSS and USSS Officers Burdyn and Giles. On September 13, 2006, the District of Columbia removed the case to this Honorable Court.

The District defendants filed a Motion to Dismiss or Alternatively for Summary Judgment on December 6, 2006.  The plaintiff filed an Opposition and the District defendants filed a Reply.  The Court issued a Memorandum Opinion and Order on March 28, 2007 addressing the District defendants' motion and the federal defendants' dispositive motion. Relevant to the District defendants, the Court dismissed *with prejudice* plaintiff's Eighth, Fourteenth, and Fifth Amendment claims against the individual District defendants in their official capacity as well as the survival and wrongful death actions.  The Court also dismissed *without prejudice* plaintiff's claims based on "unlawful search and seizure" and "excessive force" claims against all of the District defendants as well as the intentional infliction of emotional distress ("IIED") and gross negligence claims against the individual District defendants.  The Court also specifically ordered the plaintiff to provide a more definite statement "with respect to her Fifth Amendment claims against the individual defendants no later than April 16, 2007."  (Order at 2.)  The Court denied the District's motion with respect to the Fifth Amendment constitutional claim for failure to train and supervise and allowed the IIED and negligence claim to stand against the District.

In lieu of filing a more definite statement, the plaintiff filed a First Amended Complaint, which alleges four counts based on the above facts.  Count I is a broad claim that the decedent's constitutional rights were violated pursuant to the Fourth and Fifth Amendments of the U.S. Constitution. (First Amended Complaint at ¶ 43-50.)  Count II appears to be a claim of intentional infliction of emotional distress based on the actions of Officers Giles and Burdyn. (First Amended Complaint at ¶ 51-53.)  Count III is a claim of gross negligence based both on the acts of the Officers Giles and Burdyn and MPD based on how the plaintiff learned of the decedent's death.  (First Amended Complaint at ¶ 54-57.)  Count IV is entitled "Direct Liability

to the District of Columbia for Failure to Train and Supervise."  (First Amended Complaint at ¶ 58-62.)

The MPD does not authorize the United States Secret Service to make arrests in the District of Columbia.  (Declaration of Assistant Chief Shannon Cockett at ¶ 3, attached hereto as Exhibit A.)  The MPD does not train, supervise, or otherwise control the United States Secret Service personnel.  (Exhibit A at ¶ 4.)  The United States Secret Service personnel are not paid by the MPD or the District of Columbia.  (Exhibit A at ¶ 5.)  The MPD or the District of Columbia has no power to hire or fire United States Secret Service personnel.  (Exhibit A at ¶ 6.)  At or around July 15, 2004, there was no "Officer Burdyn" or "Officer Brudyn" or "Officer Michael Burdyn" on the MPD roster.  (Exhibit A at ¶ 7.)  At or around July 15, 2004, there was no "Officer B. Giles" on the MPD roster.  (Exhibit A at ¶ 8.)

According to the First Amended Complaint, the plaintiff sued a "Watch Commander" from the 3rd District.  However, upon information and belief, the plaintiff has not, to date, named or served the Watch Commander.

## ARGUMENT

**I.     THE UNITED STATES SECRET SERVICE IS NOT AN AGENT, SERVANT OR EMPLOYEE OF THE METROPOLITAN POLICE DEPARTMENT OR THE DISTRICT OF COLUMBIA.**

In their original Motion, the District defendants argued in footnote 2 that the United States Secret Service ("USSS") was not an agent of the District of Columbia.  In its Memorandum Opinion, the Court noted that this allegation "may be inconsistent with other allegations in the Complaint."  (Memorandum Opinion at 27.)  Given the liberal standard afforded to plaintiffs in a motion to dismiss, the Court determined that the plaintiff stated a claim upon which relief could be granted and denied the District's motion on this issue.

At numerous times in the First Amended Complaint, the plaintiff alleges that the United States Secret Service ("USSS") officers Burdyn and Giles were acting as agents of the District of Columbia and, in so doing, attempts to hold the District liable for Officer Burdyn and Giles' alleged violations.  (*See* First Amended Complaint at ¶ 8, 15, 48, 52, 55.)  However, the District defendants now seek summary judgment on any and all allegations based on plaintiff's allegation that the USSS is a servant, agent or employee of the District of Columbia.  As the attached declaration and relevant case law demonstrate, summary judgment should be entered in the District defendants' favor because the USSS officers are not District of Columbia employees, and there is no master-servant or other agency relationship between the District and the USSS or its officers on which to base the District's liability.  *See, e.g. Bostic v. District of Columbia*, 906 A.2d 327, 332 (D.C. 2006) ("As it is the United States, not the District of Columbia, that … is responsible for their selection, engagement, payment, control, and discharge, *see* 2 U.S.C. § 1901, *et seq.*, the District of Columbia does not have any of the control over the activities of Capitol Police Officers necessary to establish a *respondeat superior* relationship pursuant to which it might be liable for their actions. Appellant's complaint against the District of Columbia for the alleged torts of a U.S. Capitol Police Officer was, therefore, properly dismissed.").  Therefore, as a matter of law, the Court should grant summary judgment in favor of the District and the individual District defendants based on the actions of any USSS officer.

