IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA A. POWERS-BUNCE, Individually,     *
And as Personal Representative of the          *
ESTATE OF TERENCE ANTHONY POWERS     *
                                                                *
          Plaintiff,                                      *
                                                                *
v.                                                            *          Case No. 06-1586 (RMC)
                                                                *
DISTRICT OF COLUMBIA, *et al.*                *
                                                                *
          Defendants.                                  *
_____     *

## MEMORANDUM IN OPPOSITION TO DISTRICT DEFENDANTS' MOTION TO DISMISS

Comes now Plaintiff Patricia A. Powers-Bunce, Individually and as Personal

Representative of the Estate of Terence Anthony Powers, and hereby Opposes Defendants'

Motion to Dismiss, or alternatively, for Summary Judgment and provides this Memorandum in

support of her Opposition.

**I.          Introduction.**

Plaintiff's Complaint for Violation of Civil Rights, Other Causes of Action and Damages

("the Complaint") was filed on July 14, 2006 in the Superior Court for the District of Columbia.

After District and Federal Defendants filed Motions to Dismiss the Complaint, this Honorable

Court issued an extensive Order on March 28, 2007 which denied in part the District Defendants'

Motion and invited the Plaintiff to provide a more definite statement on certain Counts of the

Complaint.   Plaintiff filed the First Amended Complaint in order to provide the more definite

statement in compliance with the Court's Order on April 16, 2007.  On June 11, 2007, District

Defendants filed a Motion to Dismiss and/or for Summary Judgment that raises many of the

same arguments already addressed by the Court.  Despite the fact that Plaintiff has not been

afforded discovery, District Defendants continue to raise factual issues and request that this

Court decide the merits of this case without the benefit of discovery and a complete record.

   II.   **Factual Allegations.**

   The Plaintiff's initial Complaint alleges that on July 15, 2004, Terence Anthony Powers

was unlawfully arrested and/or picked up and transported by Defendants Burdyn and Giles of the

United States Secret Service, after they had unlawfully stopped Mr. Powers for allegedly running

a red light at the intersection of Massachusetts Avenue and Dupont Circle, Northwest,

Washington, D.C.  (Complaint at ¶ 10).  Plaintiff alleges that Mr. Powers was followed by these

two Secret Service Officers for approximately seventeen (17) city blocks between the location of

the alleged traffic violation and the stop.  (Complaint at ¶ 12).  Pursuant to uncorroborated

information gleaned from the report provided by law enforcement personnel at the time of his

death (as opposed to a report generated contemporaneously with the stop or even once they

arrived at the precinct when a detainee would normally be booked and processed), the

Defendants claim that Mr. Powers was observed retrieving an object from behind the passenger

seat of his vehicle and placing it in a cigarette box.  (Complaint at ¶ 14).  Allegedly, inside the

cigarette box were five (5) plastic bags containing a white powder substance that allegedly tested

positive for cocaine although lab reports confirming this have not been made available to

Plaintiff.  (Complaint at ¶ 14).  Mr. Powers was transported to the 3rd Precinct of the

Metropolitan Police Department by the United States Secret Service.  (Complaint at ¶ 16).  At or

around 0200 hours, Mr. Powers, who was Caucasian and gay, was placed in a jail cell, isolating

him from the general detainees.  The view into the jail cell was partially blocked from view.  Mr.

Powers, who had earlier allegedly expressed concern about facing possible jail time was left

alone in this isolated area and not permitted to make a phone call or make any other contact.
(Complaint at ¶ 17). Mr. Powers was never formally processed by the USSS or the MPD.
(Complaint at ¶ 18). In violation of the general orders, policies and procedures of the MPD
requiring the Defendants to check on a detainee at least every thirty minutes, the Defendants
failed to check on Mr. Powers while he was alone in his cell between 0230 and 0416.
(Complaint at ¶ 21). Mr. Powers was allegedly found hanging in the cell at 0416. The Medical
Examiner, Dr. Constance Diangelo ruled the cause of death as suicide by hanging. (Complaint at
¶ 24). Dr. Diangelo also documented contusions to the lateral chest, back, thighs and shins of
Mr. Powers' body. (Complaint at ¶ 25). An independent medical examiner found that some of
the bruising to Mr. Powers' back, buttocks and legs was consistent with inflicted blows and
excessive force used upon him by police officer night sticks. (Complaint at ¶ 26). Interestingly,
despite a general order and policy that the areas of confinement be videotaped, there is no
videotape of Mr. Powers' confinement. (Complaint at ¶ 30).

