# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE )<br><br>Plaintiff, )<br><br>v. )<br><br>DISTRICT OF COLUMBIA, *et al.*, )<br><br>Defendants. ) | Civil Action No. 06-1586 (RMC) |

## DECLARATION OF MICHAEL BURDYN

1. I, MICHAEL BURDYN, am an Officer of the Uniformed Division of the United States Secret Service [hereinafter "USSS/UD"] and have been so employed since October of 2001. I report the following information based upon my personal knowledge of the events.

2. On July 15, 2004, I was on patrol, having begun my shift at 10:30 p.m. the previous day, which ended at 7:00 a.m. I observed at around 12:30 a.m. a black Mazda Miata with Maryland license plate #HXB066, traveling eastbound on Massachusetts Ave., N.W., drive through a red traffic signal at the intersection of Mass. Ave. and Dupont Circle. I stopped the Mazda for the traffic violation at 00:39 a.m. in front of 1776 Massachusetts Ave., N.W. I radioed in the stop and waited for backup to arrive.

3. Officer Ray McQueen of the USSS/UD arrived at 00:40 a.m. We approached the vehicle. I positioned myself at the driver's window, and Officer McQueen

1

positioned himself on the passenger's side of the car. I identified myself and explained to Mr. Terence Anthony Powers, the driver, that I stopped the car because he failed to stop at the red light. I asked Mr. Powers for his driver's license, vehicle registration, and proof of insurance. He handed me a North Carolina driver's license and a registration for the Mazda. I returned to my patrol cruiser.

4. I checked Mr. Powers's driver's license through the Washington Area Law Enforcement System and it revealed that his license was suspended in North Carolina.

5. While I was at my cruiser, Officer McQueen, who was positioned next to the passenger's side of the car, observed Mr. Powers reach behind the front passenger's seat with his right hand and remove an unknown object. He then observed Mr. Powers manipulating that object, which Mr. Powers placed in the map pocket. Officer McQueen suspected that it could be a weapon. So, Officer McQueen asked Mr. Powers for the box, and asked Mr. Powers out of the car. I returned to the car and took control of Mr. Powers while Officer McQueen examined the object in the map pocket, which was a cigarette box. Inside the box, Officer McQueen found five one-inch by one-inch plastic bags containing a powdered white substance. He then handed the box to me.

6. Mr. Powers admitted that the bags were his.

7. Mr. Powers said that he had been at a club on P street, but he could not give the name of the club. He explained that he saw another car run the red light, so he

decided to as well. However, no other cars were around at the time.

8. Mr. Powers denied any alcohol consumption. He did not slur his words, and I did not smell any alcohol on his breath. I, along with the other officers at the scene, did suspect that he was under the influence of some illegal substance.

9. At the beginning of the stop Mr. Powers was calm. He became jumpy and nervous as the arrest progressed. He said that it was his first arrest. He was concerned about what would happen to the Mazda, which he said belonged to his mother. The car was later impounded for safekeeping and not because of the crime.

10. Crime Scene Technicians Cockrell and Ortiz arrived at the scene. They tested the substance in the bags, and it tested positive for cocaine. They took possession of the five bags of cocaine.

11. I placed Mr. Powers under arrest for Possession with Intent to Distribute Cocaine and for driving without a valid driver's license. Mr. Powers was handcuffed, searched incident to arrest, and his personal property was removed, including his belt and jewelry. Sergeant Beres searched Mr. Powers again and transported him to the Third District Station of the Metropolitan Police Department.

12. Officer Brown and I assumed control over Mr. Powers when he arrived at the 3rd District Station sallé port. I read Mr. Powers his rights. While waiting outside the cell block for the MPD officer to receive the prisoner, I removed my handcuffs from Mr. Powers and had him stand against a wall. I walked him into the cell block when the MPD officer was ready. I searched him again and found another

3

zip bag with a white substance in the small coin pocket of his pants. Officer Brown and I then transferred Mr. Powers over to the 3rd District cell block officer, who also searched Mr. Powers.

13. The 3rd District officer assigned Mr. Powers a cell. The USSS/UD has no control over that function. I accompanied Mr. Powers, along with the MPD cell block officer, back to the cell. Mr. Powers did not make a request to use the phone. I then went to the officer processing room at the 3rd District to finish the arrest paperwork with Officer Brown.

14. At no time during the arrest was the use of force against Mr. Powers necessary, and no physical force was used on him. The arrest of Mr. Powers was executed according to USSS/UD and MPD policies and procedures. Mr. Powers showed no indications that he could not be left alone in a cell or that he was a threat to himself. Mr. Powers appeared calm and made no statements and took no actions suggesting that he was suicidal.

15. I completed the arrest paperwork and returned to the cell block to obtain Mr. Powers's signature on the notice of impoundment 40 minutes to 1 hour after my last contact with him. I found Mr. Powers sitting on the floor with his back against the cell door with his legs stretched out on the floor. He had a sock around his neck and did not show signs of life.

16. 3rd District officers called the EMS immediately, and they arrived within a few minutes.

Pursuant to 28 U.S.C. § 1746, I swear, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Michael Burdyn

Executed Date: 6-15-07