**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PATRICIA A. POWERS-BUNCE, Individually, )
and as Personal Representative of the )
ESTATE OF TERENCE ANTHONY POWERS, )
                                                                        )
      **Plaintiff,**                           )
                                                                    )
   v.                                                    ) Civil No. 06-1586 (RMC)
                                                                    )
DISTRICT OF COLUMBIA, *et al.,*          )
                                                                  )
      **Defendants.**                     )
_____)

**DISTRICT DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO THEIR
JUNE 11, 2007, MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY
JUDGMENT**

Defendants District of Columbia ("District"), Chief Charles H. Ramsey, Commander Larry D. McCoy and Sergeant Regina W. Gamble (hereinafter "District defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 56, hereby submit this Reply to plaintiff's Opposition to their June 11, 2007, Motion to Dismiss, or Alternatively, for Summary Judgment.[1] In their Motion, the District defendants made the following arguments:

1. The United States Secret Service ("USSS") is not an agent, servant or employee of the Metropolitan Police Department or the District of Columbia and, therefore, the District is not liable for any constitutional or common law violations committed by USSS officers Giles and Burdyn;

2. The plaintiff should not be permitted to recover against any of the District defendants for the claimed Fourth Amendment violations;

---

[1] The District defendants incorporate by reference the arguments made in the June 11, 2007 Motion to Dismiss, or Alternatively, for Summary Judgment.

3. All constitutional claims against the District defendants based on the decedent's suicide must fail because no constitutional violation was alleged, no specific wrongdoing was alleged against Chief Ramsey and/or Commander McCoy or, alternatively, the employees are entitled to qualified immunity;

4. All common law claims against the District defendants based on the decedent's suicide must fail because the USSS is not an agent, servant or employee of the District and/or MPD and the plaintiff cannot recover emotional distress damages because she failed to allege that she was in the zone of danger; and

5. All common law and constitutional claims against the "Watch Commander" should be dismissed because he/she has not been named or served.

The plaintiff's Opposition does not rehabilitate the major substantive weaknesses in the First Amended Complaint.[2] Moreover, the Opposition does not rebut any of the District defendants' arguments. Accordingly, the Court should grant the District defendants' June 11, 2007 Motion to Dismiss or, Alternatively, for Summary Judgment.

*Argument*

1. **PLAINTIFF'S OPPOSITION APPLIES THE WRONG LEGAL STANDARD AND FAILS TO REBUT THE DISTRICT DEFENDANTS' ARGUMENT THAT THE UNITED STATES SECRET SERVICE IS NOT AN AGENT, EMPLOYEE OR SERVANT OF THE DISTRICT AND/OR MPD.**

In their June 11, 2007 Motion, the district defendants acknowledged that the Court rejected the argument in their original motion to dismiss, *i.e.,* that the United States Secret Service was not an agent of the District and/or MPD. However, in its June 11, 2007 Motion, the District defendants asked for *summary judgment* on this issue and included a Declaration and a statement of undisputed facts in support of that request.

---

[2] A hearing is not necessary to resolve the instant Motion, as the parties have had a full and fair opportunity to brief these issues.

The plaintiff's Opposition to this argument is not a proper response to the District defendants' motion for summary judgment because it simply fails to comply with Fed. R. Civ. P. 56(e). That rule reads:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Here, in this case, the District defendants supported their motion for summary judgment with a Declaration from Assistant Chief Shannon Cockett. Despite the clear language of the rule outlining a proper response, the plaintiff's Opposition relied *solely* on the allegations in the First Amended Complaint. In fact, the response to the District defendants' request for summary judgment on this issue is that the plaintiff "has *alleged* that the United States Secret Service was acting as an agent, servant or employee of the Metropolitan Police Department and the District of Columbia" and indicated that discovery was needed. (Opposition at 7-8, emphasis added.) These allegations are an insufficient response to a motion for summary judgment. Moreover, as the plaintiff has not challenged any of the District defendants' Statement of Material Undisputed Facts, via affidavit, declaration, or otherwise, all of the facts contained in the District defendants' statement of material undisputed facts should be deemed admitted. *See* Local Rule 7(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").[3] Accordingly, summary judgment should be granted in the District defendants' favor on this issue.