First, unlike the MPD, the United States Secret Service Uniformed Division is a permanent police force established by Congress, formerly under the United States Department of Treasury, and now under the direction and supervision of the Secretary of Homeland Security. See 18 U.S.C. § 3056(g) ("The United States Secret Service shall be maintained as a distinct entity within the Department of Homeland Security and shall not be merged with any other

Department function."); *see also* 18 U.S.C. § 3056A.  As such, the powers, authorities and duties of the Secret Service are delineated by Congress, and Secret Service officers are employees of the United States government, not the District of Columbia government or the Metropolitan Police Department.  *Id.*  Personnel in the United States Secret Service report to the Director of the United States Secret Service, who reports directly to the Secretary of Homeland Security.  18 U.S.C. § 3056(g). USSS officers have authority to make arrests as authorized by Congress, and Congress has granted them "privileges and powers similar to those of the members of the Metropolitan Police of the District of Columbia," 18 U.S.C. § 3056A(b)(2), but that power is carried out under the Direction of the Secretary of Homeland Security, and not the District of Columbia government.

Second, the USSS officers here did not become agents or instruments of the District simply by making arrests in the District.  *See United States v. Lima*, 424 A.2d 113, 119 (D.C. 1980) (en banc) ("The fact that a private person makes a citizen's arrest does not automatically transform that individual into an agent of the state.").

Third, the District of Columbia has no cooperative agreement with the USSS that might arguably render Officer Giles and/or Burdyn agents of the District of Columbia.  See *Bostic*, 906 A.2d at 330-31 (finding that District not liable for Capitol Police Officer's tort because, *inter alia*, no cooperative agreement under D.C. Code § 5-133.17 between MPD and Capitol Police). Under D.C. Code § 5-133.17 (2001), the District of Columbia Metropolitan Police Department is authorized to enter into cooperative agreements with federal law enforcement agencies, including the United States Secret Service.  *See* § 5-133.17 (d)(21) and (22).  There is no such agreement between the MPD and Secret Service that could even arguably form the basis for liability here.

Fourth, and most importantly, the District of Columbia government does not authorize the Secret Service to make arrests in the District of Columbia and does not hire, train, supervise, or otherwise control USSS personnel. *Bostic*, 906 A.2d at 330-32. The MPD does not authorize the United States Secret Service to make arrests in the District of Columbia. (Declaration of Assistant Chief Shannon Cockett at ¶ 3, attached hereto as Exhibit A.) The MPD does not train, supervise, or otherwise control the United States Secret Service personnel. (Exhibit A at ¶ 4.) The United States Secret Service personnel are not paid by the MPD or the District of Columbia. (Exhibit A at ¶ 5.) The MPD or the District of Columbia has no power to hire or fire United States Secret Service personnel. (Exhibit A at ¶ 6.) At or around July 15, 2004, there was no "Officer Burdyn" or "Officer Brudyn" or "Officer Michael Burdyn" on the MPD roster. (Exhibit A at ¶ 7.) At or around July 15, 2004, there was no "Officer B. Giles" on the MPD roster. Exhibit A at ¶ 8.) Thus, there is no factual or legal basis to establish the District's liability for any allegedly unconstitutional and/or tortuous conduct of the Secret Service under a *respondeat superior* or master-servant basis.

The attached declaration, coupled with the above-referenced statutory sections, plaintiff's concession in paragraph 7 of the First Amended Complaint that Officers Burdyn and Giles "were member of and employed by the United States Secret Service" and the lack of any master-servant or other agency relationship make clear that the District has no control over – or responsibility for – the actions of USSS officers. Certainly, the plaintiff cannot survive a motion for summary judgment on this issue. Therefore, summary judgment should be entered in the District defendants' favor on any constitutional and/or common law claims based on USSS Officers Burdyn and Giles' actions. This includes any and all claims based on the actions of Officers Giles and Burdyn, including any claims based on the initial stop, search and seizure of

the plaintiff's decedent by the USSS as well as any claims related to excessive force and the alleged interrogation and segregation of Mr. Powers by these officers.