    The original Complaint contained six counts. Count One alleged violations of civil
rights, including an unlawful stop, illegal search, unreasonable segregation of Mr. Powers,
intentionally failing to monitor him in violation of the MPD general orders and deliberate
indifference for his safety and well being, and the use of unreasonable and unnecessary force all
causing Mr. Powers to suffer conscious pain and suffering, and ultimately death. (original
Complaint at ¶¶ 28-32) Count II alleges intentional infliction of emotional distress. The original
Complaint alleged that the anxiety and mental anguish inflicted by the Defendants resulted from
their use of unreasonable and unnecessary force, as well as their unreasonable isolation of him.
(original Complaint at ¶¶ 35-36) Count III alleged Gross Negligence in the Defendants' wanton
and reckless disregard for the rights of Mr. Powers, and for his safety while in custody, including

failing to observe and monitor him thus permitting him to commit suicide allegedly without another person seeing him, hearing him or coming to his aid.  (original Complaint at ¶¶38-39). Counts IV and V of the original Complaint alleged Survival and Wrongful Death Actions respectively.  Count VI of the original Complaint alleged direct liability of the District of Columbia for failure to train and supervise allegedly constituting gross negligence and deliberate indifference to the safety of detainees in disregard to their constitutional rights.

In an attempt to comply with the rulings contained in the Court's Order of March 28, 2007, the Plaintiff filed an Amended Complaint alleging four counts on April 16, 2007.  The Amended Complaint provides additional facts as a more definite statement for the Court's consideration.  A red-lined copy of the Amended Complaint was also filed with the Court.  The specific allegations in the First Amended Complaint are discussed below.

### III.    Legal Standard.

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed unless "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248 (4t Cir. 2005); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Moreover, when such a dismissal involves a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."  *Harrison v. United States Postal Serv.*, 840 F.2d 1149 (4th Cir. 1988) (internal quotation marks omitted).

A court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957). When reviewing a motion to dismiss, a court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations" and examines only the legal sufficiency of the complaint. *Id.* Further, the Court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir. 2002). While the court must view the facts in a light most favorable to the plaintiff, the court "need not accept the legal conclusions drawn from the facts," nor should it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates, Ltd. Partnership*, 213 F.3d 175 (4th Cir. 2000). A judge may not grant a 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir. ). In fact, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

The Federal Rules of Civil Procedure provide a powerful presumption against rejecting pleadings for failure to state a claim. Rule 8 sets aside the hypertechnical pleading rules by requiring nothing more than a plain recitation of the facts that a party believes entitles her to relief. Thus, although Rule 12(b)(6) authorizes prompt dismissal of claims where the party's belief proves mistaken, its sanction extends only to a formal testing of the legal sufficiency of the factual basis the pleader asserts in support of her claim.

The Rules also protect parties who have tried but have not completely succeeded in stating a claim. Rule 15 authorizes amendments that seek, among other things, to cure pleading defects. Under Fed. R. Civ. P. 15(a), a plaintiff may amend his complaint one time as a matter of course before the defendant files a responsive pleading. Fed. R. Civ. P. 15(a). Once the defendant files a responsive pleading, however, the plaintiff may amend his complaint only by leave of the court or by written consent of the defendant. *Id.* Rule 15(a) directs that leave to amend "shall be freely given when justice so requires." *Id.* This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities. *See Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99 (1957)(" The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999)("The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that [the] plaintiff be given every opportunity to cure a formal defect in his pleading." (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990))).

The Courts have interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of

6

facts not already considered by the [defendant, and] is offered shortly before or during trial." *Id.*
An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery
to the facts already pled and is offered before any discovery has occurred. *David v. Piper
Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made
fully aware of the events giving rise to the action, an allowance of the amendment could not in
any way prejudice the preparation of the defendant's case.").

IV.    **ARGUMENT:**

1.    **Plaintiff has alleged that the United States Secret Service was
acting as an agent, servant or employee of the Metropolitan
Police Department and the District of Columbia.**

Defendant's Motion to Dismiss suggests that United States Secret Service cannot be an
agent, servant or employee of the Metropolitan Police Department or the District of Columbia,
merely because they say it is so. First, as the Defendant acknowledges, this Court has already
denied the Defendant's motion on this issue. *See*, Motion to Dismiss at p. 11; Opinion at p. 27.
In the March 28, 2007 Order, the Court already recognized that the Complaint's original
allegations concerning Officers Burdyn and Giles, although employees of the USSS, were acting
as servants, agents and employee of the District was sufficient to survive the motion to dismiss
and held that "taking the entire Complaint in the light most favorable to Plaintiff, it states a claim
for intentional infliction of emotional distress against the District based on the conduct of
Officers Burdyn and Giles. *Citing Joyner v. Sibley Mem. Hosp*., 826 A.2d 362, 373 (D.C. 2003).
Defendant did not file a Motion for Reconsideration on this issue.