---

[3] For these reasons, additional discovery is not necessary.

Additionally, the First Amended Complaint alleges claims of intentional infliction of emotional distress and gross negligence against the District of Columbia based on the actions of Officers Giles and Burdyn.[4]  (First Amended Complaint, Counts II and III.)  For the same reasons described above, the District defendants' Motion and the attached declaration, this Court should conclude that USSS Officers Giles and Burdyn were not acting as agents of the District of Columbia and/or the Metropolitan Police Department during the time frame described in the First Amended Complaint.  Accordingly, summary judgment should be entered in the District's favor on plaintiff's claims of IIED and (gross) negligence against the District (and/or the District defendants) that is predicated solely on the acts of USSS Officers Burdyn and Giles.  *See* Part 2(A)(i), *infra*.

2. **THE PLAINTIFF'S CONSTITUTIONAL AND COMMON LAW CLAIMS DO NOT SURVIVE THE DISTRICT DEFENDANTS' MOTION TO DISMISS.**

Based on the four corners of the First Amended Complaint, the plaintiff has not alleged any constitutional and/or common law violations against any of the District defendants. Accordingly, the Court should grant the District defendants' Motion to Dismiss.

    **A)    The Plaintiff's Constitutional Claims Do Not Survive a Motion to Dismiss.**

    i.    <u>The First Amended Complaint Does Not Allege a Fourth Amendment Violation Against Any of the District Defendants.</u>

The Court dismissed without prejudice the allegations of a Fourth Amendment violation in the original complaint due to insufficient facts.  In their June 11, 2007 Motion to Dismiss, the District defendants argued that the plaintiff failed to state a claim upon which relief can be granted against any of them for the alleged Fourth Amendment claim (unlawful search and seizure and/or excessive force) contained in the First Amended Complaint because the plaintiff

---

[4] It does not appear that the plaintiff alleges either of these claims against the individual District defendants.

4

only identified the USSS officers as being responsible for such violations. *See* Motion at Part II. Moreover, the First Amended Complaint failed to identify any District employee involved in the allegations. *Id*. Accordingly, any Fourth Amendment claims against any of the District defendants (including the District of Columbia) should be dismissed *with prejudice*.

Despite the clear and specific references to only USSS officers in her allegations of a Fourth Amendment violation in the First Amended Complaint, the plaintiff *now* claims in her Opposition that she was *actually* alleging a Fourth Amendment claim (*i.e.* an excessive force claim) against unspecified District employees.[5] The plaintiff cannot have it both ways. If the First Amended Complaint only alleges a Fourth Amendment violation against the USSS officers, then all claims based on an alleged Fourth Amendment violation must be dismissed with prejudice against all of the District defendants. If, on the other hand, the plaintiff is alleging claims of a Fourth Amendment violation against any or all of the District defendants, those claims must be dismissed because, like in the Court's March 28, 2007 Memorandum Opinion and Order, there are insufficient facts to support such allegations against the District defendants. Upon information and belief, there are no additional facts in the First Amended Complaint with respect to the excessive force allegation than were in the original Complaint. Alternatively, if the Court reads the First Amended Complaint to allege a Fourth Amended violation against any or all of the individual District defendants, they are entitled to qualified immunity. *See* Part 2(B)(iv), *infra*.

---

[5] For the record, it appears that the plaintiff is not challenging the District defendants' argument that they were not involved in Mr. Powers' initial stop, arrest, search and seizure; rather, she appears to be challenging only the District defendants' argument with respect to the excessive force claim. *See* Opposition at 11. With such a concession, the Court should dismiss with prejudice all claims against any of the District defendants arising out of Mr. Powers' initial stop, arrest, search and seizure.