**II.     PLAINTIFF SHOULD NOT BE PERMITTED TO RECOVER AGAINST ANY OF THE DISTRICT DEFENDANTS FOR HER CLAIMED FOURTH AMENDMENT VIOLATIONS.**

Count I alleges that Mr. Powers' Fourth Amendment rights were violated allegedly due to unlawful search and seizure and use of excessive force. However, as demonstrated below, none of the District defendants was alleged to have been involved in either set of allegations. Accordingly, any Fourth Amendment claims against any of the District defendants (including the District of Columbia) should be dismissed *with prejudice*.

**A.          There are no allegations that any District employee was involved in the initial stop, arrest, search, seizure and/or decision to bring Mr. Powers to the 3D station.**

In its March 28, 2006 Memorandum Opinion and Order, the Court concluded that the original complaint contained "insufficient facts … to state a claim for an unlawful search and seizure." (Memorandum Opinion at 9.) Notably, the First Amended Complaint does not allege that any District and/or MPD officer was at all involved in the initial stop, search, arrest and/or seizure of Mr. Powers. Rather, only Officers Giles and Burdyn, USSS officials, were identified by the plaintiff as having been present for – or otherwise initiating – Mr. Powers' initial stop, search, arrest and/or seizure. (*See* First Amended Complaint at ¶ 10, 12, 15.) Therefore, in addition to the reasons described in Part I, *supra*, the Court should dismiss *with prejudice* this allegation against all of the District defendants (including the District of Columbia) for failure to state a claim upon which relief can be granted.

**B.**          **There are no allegations that any District employee used excessive force against Mr. Powers**

In its March 28, 2006 Memorandum Opinion and Order, the Court concluded that the plaintiff's excessive force claim in the original complaint should be dismissed because the only allegations – that Mr. Powers "had 'some bruising' that was 'consistent with' blows from police batons" and that Mr. Powers was "not combative" – "fail to state a claim for excessive force in violation of the Fourth Amendment." (Memorandum Opinion at 10.) The very language of the First Amended Complaint necessitates the conclusion that any excessive force claim against any of the District defendants should be dismissed because it identifies *only* Officers Burdyn and Giles, USSS officers, as being responsible for the contusions on Mr. Powers' body. *See* First Amended Complaint at ¶ 21 ("Officer Giles and/or [Burdyn] used excessive force on Mr. Powers during his arrest and detention"); First Amended Complaint at ¶ 21 ("Upon information and belief, these bruises were sustained during the arrest and detention by Officers Giles and/or [Burdyn].") Accordingly, by that very clear language, any Fourth Amendment excessive force claim should be limited to Officers Burdyn and Giles and the federal government, not against any of the District defendants (including the District of Columbia). *See also* Part I, *supra*. Accordingly, any such excessive force claim against the District or any of the individual District defendants should be dismissed *with* prejudice.

**III.   PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST THE DISTRICT DEFENDANTS BASED ON THE DECEDENT'S SUICIDE MUST FAIL.**

As previously indicated, the Court directed the plaintiff to file a more definite statement with respect to her claim of a Fifth Amendment constitutional violation against the individual

defendants.  In response, the plaintiff filed a First Amended Complaint.[6]  However, the First

Amended Complaint, although containing more allegations, still fails to state a claim upon which

relief can be granted because she failed to allege sufficient facts that the District defendants

violated the decedent's constitutional rights.[7]  Alternatively, the defendants are entitled to

qualified immunity.

> **A.  All Constitutional Claims Against the District Defendants Based on the Decedent's Suicide Must be Dismissed as a Matter of Law Because the Plaintiff Has Not Alleged a Constitutional Violation.**

Notably, the First Amended Complaint alleges that Mr. Powers' Fifth Amendment rights

were violated because the defendants "showed deliberate indifference for his safety and well-

being."  (First Amended Complaint at ¶ 44.)  This Court should dismiss plaintiff's constitutional

claims because the plaintiff has failed to assert sufficient facts to establish such a claim.[8]

In order to determine whether, as a matter of law, the plaintiff has asserted sufficient facts

to make out a claim that the District defendants were deliberately indifferent to Mr. Powers'

health and safety, as alleged in the First Amended Complaint, the Court should apply the two-

prong test established by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994).  First,

the alleged deprivation must be sufficiently serious, meaning that the official's act or omission

---

[6] In its March 28, 2007 Order, the Court dismissed with prejudice all official capacity Fifth Amendment claims against the individual District defendants as duplicative of the claims against the District of Columbia.  (Order at 1-2.)  The Court also concluded that "the constitutional claims against the individual Defendants based on vicarious liability … must be dismissed with prejudice." (Memorandum Opinion at 15.)  Therefore, the only remaining constitutional claims against the individual District defendants are individual capacity suits against Watch Commander, Chief Ramsey, Sergeant Gamble and Commander McCoy, based on their interaction, if any, with the plaintiff's decedent.