The Defendant argues that *Bostic v. District of* Columbia, 906 A.2d 327 (D.C. 2006), a
case involving the U.S. Capitol Police, is dispositive on the Plaintiffs claims of an agency
relationship between Officers Burdyn and Giles and the District of Columbia, and MPD.

However, contrary to this Plaintiff's Complaint and this Court's determinations in the March 28, 2007 Opinion, the Court in *Bostic* found that the principal-agent relationship argued by Mr. Bostic on appeal was not supported by the allegations in his complaint.  Mr. Bostic's against the District of Columbia for the actions of Capital Park Police were solely on the grounds of respondeat superior and/or employer-employee relationship.  However, this is not the only agency relationship that can exist.  The *Bostic* Court noted at footnote 3, that "appellant seems to have recognized this by the time he filed his supplemental brief wherein he argues a more generalized theory of agency between Capital Police Officers and the District (…) instead of an employee-employer or *respondeat superior* relationship."  906 A.2d at 332.   D.C. Code § 5-301(a)(2001) states that federal officers acting pursuant to a cooperative agreement with the District of Columbia will have the same legal status and immunity from suit as the Metropolitan Police Department officer.  Defendant argues that there is no such cooperative agreement applicable to this matter.  Whether or not this is in fact accurate, a cooperative agreement is not the only means by which an agency relationship can be established.

Defendants have attached a Declaration to their Motion to Dismiss which is the sole basis for the Defendant's Statement of Undisputed Facts, is completely self-serving as the Plaintiff has not yet had the opportunity to challenge the Assistant Chief Shannon Cockett on the basis for his understanding, the details in which the USSS has worked with MPD, the process of detention and transfer to the Third District when the USSS does make an arrest, the communication between USSS and the MPD during the arrest, etc..  All of these issues should be considered when determining the circumstances under which the District could be responsible for the actions of USSS officers that utilize its laws in making an arrest and detaining its citizens for processing and detention at its third district.   The presence of an agency relationship is satisfied

by three elements: "(1) that the principal acknowledged that the agent would act for him or her; (2) that the agent accepted the undertaking; and (3) that the principal exercised control over the agent's actions." *Samra v. Shaheen Bus. & Inv. Group, Inc.*, 355 F.Supp.2d 483, 503 (D.D.C. 2005). The determinative factor of an agency relationship is the measure of control. *See Railan v. Katyal*, 766 A.2d 998, 1010 (D.C. 2001). This is a factual issue which requires the discovery process and deserving of a complete record. The Statement of Material Undisputed Facts which purports to support the Motion for Summary Judgment does not address the specific allegations in this case. Absent from the Affidavit is any specific knowledge or statement of the actions of the USSS officers on the night Mr. Powers was arrested, the communications between the USSS and the MPD in the field and at the third district, the process by which the USSS officers determined to bring Mr. Powers to the third district, the process of transferring custody, and the point on which custody was transferred. The affidavit does not address the responsibility process by which the Mr. Powers was to be booked and processed and items removed from his possession that were ultimately used to end his life. The Affidavit does not state that the USSS officers were not involved in placing Mr. Powers in the cell, or failing to book and process him or completing the reports necessary to property process Mr. Powers. The Affidavit only addresses the technical employment of officers Giles and Burdyn. As such, it is insufficient to support summary judgment on the agency theories posited by the First Amended Complaint.

### 2.  Plaintiff Has Asserted An Appropriate Fourth Amendment Claim for Unreasonable Use of Excessive Force:

This Court has already considered Plaintiff's Fourth Amendment claim alleged in the original Complaint wherein the Court recognized that: "under the circumstances of this case, Plaintiff is at an informational disadvantage and must be given some leeway in stating a viable

claim based on the alleged unconstitutional arrest and use of excessive force."  Opinion at p. 11.

citing *Alston v. Parker*, 363 F.3d 229, 233 N.6 (3d Cir. 2004)(noting that "civil rights

plaintiffs…often face informational disadvantages").  The Court therefore dismissed the

"unlawful stop, search, and detainment and "excessive force" claims without prejudice.  Plaintiff

Amended the Complaint to provide the more definite statement requested by the Court, but still

stands in the same position with respect to the informational disadvantages that can only be

addressed by the discovery process.  Therefore, Plaintiff believes that she has sustained her

pleading obligations in the First Amended Complaint with respect to Fourth Amendment claims

as explained below, and requests this Court deny Defendant's Motion to Dismiss the Fourth

Amendment Claim and reconsider it only after discovery is completed.