5

      ii.      <u>The First Amended Complaint Failed to Allege a Constitutional Violation based on Mr. Powers' suicide.</u>

In their June 11, 2007 Motion, the District defendants argued that the First Amended Complaint failed to allege a constitutional violation based on Mr. Powers' suicide because none of the District defendants was deliberately indifferent to his serious medical needs.  *See* Motion at Part III.  In her Opposition, the plaintiff reveals a fundamental misunderstanding of the Court's March 28, 2007 Order.  The Opposition stated that "the individual capacity suits against Watch Commander, Chief Ramsey, Sergeant Gamble and Commander McCoy survive the Defendant's Motion to Dismiss."  (Opposition at 12.)  However, this is not at all accurate.  The Court's March 28, 2007 Memorandum Opinion directed the plaintiff to file a more definite statement, so that the Court could evaluate the individual defendants' assertion of qualified immunity related to the individual liability constitutional claims.  *See* Memorandum Opinion at 18 ("Here, Plaintiff's factual averments are too vague and conclusory for the Court to conduct a meaningful analysis of the individual Defendants' motions to dismiss.").

      Notwithstanding that error, the Opposition does not rehabilitate the major weakness in the First Amended Complaint, namely that she alleges no set of facts from which this Court could conclude that Mr. Powers' suicide was based on, or caused by, a constitutional violation committed by any or all of the District defendants.  Plaintiff's recitation of paragraphs 17-20, 27, 29-32, 35-36 simply do not allege any facts – either through Mr. Powers' words or his behavior – that would put the District or any District employee on any notice that he might kill himself. (Opposition at 14-15.)  Nor do they demonstrate that the District and/or any of its employees knew of and disregarded an excessive risk to Mr. Powers' health or safety, as required by *Farmer v. Brennan*, 511 U.S. 825 (1994).  In the absence of any such notice that he might kill

himself, the Court *should* conclude as a matter of law that the District defendants did not intentionally disregard an excessive risk to Mr. Powers' health and safety.[6]

Notably, the District defendants' Motion presented two cases with similar facts and claims to buttress their contention that the plaintiff failed to articulate sufficient facts about Mr. Powers' suicide to support a constitutional claim. *See Barber v. Salem*, 953 F.2d 232 (6th Cir. 1992); *Payne v. Churchich*, 161 F.3d 1030 (7th Cir. 1998). Surprisingly, the Opposition cited *Bradich v. City of Chicago*, 413 F.3d 688 (7th Cir. 2005), but that case further validates the District defendants' position that there was no constitutional violation based on the decedent's suicide. In *Bradich*, the plaintiff's decedent, like Mr. Powers here, hung himself after he was placed in a police cell pursuant to a lawful arrest on an outstanding warrant. *Id*. at 689.

The *Bradich* plaintiff sued the City of Chicago, the arresting officers and the lockup keepers and alleged that they violated the decedent's rights by failing to "protect him from the risk of suicide and react properly once they discovered the hanging." *Id.* at 689. The district court granted summary judgment in favor of the municipal and individual defendants. The Seventh Circuit affirmed the district court's decision with respect to the claim that the defendants failed to protect him from the risk of suicide and concluded as follows:

> The arresting officers did not violate any of Bradich's rights by taking him into custody on an outstanding warrant and handing him over at the lockup for detention. The lockup keepers did not display deliberate indifference to a substantial risk of suicide by putting Bradich in a regular cell, and allowing him to keep his civilian clothes, rather than placing him on suicide watch or sending him to a hospital until he sobered up … Bradich had been arrested many times before yet never attempted to injure himself, and he did not have a mental-health history implying any disposition toward suicide.

---

[6] The failure to train and/or supervise constitutional and/or common law claims derive from the original constitutional and/or common law violations. Accordingly, if the Court now finds no constitutional and/or common law violations against the individual District defendants, the plaintiff's respective failure to train and/or supervise constitutional and/or common law claims should fail as well.