[7] In its Memorandum Opinion, the Court identified the well-established principle that "a municipality like the District of Columbia is not liable for the unconstitutional conduct of its employees based on respondeat superior or vicarious liability…" (Memorandum Opinion at 12.)  Despite reminding plaintiff of this principle, the First Amended Complaint alleges that the "District of Columbia is liable for any violations of Mr. Powers' civil and/or constitutional rights."  (First Amended Complaint at 49.)  However, any such claims must be dismissed with prejudice.

[8] In its March 28, 2007 Memorandum Opinion and Order, the Court identified the proper legal standard for analyzing plaintiff's constitutional claim based on the decedent's suicide under the Fifth Amendment.

must result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, *quoting, Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, the official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, *quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state a claim and establish liability, a government official must be "'deliberate[ly] indifferen[t]' to a substantial risk of serious harm to [a pretrial detainee]." *Id.* at 828. In explaining the standard of deliberate indifference, the *Farmer* Court stated that there could not be governmental liability "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The District defendants will address each of these elements in turn.

> 1. Even assuming, as the Court did in its March 28, 2007 Memorandum Opinion, that the Plaintiff Demonstrated that the Decedent's Risk of Suicide was a Sufficiently Serious Harm, Plaintiff has not set forth sufficient facts to show that any District official demonstrated deliberate indifference.

Upon information and belief, this Circuit has not decided whether a risk of suicide is a serious medical need under the Fifth or Eighth Amendment. The United States District Court for the District of Columbia, however, has provided some guidance to assess whether the facts of this case merit the conclusion that the plaintiff's decedent presented a serious medical need. In *Cox v. District of Columbia*, the Court acknowledged that a "medical need qualifies as serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Charles 2X (Cox) v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992) (internal citations omitted). Curiously, there are no allegations in the First Amended Complaint that Mr. Powers was diagnosed as requiring treatment or had a serious medical need that was "so obvious" that a lay person would recognize the need for a doctor's attention.

Even assuming – as the Court did in its March 28, 2007 Memorandum Opinion – that the plaintiff "pled facts sufficient to satisfy the first element of her claim – *i.e.,* that Mr. Powers' suicide was a sufficiently serious harm," the plaintiff cannot satisfy the second element of her claim.  (Memorandum Opinion at 27.)  Accordingly, any Fifth Amendment constitutional claims against the individual defendants must be dismissed with prejudice.

> 2.  <u>The Plaintiff Has Not Alleged Any Facts to Support the Conclusion that the District or Any District Employee Was Deliberately Indifferent to a Substantial Risk of Serious Harm.</u>

Alternatively, even if this Court concludes that there was a serious medical need, the plaintiff's Fifth Amendment claim must fail because the plaintiff has not alleged that any District employee was deliberately indifferent to a substantial risk of harm.  A review of decisions from two other circuits involving pretrial detainee suicides are instructive to the analysis of whether, as a matter of law, the individual District defendants were deliberately indifferent to the plaintiff's alleged medical needs.

In *Barber v. Salem*, 953 F.2d 232 (6th Cir. 1992), a case that has striking factual similarities to the instant case, the decedent had been arrested for driving under the influence and driving without a valid license.  *Id.* at 233.  After his arrest, the decedent expressed "concern over his job, his engagement, and his ability to obtain custody of his young son due to his arrest." *Id.* at 240.  Shortly thereafter, the decedent was placed alone in a jail cell and could not be observed.  *Id.*  The decedent subsequently hung himself.  *Id.*  The plaintiff sued the individual officers and the city, claiming that each violated the decedent's due process rights by failing "to properly screen Kenneth Robert Barber for suicidal tendencies and to take proper precautions to deter his suicide" and failure "to train police officers to detect suicidal tendencies and to take

precaution to deter suicide including the failure to modify the jail in such a way as to discourage suicides" respectively.  *Id*. at 236.