The Fourth Amendment of the United States Constitution protects against unreasonable

seizures of the person.  The "use of force is contrary to the Fourth Amendment if it is excessive

under objective standards of reasonableness."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  With

respect to the Fourth Amendment protections, Plaintiff's Amended Complaint alleges at

paragraph 21:

> 21.  Officers Giles and/or Brudyn used excessive force on Mr. Powers during his
> arrest and detention.  During the autopsy, contusions were identified on Mr.
> Powers that were consistent with being struck repeatedly with a night stick or
> similar weapon.  Mr. Powers sustained injuries on his buttocks, back of legs,
> abdomen, back, shins, and fingers.  These contusions were recent bruising and
> were inflicted at or near the time that Mr. Powers was illegally stopped, searched,
> arrested and brought to the Third District.  Upon information and belief, these
> bruises were sustained during the arrest and detention by Officers Giles and/or
> Brudyn.
> First Amended Complaint at ¶ 21.

These injuries were sustained despite the fact that there is no indication in the records that

Mr. Powers was combative with officers during his arrest and detainment, thus suggesting any

officer's use of force against Mr. Powers was unreasonable and unnecessary.

The Amended Complaint also alleges at paragraph 24 that Mr. Powers did not threaten nor assault Officers Giles and/or Brudyn nor any member of the MPD; nor was there any basis to believe that they were being threatened. Yet the officers used force on Mr. Powers that was unnecessary, unreasonable, excessive and that violated Mr. Powers' constitutionally protected rights. The use of excessive force caused Mr. Powers serious injury in the form of contusions on his body, including his buttock, back of legs and shins as well as serious emotional harm including fear of being injured while in custody. Under these circumstances no officer could believe that the force which caused injury to Mr. Powers was necessary.

While Defendants may argue that the allegations are not specific, the Plaintiff has alleged the elements of a Fourth Amendment violation. While the Defendants argue that there is no allegation in the Complaint that suggests the District Defendants were involved in the initial stop, arrest, search and seizure, the distinction is irrelevant as the Fourth Amendment protects against the unnecessary use of force. The First Amended Complaint alleges that force was unreasonably used, and that the officers caused injury to Mr. Powers that was not necessary under the circumstances. The First Amended Complaint alleges that this occurred at the time of the arrest and detainment which would have included the time in which he was in custody at the Third District. Plaintiff has also identified the physical evidence obtained during Mr. Power's autopsy that supports Plaintiff's allegation that unreasonable force was used. *See,* Amended Complaint at ¶ 21.

Contrary to the assumptions made by the Defendant that the use of excessive force only occurred during the arrest or only by Officers Burdyn and Giles, the Amended Complaint suggests at paragraph 21 that the bruises were sustained during the arrest <u>and detention</u> by Officers Giles and/or Burdyn. At least a portion of the detention occurred at the third district.

The Amended Complaint further alleges that despite the fact that Mr. Powers did not threaten the

officers, including the officers of the MPD, the officers used excessive force.  *See,* Amended

Complaint at ¶ 24.  Certainly the force would be unreasonable under these circumstances.

       **3.**  **Plaintiff has alleged sufficient Constitutional Claims against the District Defendants based upon the Mr. Power's injuries and death while in Defendant's custody**

       **a.**  **Decedent's Suicide was caused by Constitutional violations committed by the District and Individual District Defendants.**

In its March 28, 2007 Order, this Court has already determined that Constitutional claims

remain against the District, and the individual capacity suits against Watch Commander, Chief

Ramsey, Sergeant Gamble and Commander McCoy, survive the Defendant's Motion to Dismiss.

In doing so, the Court reasoned that Plaintiff had properly alleged that the District's failure to

train its police officers in the proper detection and treatment of potentially suicidal detainees

amounts to deliberate indifference to the rights of detainees like Mr. Powers.  Order at p. 12.