7

*Id.* at 690.[7]

      The plaintiff contends in her Opposition that, "[a]t the Motion to Dismiss stage … the fact that there was a general order that the prison official failed to follow at the time of Mr. Powers' detainment is some evidence of the Defendants' knowledge of a substantial risk of serious harm which the general order was designed to protect against." (Opposition at 16-17.) This is an absurd premise. Even assuming that the District defendants violated MPD general orders, policies and procedures by not checking on Mr. Powers' during the two-hour time period before his death, the plaintiff alleges no facts from which this Court could conclude that this

---

[7] The First Amended Complaint lacks any facts describing what happened to Mr. Powers after he was found hanging in his cell (with the exception of the autopsy). However, the plaintiff – for the first time – appeared to claim in her Opposition that the District defendants had a continuing obligation to revive Mr. Powers, even after he was found hanging in his cell. (Opposition at 15, n.1.) Specifically, she claimed that the "individual defendants' failure to respond appropriately to Mr. Powers' condition upon discovering him hanging in his cell would also support a ruling that they are not entitled to qualified immunity." (*Id.*, citing, *Bradich v. City of Chicago*, 413 F.3d 688 (7th Cir. 2005).) The plaintiff should not be able to assert such a claim in her Opposition because she did not make that claim in her First Amended Complaint. However, even if the plaintiff was permitted to amend again her First Amended Complaint to include a claim, she failed to allege any facts to support such a claim. Moreover, the First Amended Complaint lacks any facts that are comparable to what was described in *Bradich*.

      In *Bradich*, the district court also granted summary judgment in favor of the lockup keepers. The reported actions of the lockup keepers are as follows: Bradich was found hanging at approximately 6:15 p.m., which was about 90 minutes after he was placed in a cell. *Id.* at 691. The decedent appeared to be alive when he was first found. *Id.* The lockup keepers used unorthodox methods to revive Bradich (including non-CPR sanctioned techniques, including shouting at, shaking and slapping Bradich). *Id.* An ambulance was "dispatched at 6:25 p.m., implying that [the officers on duty at the police station] had waited ten minutes to summon assistance." *Id.* Bradich was dead by the time the paramedics had reached him at 6:34 p.m. *Id.* There were also allegations that the lockup keepers may have doctored the logbook entries during the intervening 10 minutes between when Bradich was found hanging and when the ambulance was dispatched. *Id.* at 691.

      The Seventh Circuit reversed the district court's decision to grant summary judgment in the lockup keepers' favor because "when the non-moving party receives the benefit of all reasonable inferences … we must assume that [those] officers took ten minutes to seek help—and that they wasted much of that interval." *Id.* at 691. Notably, the *Bradich* lockup keepers were alleged to be directly involved with what happened to Bradich. The Seventh Circuit further concluded that the lockup keepers may not be entitled to qualified immunity. *Id.* at 692. Here, neither Chief Ramsey nor Commander McCoy was alleged to be involved in anything that happened to Mr. Powers. Moreover, there are absolutely no facts in the First Amended Complaint to support a claim for "failure to revive" against any of the District defendants.

omission is evidence of any District employee's knowledge of – and subsequent disregard of - an excessive risk to Mr. Powers' health or safety, as required by *Farmer, supra*. To the extent that the plaintiff is attempting to hold the District liable for its employees' failure to abide by general orders and/or policies, the *Bradich* court also addressed a similar issue, in that the plaintiff was trying to hold the City of Chicago liable for the employees' mistakes. The *Bradich* court affirmed the district court's decision to grant summary judgment in the municipality's favor, noting:

> [M]unicipalities are not vicariously liable under 42 U.S.C. § 1983 for their employees' errors. See *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). They are liable only for their own policies. The record in this case shows that some of these policies were not followed--for example, the City's rules called for close monitoring of the cells (intoxicated prisoners must be checked in person or by closed-circuit video every 15 minutes), and the lockup keepers did not follow this rule. The record suggests that they were playing cards and watching television instead of watching the monitors that displayed what the prisoners were doing. None of Chicago's policies is constitutionally inadequate; indeed, the Estate does not take issue with any of them. Its argument, rather, is that Chicago did not ensure that all of its employees followed all of its policies all of the time. That theory of liability is incompatible … with *Monell*.