The Sixth Circuit in *Barber* concluded that the decedent's comments were not "abnormal and would not alert the jail authorities to a strong likelihood that Kenneth Robert Barber would commit suicide …"  *Id*.  at 235.  Moreover, the Circuit determined that "the failure to take special precautions in this case as to suicide prevention [did] not amount to a constitutional … violation of deliberate indifference to Kenneth Robert Barber's serious medical needs. Moreover, where no constitutional violation exists for failure to take special precautions, none exists for failure to promulgate policies and to better train personnel to detect and deter jail suicides."  *Id*.

In *Payne v. Churchich*, 161 F.3d 1030 (7th Cir. 1998) (internal citations omitted), the plaintiff claimed that the police officer should have known that the decedent, a pretrial detainee, intended to kill himself because "his tattoo questioned life and because he cursed angrily."  *Id*. at 1042.  The Seventh Circuit concluded that there was no due process violation based on these facts:

> [W]e do not believe that the allegations in the First Amended Complaint about Mr. Hicks' conduct and tattoo message, without more, indicate an obvious, substantial risk of suicide. There is no allegation of Mr. Hicks' suicidal tendencies, no claim or evidence of past suicide attempts or warnings from family members of a mental disturbance and suicidal condition. … Mr. Hicks' behavior was not alleged to be increasingly bizarre, erratic or wild. … None of the facts alleged in this case--Mr. Hicks' intoxication, cursing and tattoo--raises an issue of whether Deputy Papa had knowledge of, or even particular **…** reason to suspect, a substantial risk of suicide on Mr. Hicks' part.

*Id.* at 1042.  Accordingly, the Court dismissed the plaintiff's federal constitutional claims.  *Id*.

As with *Barber* and *Payne*, the First Amended Complaint in this case does not allege any conduct on the part of the named District defendants that can lead to an inference of deliberate indifference.  Significantly, there are *no allegations whatsoever* that Chief Ramsey and/or

Commander McCoy had any contact with Mr. Powers or were even present for any of the allegations in the First Amended Complaint.  Moreover, as to the Watch Commander and Sergeant Gamble, there remain no facts that put either of them on notice of Mr. Powers' serious medical needs and, in the absence of any such notice, they did not engage in any conduct from which this Court can conclude that they were deliberately indifferent to his serious medical needs.[9]  Alternatively, each of these MPD officers is entitled to qualified immunity.

> A. <u>Any Constitutional Claims Against Chief Ramsey and Commander McCoy in Their Individual Capacity Should be Dismissed With Prejudice Because the First Amended Complaint Does not Allege Any Wrongdoing Against Them.</u>

The First Amended Complaint alleges that "[e]ach and every Defendant is also liable for their direct violations of Mr. Powers' civil and constitutional rights."  (First Amended Complaint at ¶ 49.)  This statement is confusing because, in order for a constitutional violation to be properly alleged, each individual defendant must be alleged to have *personally* committed or participated in the unconstitutional act.  *See, e.g., Nowlin v. Director, Dist. of Col. Dep't of Corr.*, 689 F. Supp. 26, 27 (D.D.C. 1988) (prerequisite to individual liability under § 1983 is "a showing of direct responsibility for the improper action").

Here, however, the First Amended Complaint identifies no particular wrongdoing by Chief Ramsey and/or Commander McCoy.  Aside from the initial mention of Chief Ramsey and

---

[9]     In Count VI of the First Amended Complaint, the plaintiff alleges that the "city's failure to properly train and supervise its officers demonstrates a gross disregard for constitutional rights and was directly related to the death of Terence Anthony Powers and to the injuries and damages suffered by his survivors."  (First Amended Complaint at ¶ 62.)

If the Court finds now that no constitutional violation occurred based on the decedent's suicide, the Court should revisit its prior Memorandum Opinion and Order and similarly conclude that the District cannot be held liable under a theory of failure to train and/or supervise.  It is well-established that the District of Columbia courts have recognized that a "municipality cannot be held liable under section 1983 in a detainee suicide case unless the inadequate police training alleged and proved rises to the level of a 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Dorman v. District of Columbia*, 888 F.2d 159, 163 (D.D.C. 1989), *citing*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Commander McCoy, the plaintiff does not allege any personal involvement or interaction in any way between Chief Ramsey and Mr. Powers or Commander McCoy and Mr. Powers or any participation in the events described in the First Amended Complaint. (First Amended Complaint at ¶ 6, 9.) Despite the Court's warning that there is no vicarious liability for constitutional violations, this is exactly what the plaintiff is trying to do – hold Chief Ramsey and/or Commander McCoy liable for the actions of other officers. She cannot be permitted to do this. Accordingly, in the absence of *any* facts whatsoever to support a claim of a constitutional violation against Chief Ramsey and/or Commander McCoy, any and all constitutional claims against Chief Ramsey and Commander McCoy in their individual capacity must be dismissed with prejudice.