This Court recognized that under D.C. Circuit precedent, these allegations were sufficient to

survive the motion to dismiss under Rule 12(b)(6).  *Id. citing Atchison v. District of Columbia*,

73 F. 3d 418, 423 (D.C. Cir. 1996)(holding that a complaint alleging a single incidence of police

misconduct together with an assertion that the District's failure to train its officers showed

deliberate indifference was sufficient to state a claim under *Monell*).   The Court, however,

dismissed with prejudice all official capacity Fifth Amendment claims against the individual

District Defendants as duplicative of the claims against the District of Columbia.  Order at 1-2.

District Defendants now argue that despite the Court's ruling, the Plaintiff has not alleged a

Constitutional violation.

**b.  The Plaintiff has alleged Defendants were Deliberately Indifferent in Violation of the Fifth Amendment.**

In order to establish that the individual Defendants were "deliberately indifferent" in violation of the Fifth Amendment, Plaintiff must allege that they had "subjective knowledge of [Mr. Power's] serious medical need and recklessly disregarded the excessive risk to [his] health or safety from that risk."  *Baker v. District of Columbia*, 326 F. 3d 1302, 1306 (D.C. Cir. 2003)**.** The Seventh Circuit described the requirements for proving prison suicide claims against individual officers in the context of the Eighth Amendment, which are identical to the requirements for proving claims under the Fifth Amendment based on pretrial detainee suicides as follows:

> [A] claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety.  In prison suicide cases, the objective element is met by virtue of the suicide itself, as "[it goes without saying that 'suicide is a serious harm'"

> Where the harm at issue is a suicide or attempted suicide, the second subjective component of an Eighth amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was a substantial risk of committing suicide and (2) intentionally disregarded the risk.

*Collins v. Seeman*, 462 F.3d 757, 760-61 (7th Cir. 2006).

This Court already found that Plaintiff has pled facts sufficient to satisfy both elements of the claim.  Opinion at p. 14.  While the Court dismissed the Constitutional claims against individual Defendants based on vicarious liability, and the claims against the individual defendants in their official capacities, it requested a more definite statement as to the Plaintiff's claims against the individual defendants in their personal capacities for alleged direct violations of Mr. Power's Fifth Amendment rights.

In response to the Court's order, the Plaintiff's First Amended Complaint alleges the following:

17.    While in the care and custody of the MPD, Mr. Powers was interrogated by Officers Giles, Brudyn and other MPD officers, without being apprised of his constitutional rights, without being booked and without being processed.  The interrogation of Mr. Powers did not conform to the general orders, policies and procedures of the MPD.

18.    During the interrogation and at other various times, Officers Giles, Brudyn and other officers of the MPD questioned Mr. Powers in an emotionally abusive manner, including leading Mr. Powers to believe that he was going to jail for the alleged drug possession and questioning him in such a way so as to cause Mr. Powers a serious belief that he would be seriously harmed if he were to go to jail.

19.    At all times during the interrogation, the Watch Commander and Sgt. R. W. Gamble of the MPD supervised and were aware of the interrogation of Mr. Powers; were aware of the threats made to Mr. Powers; and were aware of the conduct of the interrogation, including the statements made by both the officers and Mr. Powers.

20.    During the interrogation and thereafter, Mr. Powers became extremely concerned, nervous, worried and anxious, based on the threats of Officers Giles, Brudyn and other officers of the MPD that he would be going to jail.  Mr. Powers asked repeatedly if he were going to jail and stated on numerous occasions that he could not go to jail.  These statements were made to Officers Giles and Brudyn, and which Sgt. Gamble and the Watch Commander either heard or were made aware of Mr. Powers' statements, concerns, and generally nervous and anxious state of mind.

[…]

27.    Defendants Watch Commander and Sgt. Gamble, either placed or were aware that Mr. Powers had been placed in a separate jail cell, away from the general population.  Mr. Powers was allegedly segregated, among other reasons, because he was gay.  Based on information and belief, the placement of Mr. Powers in a separate isolated cell was meant to emphasize the statements that he would be harmed if he were to go to jail if he were to be placed in general population with other inmates since he was gay, and designed to intimidate, isolate and scare Mr. Powers.

[…]

29.    At all times relevant hereto, Offices Giles and Brudyn, as well as Sgt. Gamble and the Watch Commander knew that Mr. Powers had not been properly booked or entered into the arrest book, yet was being held, improperly and in violation of his civil rights in a jail cell.