*Bradich*, 413 F.3d at 690.

Here, too, it appears that the plaintiff is trying to hold the District liable because its employees allegedly did not follow MPD General Orders, policies and procedures. Like *Bradich*, the plaintiff alleges that the officers violated the policies because they did not properly monitor the detainee. Similarly, too, there is no allegation that MPD's General Orders, policies and procedures were themselves constitutionally inadequate. Accordingly, the Court should follow the Seventh Circuit's ruling in *Bradich* and determine that the plaintiff's proposed theory of liability is inconsistent with *Monell*. Further, the Court should limit any evidence relating to the alleged failure to follow General Orders, policies and procedures to a negligence claim, if such a claim remains after the Court rules on the instant Motion. *See also District of Columbia*

9

*v. Banks*, 646 A.2d 972, 983 (D.C. 1994) (Farrell, J., concurring) (internal citations omitted) (the General Order "'provides officials with guidance on how they should perform those duties . . . mandated by statute or regulation' but is not itself a regulation whose violation by itself may support a finding of negligence, let alone gross negligence."). Therefore, as a matter of law, the Court should dismiss any claims of constitutional violations against the District defendants based on Mr. Powers' suicide.[8]

      iii.    The Plaintiff's Opposition Does Not Dispute That No Wrongdoing Was Alleged Against Chief Ramsey or Commander McCoy in the First Amended Complaint.

In their June 11, 2007 Motion, the District defendants asked the Court to dismiss with prejudice Chief Ramsey and Commander McCoy because the First Amended Complaint did not allege any specific wrongdoing by these individuals. Moreover, the First Amended Complaint did not allege that Chief Ramsey and/or Commander McCoy were even present for *any* of the allegations. The plaintiff's Opposition appears to acknowledge this omission. *See* Opposition at 15 ("Plaintiff's First Amended Complaint has identified the personal involvement of officers Giles, Burdyn, Gamble and the Watch Commander.") Therefore, any constitutional claims (including any Fourth Amendment claims and/or any claims based on Mr. Powers' suicide) against Chief Ramsey and Commander McCoy in their individual capacity should be dismissed with prejudice.

---

[8] Alternatively, the plaintiff claimed that the Court should deny the District defendants' motion because she needs an opportunity to "discover all of the actions and intentions of each defendant." (Opposition at 17.) However, discovery is not necessary because the facts of the First Amended Complaint—and only the facts in the First Amended Complaint—demonstrate what was allegedly communicated by Mr. Powers to the officers and vice versa and those facts are the only facts that are relevant in order for the Court to determine whether the plaintiff alleged a constitutional violation based on Mr. Powers' suicide.

> iv. Alternatively, the Plaintiff's Opposition Does Not Rebut the District Defendants' Argument that Individually-Named District defendants are Entitled to Qualified Immunity.

In their June 11, 2007 Motion, the District defendants argued, alternatively, that the individually named District defendants are entitled to qualified immunity. The plaintiff's Opposition states that was that "the determination of whether an individual defendant is entitled to qualified immunity is a factual question, and as such, a determination on this issue at this stage is premature." (Opposition at 19.) However, this response is legally incorrect. Qualified immunity is a question of *law* and is appropriately decided at this early stage of litigation. *See* Motion at 20; *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (internal citations omitted) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'"). *See also Young v. Scales*, 873 A.2d 337, 341 (D.C. 2005) ("The issue of whether an officer is entitled to qualified immunity is a question of law to be determined by the trial court.").

In this case, in the absence of *any* facts describing Chief Ramsey's and/or Commander McCoy's participation in––or even awareness of––any of the incidents described in the First Amended Complaint relating to Mr. Powers' suicide and/or any Fourth Amendment claims, they are each entitled to a dismissal of all claims because the plaintiff's complaint, even when viewed in the light most favorable to the plaintiff, does not state a constitutional violation committed by Chief Ramsey and/or Commander McCoy. Alternatively, in the absence of any constitutional violation alleged against either of them, they are each entitled to qualified immunity.