### B. Alternatively, Each of the Individual District Defendants is Entitled to Qualified Immunity.

To the extent that the Court determines that the plaintiff's First Amended Complaint is a properly framed suit against each of the named District employees in their individual capacity, and that the First Amended Complaint has identified specific wrongdoing by these employees, they are immune from suit in the instant case.

It is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). Qualified immunity arguments are especially appropriate early in the proceedings of a case. As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, *a ruling on that issue should be made early in the proceedings* so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added).  "As a result," the Supreme Court wrote, "'we repeatedly have stressed the importance of resolving immunity questions at the *earliest possible stage* in litigation.'"  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (emphasis added).

> The Supreme Court outlined its two-part test for examining claims of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right? … If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal citations omitted).  The *Saucier* Court also noted that "[t]his inquiry … must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  *Id*. at 201.

The plaintiff's First Amended Complaint should be dismissed against all of the District employees because they are each entitled to qualified immunity.  *See Barham v. Ramsey*, 2006 U.S. App. LEXIS 807 * 14 (internal citations omitted) ("Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").  Simply, there is no legal precedent from which this Court can conclude that the First Amended Complaint articulates a constitutional violation.

First, in the absence of *any* facts describing Chief Ramsey's and Commander McCoy's participation in—or even awareness of or presence at—any of the incidents described in the First Amended Complaint, the Court cannot answer the threshold question in the affirmative as to

these defendants.  There are simply no facts that either of them had notice that the plaintiff's decedent was suffering from a serious medical need.  Mr. Powers did not communicate to them in any way, let alone communicate that he was suffering from any type of illness.  Nor did Chief Ramsey and/or Commander McCoy observe any of his behavior.  Moreover, the First Amended Complaint does not allege that Mr. Powers exhibited bizarre or questionable behavior in their presence that would raise an inference that he was ill.  Therefore, in addition to the absence of any allegations of notice, or that they had any contact whatsoever with Mr. Powers, there are absolutely no facts or evidence that either Chief Ramsey and/or Commander McCoy acted with the intent to deprive Mr. Powers with a minimal civilized measure of life's necessities.  *Farmer*, 511 U.S. at 834.  Therefore, the Court should grant Chief Ramsey and Commander McCoy's request for qualified immunity because the plaintiff's First Amended Complaint, even when viewed in the light most favorable to the plaintiff, does not state a constitutional violation committed by either of them.

Second, as to Sergeant Gamble and the Watch Commander, they are each entitled to qualified immunity because the plaintiff has simply not met her burden of alleging a constitutional violation.  The First Amended Complaint alleges that "Sergeant Gamble and the Watch Commander had knowledge of Mr. Powers' emotional condition and needs …"  (First Amended Complaint at ¶ 10.)  Yet, this so-called knowledge is only based on allegations that Mr. Powers was arrested for committing a crime (possession with intent to distribute a controlled substance) that *could* result in a jail sentence, his placement in a separate holding cell, their knowledge or reasonable belief that Mr. Powers was gay, his statements he did not want to go to jail and his generalized nervous and anxious state.

24

The First Amended Complaint further concludes that Mr. Powers' "stated fears that he could not go to jail as well as his behavior while in custody should have signaled to Officers Giles and Burdyn, Defendant Gamble as well as the Watch Commander that Mr. Powers could possibly harm himself." (First Amended Complaint at ¶ 30.)  However, this conclusion is not supported by the facts or the above case law.  Like in *Barber*, the First Amended Complaint lacks any statements from Mr. Powers that he was suffering from any type of mental illness or that he had any suicidal tendencies or any prior suicide attempts.  Moreover, as in *Payne*, there are no allegations that Mr. Powers exhibited bizarre, erratic or wild behavior, all of which could raise an inference that he was suicidal.  In fact, the First Amended Complaint references Mr. Powers' cooperative and, indeed, compliant attitude towards the police, noting that Mr. Powers was "not combative," he did not "require force to be subdued," he "did not attempt to resist arrest," he did not "attempt to flee the scene" or "attempt to escape from the officers." (First Amended Complaint at ¶ 22-23.)

The Fifth Amendment does not require MPD officers to be able to read Mr. Powers' mind and intuit that he might kill himself based on the vague and non-specific facts and unsupported legal conclusions alleged in the First Amended Complaint.  Moreover, if expressing a fear of going to jail and/or generalized anxiety after being arrested and brought to a police station is indicative of a serious medical need, every potential defendant brought to either a MPD station or a jail, and who also communicated anxiety about going to jail, would have to be considered as having a serious medical need.  This conclusion is not only non-sensical, but it is not supported by the case law cited herein.

The First Amended Complaint identified two acts allegedly taken by Sergeant Gamble and the Watch Commander that showed deliberate indifference – their failure to remove his socks,

which he ultimately used to end his life, and their failure to check on him while he was in the

cell.  (First Amended Complaint at ¶ 31, 35.)  However, in the absence of any such notice (either

through Mr. Powers' statements or actions) of his allegedly serious medical need or his risk of

suicide, the conclusion that either Sergeant Gamble or the Watch Commander was deliberately

indifferent to his needs based on these two actions is wholly unfounded.  There are no facts their

either the Watch Commander or Sergeant Gamble acted with the intent to deprive Mr. Powers

with a minimal civilized measure of life's necessities.  *Farmer*, 511 U.S. at 834.

Furthermore, even if this Court was to determine that Mr. Powers' rights were violated,

there was no constitutional right that had been clearly established in the District that would put

any reasonable District officer on notice that, given the specific facts of this case, the alleged

conduct violated Mr. Powers' rights.  *See Saucier*, 533 U.S. at 202 ("The relevant, dispositive

inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.").  Accordingly,

each of the individual District defendants are entitled to qualified immunity and all constitutional

claims against them should be dismissed with prejudice.

## IV.    TO THE EXTENT THAT THE FIRST AMENDED COMPLAINT ALLEGES ANY COMMON LAW CLAIMS AGAINST THE INDIVIDUAL DISTRICT DEFENDANTS, THEY SHOULD ALL BE DISMISSED WITH PREJUDICE.

In its March 28, 2007 Opinion, the Court concluded that the "Complaint fails to state any

tort claim against the individual District defendants."  (Memorandum Opinion at 21.)  The Court

dismissed all common law claims against the individual District defendants without prejudice.

The First Amended Complaint appears to contain only three common law claims.  Count II is a

claim of intentional infliction of emotional distress (IIED) based on the actions of USSS Officers

Giles and Burdyn.  Count III is a claim of gross negligence based on the actions of USSS

26

Officers Giles and Burdyn and MPD with respect to how the plaintiff learned of the decedent's death. Count IV is a claim of direct liability against the District of Columbia.

Count IV, by its very title and the facts contained therein, does not appear to state a claim against any of the individual District defendants. Accordingly, any such claim against the individual District defendants should be dismissed with prejudice. Further, it does not appear that the IIED claim or the gross negligence claim is directed to any of the individual District defendants because none of the District defendants are identified by name or title in any of these counts. *Moreover, there are no allegations in the First Amended Complaint that identifies any wrongdoing whatsoever by Chief Ramsey and Commander McCoy.* To the extent that undersigned counsel interprets the First Amended Complaint incorrectly, and that the plaintiff intended to pursue claims of intentional infliction of emotional distress and/or gross negligence against Chief Ramsey, Commander McCoy, Sergeant Gamble and/or Watch Commander, any and all such claims should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## V.     PLAINTIFF'S COMMON LAW CLAIMS AGAINST THE DISTRICT OF COLUMBIA SHOULD BE DISMISSED.

As previously indicated, the Court's Memorandum Opinion and Order concluded that the plaintiff stated a claim of IIED and negligence against the District in the original Complaint. However, based on the attached declaration and argument in Part I, *supra*, this Court should conclude that the District is not liable to the plaintiff for any common law claim based on the actions of USSS Officers Burdyn and Giles. Moreover, the plaintiff is precluded from recovering emotional distress damages as a result of how she learned of the decedent's death because she failed to allege that she was in a zone of danger.

**A.    The District Cannot Be Held Liable for the Actions of USSS Officers Giles and Burdyn Because They are Not Agents of the District of Columbia or the Metropolitan Police Department.**

As explained in Part I, *supra*, and the attached declaration, this Court should conclude that USSS Officers Giles and Burdyn were not acting as agents of the District of Columbia and/or the Metropolitan Police Department during the time frame described in the First Amended Complaint. Accordingly, summary judgment should be entered in the District's favor on plaintiff's claims of IIED and (gross) negligence against the District that is predicated solely on the acts of USSS Officers Burdyn and Giles.

**B.    The Plaintiff is Precluded From Recovering Emotional Distress Damages Because She Failed to Allege That She Was in the Zone of Danger.[10]**

In the gross negligence count, the plaintiff alleges that no one from the MPD notified the plaintiff of the decedent's death and that the plaintiff learned this information approximately two weeks later, when she went to the impound lot to recover the decedent's car. (First Amended Complaint at ¶ 57.) To the extent that the plaintiff is attempting to recover emotional distress damages based on these facts, she is precluded from such a recovery because she failed to allege that she was within the zone of danger. *See Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990) ("if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence."). As the plaintiff has not alleged, nor could she allege, that as a result of the defendant's negligence, she was within the zone of

---

[10] The Office of the Attorney General made this identical argument in a footnote in its December 6, 2006 Motion. However, it does not appear that the Court addressed this argument in its Memorandum Opinion and Order. Accordingly, undersigned counsel is reproducing it here in the full text for the Court's consideration.

danger that caused her to fear for her own safety, the plaintiff is precluded from recovering any emotional distress damages under District of Columbia law.

## VI.    ANY CLAIMS AGAINST THE "WATCH COMMANDER" MUST BE DISMISSED BECAUSE THE PLAINTIFF FAILED TO NAME AND TIMELY SERVE HIM/HER.

In this case, the plaintiff named a Watch Commander at the 3rd District station as a defendant in this matter.  However, upon information and belief, the Watch Commander has not been named or served in this matter.  Moreover, the plaintiff has not requested additional time to serve the Watch Commander nor has she requested any form of alternative service.  Therefore, as the Watch Commander has not been named or served, the District respectfully requests that the Court dismiss all common law and constitutional claims against the Watch Commander.[11]

WHEREFORE, for the reasons stated herein, the District defendants respectfully request that the Court dismiss the above common law and constitutional claims against them and/or grant summary judgment in their favor.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

_____/s/_____
DANA K. DELORENZO

---

[11] It is curious that the plaintiff alleges the quantum of facts that she does against the Watch Commander yet is unable to identify that Watch Commander by name.

Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 727-7164
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICIA A. POWERS-BUNCE, Individually,** ) | |
| **and as Personal Representative of the** ) | |
| **ESTATE OF TERENCE ANTHONY POWERS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF DISTRICT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST
AMENDED COMPLAINT**

Comes now, the District defendants, by and through undersigned counsel and pursuant to

Fed. R. Civ. P. 56, and hereby submit the following statement of material facts as to which there

is no material dispute:

1. The MPD does not authorize the United States Secret Service to make arrests in the District of

Columbia.  (Declaration of Assistant Chief Shannon Cockett at ¶ 3, attached hereto as Exhibit

A.)

2. The MPD does not train, supervise, or otherwise control the United States Secret Service

personnel.  (Exhibit A at ¶ 4.)

3. The United States Secret Service personnel are not paid by the MPD or the District of

Columbia.  (Exhibit A at ¶ 5.)

4. The MPD or the District of Columbia has no power to hire or fire United States Secret Service

personnel.  (Exhibit A at ¶ 6.)

5. At or around July 15, 2004, there was no "Officer Burdyn" or "Officer Brudyn" or "Officer

Michael Burdyn" on the MPD roster.  (Exhibit A at ¶ 7.)

6. At or around July 15, 2004, there was no "Officer B. Giles" on the MPD roster.  (Exhibit A at

¶ 8.)

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 727-7164
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICIA A. POWERS-BUNCE, Individually,** ) | |
| **and as Personal Representative of the** ) | |
| **ESTATE OF TERENCE ANTHONY POWERS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 06-1586 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**ORDER GRANTING DISTRICT DEFENDANTS' MOTION TO DISMISS THE**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Upon consideration of the District defendants' Motion, the opposition thereto, and the

relevant facts and law considered, it is this _____ day of June 2007,

HEREBY ORDERED that the District defendants' Motion is GRANTED; and it is

FURTHER ORDERED that the First Amended Complaint against the District defendants

is DISMISSED WITH PREJUDICE.

_____
Judge Rosemary M. Collyer
United States District Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICIA A. POWERS-BUNCE, Individually,** )<br>**and as Personal Representative of the** )<br>**ESTATE OF TERENCE ANTHONY POWERS** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**DISTRICT OF COLUMBIA,** *et al.,* )<br> )<br> )<br>**Defendants.** )<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | **Civil No. 06-1586 (RMC)** |

**ORDER GRANTING DISTRICT DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S FIRST AMENDED COMPLAINT**

Upon consideration of the District defendants' Motion, the Statement of Undisputed Facts, any opposition thereto, and the relevant facts and law considered, it is this _____ day of June 2007,

HEREBY ORDERED that the District defendants' Motion is GRANTED; and it is

FURTHER ORDERED that judgment shall be entered in favor of the District defendants.


_____
Judge Rosemary M. Collyer
United States District Court