30.    Clearly and observably, Mr. Powers had been traumatized by the arrest, the interrogation, and the assault on him while in custody.  Mr. Powers' stated fears that he could not go to jail as well as his behavior while in custody should have signaled to Officers Giles and Brudyn, Defendant Gamble as well as the Watch Commander that Mr. Powers could possibly harm himself.   Defendants recklessly disregarded the risks to Mr. Powers' health and/or safety.

31.    Sgt. Gamble, the Watch Commander and other officers of the MPD failed to ensure Mr. Powers' safety; were deliberately indifferent to his health and/or safety; and

violated his constitutional rights by failing to remove clothing articles that Mr. Powers used to commit suicide, i.e., his socks.

32. At or around 0200 hours Mr. Powers, who was Caucasian and gay, was placed in a jail cell, isolating him from the general detainees. The view into the jail cell was partially blocked from view. Mr. Powers, was not permitted to make a phone call or make any other contact with anyone from outside the Third District after he was detained. [...]

35. Defendants, including the Watch Commander and Sgt. Gamble, and Officers Giles and Brudyn knew that they had not removed items that could be used to cause harm to Mr. Powers, and that Mr. Powers could be in danger of inflicting self-harm yet failed to check on Mr. Powers in his jail cell for almost a 2 hour period. The failures to check on Mr. Powers and remove items that could be used to cause him harm created a known substantial risk that serious harm would occur, in the form of his suicide.

36. Officers Giles and Brudyn, Defendant Gamble and Watch Commander were aware that there were certain sensitivities related to Mr. Powers, including his highly emotional state and his stated fear that he could not go to jail, and that he was capable of hurting himself with items that they failed to remove from his possession.

Plaintiff's First Amended Complaint has identified the personal involvement of Officers Giles, Burdyn, Gamble and the Watch Commander. While the Plaintiff still has the significant disadvantage of providing the First Amended Complaint prior to the initiation of discovery, the Plaintiff has complied with the requirements of Rule 8. The civil-rights plaintiff, as with others, is entitled to meet only the liberal notice pleading standards of Rule 8. *See*, *Crawford-El v. Britton*, 523 U.S. 574, 591-92 (1998).

In the case at hand, the Plaintiff has alleged that Mr. Powers was subject to personal injury to his body consistent with blows sustained from a night stick, as well as a lack of care in his confinement and deliberate indifference to his safety and wellbeing as demonstrated by the Defendants' collective failure to process and book Mr. Powers, including the removal of items that could cause him injury while in custody, and deliberately failing to monitor his condition when they unreasonably placed him in an isolated area.[1]  The Plaintiff has alleged that

---

[1] Defendants' duties with respect to Mr. Powers' health and safety do not end when they find him hanging in his cell by the socks they permitted him to possess in an unsupervised and remote cell even after he had expressed concern numerous times over the possibility of jail time. Rather, their obligations continue throughout their individual and collective responses to finding Mr. Powers hanging in his cell. The MPD Incident Report which was prepared on

Defendants' acts and omissions prior to finding Mr. Powers' hanging support a constitutional claim.

Despite all of the Defendants' failures to act, Defendants argue that Plaintiff has failed to meet the two part test identified in *Farmer v. Brennan*, 511 U.S. 825 (1994) for the sufficiency of allegations of deliberate indifference to the health and safety of a detainee. The Supreme Court defined the first prong of the test as an alleged deprivation of sufficient seriousness such that the official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the government official must be "deliberately indifferent to a substantial risk of serious harm to the person in custody." *Id.* at 828. In order to establish liability, a government official must be "deliberately indifferent to a substantial risk of serious harm to a pretrial detainee." *Id.* at 828. With "deliberate indifference" lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the courts of Appeals have routinely equated deliberate indifference with recklessness. *Id*. at 824. Under the *Farmer* test, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. *Id.* At the motion to dismiss stage of the litigation, this would be where the fact that there was a general

the date of Mr. Powers' death fails to document any attempts by the officers to revive Mr. Powers. (*See*, Exhibit No. 1), MPD Incident Report. Rather, it appears from the information documented in their own report that the officers waited for medics to arrive. *See, id.* This alone would be sufficient to support Plaintiff's claims. *See, Bradich v. City of Chicago*, 413 F.3d 688 (7th Cir. 2005)(reversing summary judgment granted to lockup keepers in a 42 U.S.C.S. § 1983 action when, during the critical 10 minutes after they found the inmate hanging in his cell, they did not call for help, did not attempt CPR but instead shouted and shook the inmate, and altered their log books). The individual Defendants' failure to respond appropriately to Mr. Powers' condition upon discovering him hanging in his cell would also support a ruling that they are not entitled to qualified immunity. *See id.* at 692 (suggesting that lockup keepers are not entitled to qualified immunity because no reasonable officer could think that the Constitution allowed him to cover up his own misconduct at the expense of a prisoner's life).

16

order that the prison official failed to follow at the time of Mr. Powers' detainment is some evidence of the Defendants' knowledge of a substantial risk of serious harm which the general order was designed to protect against. *Id.*

Prior to being permitted any discovery on this issue, the Plaintiff has alleged that there was a policy and procedure that was ignored in this case. While this failure alone may be insufficient to prove the Plaintiff's allegation of constitutional violation in its entirety, it is evidence that is appropriately considered in determining directly or inferentially the individual defendants' knowledge of a substantial risk. *See*, *District of Columbia v. Walker*, 689 A. 2d 40, 47 (D.C. 1997). Further, an examination of the state of mind of the Defendants through the discovery process is required to fully evaluate the deliberate indifference standard defined in *Farmer*. Therefore, this issue is more appropriately addressed after factual discovery has proceeded as the Plaintiff has not had a full opportunity at this stage in the proceedings to discover all of the actions and intentions of each defendant.

### c.  Defendants are not Entitled to Qualified Immunity:

Defendants next argue that suit against the District Employees in their official capacity is duplicative of the action against the District. However, this is true only if the District accepts responsibility for all of its employee's and agent's actions and will not raise the defense that any of the Defendants acted outside the scope of their employment. Further, this is true only when the District Employees are entitled to qualified immunity. The inquiry into whether a defendant can assert qualified immunity proceeds in two steps. First, the court must determine if the pleaded facts demonstrate that the defendant's conduct violated a constitutional right. *Ridpath*, 447 F.3d at 306. The alleged violations of the constitutional rights of Mr. Powers have already been discussed above. If the facts do not establish the violation of a right, qualified immunity

will apply, and the motion to dismiss on that basis should be granted. But, if a violation is established, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). The Defendants' claims of qualified immunity are founded on an alleged lack of facts that the individual defendants had notice that Mr. Powers may commit suicide while in their custody and control. What Plaintiff has plead are the facts that were available to her at the pleading stage, prior to obtaining discovery from the defendants. Certainly, the allegations in the Complaint suggest that all of the Defendants participated in numerous constitutional violations, including their failure to take appropriate steps to ensure Mr. Powers safety and protect him from excessive force. Qualified immunity is not the law simply to save trouble for the Government and its employees; it is recognized because the burden of trial is unjustified in the face of a colorable claim that the law on point was not clear when the official took action, and the action was reasonable in light of the law as it was. In this case, however, the allegations made by the Plaintiff relate to violations of clearly established rights. Plaintiff has alleged an unlawful stop, an unlawful search, excessive force, and deliberate indifference to the health of Mr. Powers. Qualified immunity protects public officials from individual liability in a 1983 action unless the officials violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" Workman v. Jordan, 32 F.3d at 478 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982) To successfully rebut a defense of qualified immunity, the plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right," and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue."

In 1989 the Supreme Court decided *Graham v. Connor*, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989), and directed lower courts to analyze constitutional claims of excessive

force by applying Fourth Amendment standards of objective reasonableness. See id. at 395

("Today we make explicit . . . that all claims that law enforcement officers have used excessive

force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free

citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . .

."). The 'reasonableness' inquiry in an excessive force case is an objective one: the question is

whether the  officers' actions are 'objectively reasonable' in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." Id. at 397. The

Supreme Court further clarified its test for qualified immunity in excessive force cases laid down

in the *Graham* Court in *Saucier v. Katz*, 121 S.Ct. 2151 (2001) when it enunciated a two-part

inquiry: the threshold question is, "taken in the light most favorable to the party asserting the

injury, do the facts alleged show the officer's conduct violated a constitutional right?" 121 S.Ct.

at 2156. The Supreme Court of the United States has defined the test for excessive force,

therefore the prohibition against a law enforcement official's use of excessive force is clearly

established. The individual District Defendants to not attempt to challenge whether the other

constitutional violations alleged in the Plaintiff's Complaint were clearly established in their

Motion. As such, the Defendants are not entitled to dismissal. Furthermore, the determination

of whether an individual defendant is entitled to qualified immunity is a factual question, and as

such, a determination on this issue at this stage is premature.

**4.      Common Law Claims against Individual District Defendants and the District of Columbia:**

This Court has already ruled that the Plaintiff has stated a claim of intentional infliction of emotional distress and negligence against the District in the original Complaint. Despite this ruling, and before discovery has progressed, Defendant again argues that the common law claims should be dismissed. This time, the Defendant has attached a completely self-serving affidavit that has not been subjected to cross-examination or investigation. This is discussed in Section 1, supra. Further, Defendants appear to take issue with paragraph 57 of the First Amended Complaint wherein the Plaintiff states:

> 57.      Moreover, no one from the Metropolitan Police Department notified the family of Mr. Powers' death on July 15, 2004. Instead, on or about, July 27th 2004, Mrs. Powers-Bunce received a voice mail asking that she retrieve her car from the impound lot. On July 28th, 2004, Mrs. Powers-Bunce went to retrieve her car and was then directed to the Medical Examiners Office where she learned her son had died while in police custody.

These egregious and offensive facts, along with many other allegations of negligence in the First Amended Complaint, support in the claim brought by the Plaintiff as Personal Representative of the Estate for the physical and emotional injuries sustained by Mr. Powers. Arguably, the there are in essence two negligence claims: one that the Plaintiff brings on behalf of the decedent in her capacity as the personal representative, and one in her own right. In Section V.BDefendant is challenging only the Plaintiff's individual claim and not the one brought as the Personal Representative. While the Court's March 28, 2007, Order did not specifically address the Plaintiff's individual capacity claim, this Court did determine that the Complaint sufficiently alleges a claim of negligence with respect to Mr. Powers: (1) the Complaint alleges that the District has a duty to ensure the safety of persons it detains, (2) it failed to provide its officers

with adequate training regarding the detection of potentially suicidal detainees and (3) as a result, the individual Defendants failed to realize that Mr. Powers was suicidal and placed him along in a cell where he killed himself.  Opinion at p 26, *citing Youssef v. 3636 Corp.,* 777 A.2d 787, 792 (D.C.2001).  In addition, the Court noted that the Plaintiff sufficiently alleged the failures of the officers in following the existing MPD procedures regarding the monitoring of detainees, which also contributed to Mr. Power's death.  Clearly Mr. Powers was in the zone of danger and suffered serious emotional distress associated with the actions of the Defendants, including intimidation and physical injuries that contributed to his death.

### 5.    Claims against the "Watch Commander" are Appropriate:

Lastly, Defendants seek to dismiss the "Watch Commander" as a defendant to this matter because the Plaintiffs have not specifically identified the individual who held the post of the Watch Commander at the time of Terence Anthony Powers unlawful arrest, detainment and death while in MPD custody.  However, Rule 25 (d)(2) provides in pertinent part:

> **Rule 25 Substitution of Parties:**
> ….
> (d) **Public Officers; Death or Separation from Office:**
> (2)  A public officer who sues or is sued in an official capacity may be described as a party by the officer's official title rather than by name; but the court may require the officer's name to be added.

Since discovery has not yet begun in the matter, and the identity of the Watch Commander is unknown to the Plaintiff, Plaintiff appropriately complied with Federal Rule 25 and named the "Watch Commander" as a party-defendant.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Honorable Court deny the District Defendants' Motion to Dismiss, or in the alternative grant the Plaintiff leave to amend the Complaint after she is afforded the opportunity to proceed with discovery.

**<u>REQUEST FOR HEARING</u>**

Plaintiff hereby respectfully requests this matter be set in for a hearing on Defendants'

Motion to Dismiss.

Respectfully Submitted,

Rifkin, Livingston, Levitan & Silver, LLC

/S/

_____
M. Celeste Bruce, Esquire
Bar No.: 438343

Ellen B. Flynn, Esquire
Bar No.: 465355

6305 Ivy Lane, Suite 500
Greenbelt, Maryland 20770

(301) 345-7700 phone
(301) 345-1294 facsimile

Dated:     June 22, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, | * | |
| And as Personal Representative of the | * | |
| ESTATE OF TERENCE ANTHONY POWERS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 06-1586 (RMC) |
| | * | |
| DISTRICT OF COLUMBIA, *et al.* | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |

## **ORDER**

UPON CONSIDERATION of Plaintiffs' Opposition to Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment, and for good cause shown, it is this _____ day of _____, 2007, hereby and the same

ORDERED that District Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment is hereby and the same DENIED.

_____
Judge, United States District Court for the
District of Columbia

23