As to the claims against the Watch Commander and/or Sergeant Gamble, it should be noted that the plaintiff did not allege that either of them was involved in any allegations related

to a Fourth Amendment claims. Notwithstanding this omission, both the Watch Commander and Sergeant Gamble should each get qualified immunity for any Fourth or Fifth Amendment constitutional claims asserted against either of them because their conduct did not violate Mr. Powers' constitutional rights. *See* Part 2(a)(ii), *supra*. As stated in the Motion, there is no legal precedent from which this Court can conclude that the First Amended Complaint articulates a Fourth or Fifth Amendment constitutional violation against these officers. In fact, the legal precedent supports the conclusion that qualified immunity is appropriate in this case. The plaintiff's Opposition, predicated solely on the speculative allegations in the First Amended Complaint, cannot survive a motion to dismiss. Accordingly, the Court should grant the District defendants' request for qualified immunity with respect to all constitutional claims asserted in the First Amended Complaint (to include all claims arising from Mr. Powers' suicide and any Fourth Amendment claims).

**B) The Plaintiff's Common Law Claims Do Not Survive a Motion to Dismiss.**

The District defendants argued in their June 11, 2007 Motion that all common law claims must fail because:1) the USSS is not an agent, servant or employee of the District and/or MPD; and 2) the plaintiff cannot recover emotional distress damages because she failed to allege that she was in the zone of danger. Notably, the plaintiff's Opposition appears to concede that the First Amended Complaint does not allege any common law claims against the individual District defendants. Moreover, it does not successfully rebut either of these arguments.

The District defendants already addressed this first argument in Part 1, *supra*.

The clear language of paragraph 57 of the gross negligence count of the First Amended Complaint relates to Ms. Powers-Bunce's *individual* claim for emotional distress damages due to MPD's alleged negligence in that it delayed notifying her of her son's suicide. The District

12

defendants argued in their June 11, 2007 Motion that she could not recover for such emotional distress damages because she did not allege that *she* was in the zone of danger. The plaintiff's Opposition asserted that the "zone of danger" legal standard applied to Mr. Powers, not Ms. Powers-Bunce. *See* Opposition at 21 ("Mr. Powers was in the zone of danger and suffered serious emotional distress …"). However, this response is based on an erroneous interpretation of the case law. Mr. Powers' proximity to the zone of danger is *completely irrelevant* to *plaintiff's claim* of emotional distress in paragraph 57. Obviously, as a practical matter, there was no delay in notifying Mr. Powers of his own suicide because he was the one that caused it. Moreover, the Opposition does not rebut that the plaintiff *herself* was not in the zone of danger, particularly since she did not learn of his death until two weeks later. Accordingly, any common law claims asserted by Ms. Powers-Bunce herself based on MPD's alleged delay in notifying *her* about her son's suicide and any related requests for emotional distress damages must fail and should be dismissed with prejudice.

**C) The Plaintiff Fails to Rebut the District Defendants' Argument that the Watch Commander Should be Dismissed With Prejudice.**

The District defendants also argued in their June 11, 2007 Motion that all common law and constitutional claims against the "Watch Commander" should be dismissed because he/she has not been named or served. In the Opposition, the plaintiff cites Fed. R. Civ. P. 25. However, this Rule only applies to public officers who are "sued in an official capacity." Fed. R. Civ. P. 25(d)(2). The Court has already dismissed *with prejudice* all official capacity suits against the individual District defendants as duplicative of a suit against the District. (March 28, 2007 order at 1-2.) Moreover, the plaintiff does not dispute that the Watch Commander has not been named or served. Therefore, in the absence of any rules or statutory authority, the Court should dismiss the Watch Commander as a defendant in this matter.

WHEREFORE, the District defendants respectfully request that the Court dismiss the plaintiff claims against them with prejudice and/or grant summary judgment in their favor.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 727-7164
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov