**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1586 (RMC) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**FEDERAL DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO THEIR RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY UNDER RULE 56(f)**

The Federal Defendants, through counsel, the United States Attorney for the District of Columbia, respectfully submit this reply memorandum to Plaintiff's Opposition to Federal Defendants' Renewed Motion to Dismiss, or, In the Alternative, Motion for Summary Judgment and in opposition to Plaintiff's Motion for Discovery Under Rule 56(f). Plaintiff has failed to rebut successfully Defendants' assertions that the First Amended Complaint should be dismissed, or to show the existence of any genuine issue of material fact that would foreclose summary judgment as a matter of law in favor of the Federal Defendants. Plaintiff, moreover, has failed to satisfy the requirements for discovery under Fed. R. Civ. P. 56(f).

**I.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS REGARDING PLAINTIFF'S CONSTITUTIONAL CLAIMS.**

Plaintiff's efforts to establish a genuine issue of material fact concerning her claims that Federal Defendants violated Mr. Powers' Fourth and Fifth Amendment rights have failed. Plaintiff has not offered any substantive evidence that the arrest of Mr. Powers and any of the searches related

thereto were unlawful. Plaintiff has also failed to dispute any of the material facts disputing that Federal Defendants violated Plaintiff's Fifth Amendment Rights. Plaintiff's failure to proffer any substantive evidence on either issue is telling.

Plaintiff attempts to create genuine issues of material fact by questioning Federal Defendants' evidence and by proffering conclusory statements and impeachment evidence. In essence, Plaintiff seeks to create genuine issues of material fact without offering substantive evidence in support of the elements of her causes of action. Such an approach will not render a Plaintiff immune from summary judgment. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). Indeed, this case presents the classic circumstance for a grant of summary judgment because the rationale for this procedural mechanism is most appropriate in this context. The Supreme Court has instructed that "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Clearly, Plaintiff has failed to meet her obligation to make the necessary showing under Fed. R. Civ. P. Rule 56(c) .

### A.    Plaintiff offers no substantive evidence to show that Federal Defendants violated Powers' Fourth Amendment Rights.

Federal Defendants have provided affirmative evidence that no Fourth Amendment violation has occurred. This evidence is in the form of the declarations of Officer Burdyn, Sergeant Giles and Lieutenant Beres. Plaintiff provides no substantive evidence that suggests a scenario different from

that provided by these fact witnesses or consistent with her theory of the case, but rather offers the Declaration of Max Krupo (expert witness) to impeach the declarations of Officer Burdyn, Sergeants Giles and Lieutenant Beres.  See Plaintiff's Statement of Genuine Issues ("PSGI") at ¶¶ 2, 3-13.  Mr. Krupo's Declaration provides no facts that dispute those supplied by these officers, but instead merely suggests inconsistencies and inaccuracies in the three officers' declarations.  Max Krupo, however, is not a percipient witness, and any expertise he may have is not helpful in this context since the Court does not need assistance evaluating the accounts of these witnesses.  Accordingly, Defendant has shown that the search of Plaintiff and his vehicle was lawful and that no excessive force was used against Plaintiff.

Plaintiff attempts to impeach Officer Burdyn, Sergeant Giles and Lieutenant Beres regarding several aspects of their accounts.  These aspects include (1) the suspicion that Powers had a weapon and (2) the nature of the search of Powers and his vehicle.  All of these attempts at impeachment are immaterial because they do not create a dispute as to a genuine issue of material fact and cannot defeat summary judgment. See Muhammed v. City of Chicago, 316 F.3d 680, 683-84 (7th Cir. 2002) ("To have prevented summary judgment, [Plaintiff] needed to provide specific evidence when attacking [the affiant's] credibility, such as contradictory eyewitness accounts or other impeachment evidence."); Walter v. Fiorenzo, 840 F.2d 427, 434 (7th Cir.1988) ("A motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit.").  Plaintiff merely raises questions and hurls conclusions.  Such questions and conclusions are insufficient to defeat summary judgment.  Mere conclusory allegations are not enough to survive a motion for summary judgment.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D.

2 (D.D.C. 1997). <u>See also</u> <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Plaintiff questions Officer McQueen's suspicion that Powers had a weapon. PSGI at ¶ 5; Krupo Dec. at ¶ 6. Krupo states that Burdyn and McQueen did not note that they suspected that Powers possessed a weapon in the Incident Based Event Report. <u>Id.</u> Plaintiff also argues that the officers did not sufficiently search Powers at the scene of the crime, therefore, indicating that Burdyn and the other officers at the scene did not suspect that Powers possessed a weapon. Krupo Dec. at ¶¶ 8, 10; PSGI at ¶¶ 7, 9. Krupo further opines that McQueen's request that Powers hand him the cigarette box indicated that McQueen did not believe that the object being manipulated by Powers was a weapon. Krupo Dec. at ¶ 12; PSGI at ¶ 14. These allegations relate to impeachment only. Plaintiff attempts to impeach Officer Burdyn's statement that McQueen suspected that Powers had a weapon and actually grabbed the object from the map pocket, but offers no substantive evidence showing that McQueen did not possess this suspicion.

Even if McQueen did not suspect that Powers possessed a weapon, the searches of Powers and his vehicle were lawful because they were searches incident to a lawful arrest. Officer Burdyn arrested Powers for driving without a valid license. Declaration of Michael Burdyn (hereinafter "Burdyn Dec.") at ¶ 4; Declaration of Benita Giles, June 15, 2007 (hereinafter "Giles Dec.") at ¶ 3. Plaintiff asserts that "Mr. Powers was not placed under arrest until well after the search of the pocket of the car and the cigarette box occurred." <u>See</u> Plaintiff's Opposition to Federal Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, and Plaintiff's Motion for Discovery Under Rule 56(f) (hereinafter "Plff. Opp.") at 19. Plaintiff's expert, however, contradicts this assertion.

See Krupo Dec. at ¶ 13 ("He [Powers] in effect was under arrest at the time his vehicle was searched and the 'cigarette box' was examined."). The scope of the search was proper even though Powers was outside of the car. See Thornton v. United States, 541 U.S. 615, 618, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (upholding search where officer "handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car" before searching his vehicle); United States v. Powell, 483 F.3d 836, 842 (D.C. Cir. 2007) (police officers had reason to believe that persons who were urinating within few feet of automobile were recent occupants of occupied automobile, and thus officers could search passenger compartment of vehicle incident to arrest of those persons for urinating in public). Therefore, the undisputed facts show that both the arrest of Mr. Powers and the search of the vehicle he was operating were lawful.

Plaintiff alleges two discrepancies between the accounts of Burdyn and Giles regarding the searches of Mr. Powers and his vehicle. See PSGI at ¶¶ 8-9. Plaintiff asserts that Burdyn and Giles provide different accounts of how the officers obtained possession of the cigarette box. PSGI at ¶ 8. This discrepancy is immaterial because whether the box was handed to McQueen (Giles Dec. at ¶ 5) or obtained through McQueen's search of the map pocket (Burdyn Dec. at ¶ 11), the search was incident to a lawful arrest. Once again, Plaintiff's allegations contain no substantive evidence but rather relate only to impeachment. Therefore, these allegations raise no genuine issues of material fact.

The second alleged discrepancy between the accounts of Giles and Burdyn concerns their descriptions of the search of Powers before his transport to the Third District. PSGI at ¶ 9. Officer Burdyn stated that Mr. Powers was searched before he was placed in Sergeant Beres' cruiser for transport. Burdyn Dec. at ¶ 11. Sergeant Giles stated that Mr. Powers was "patted down" before he

was placed in Beres' cruiser.  Giles Dec. at ¶ 6.  Once again, this was a search incident to a lawful

arrest, and these alleged differences in details are immaterial to the resolution of the issues in this

case.

 Plaintiff not only attempts to find inconsistencies but also highlights omissions in testimony.

Plaintiff alleges that Burdyn "chose not to include most of the facts alleged in his Declaration in the

official record related to the events surrounding the arrest of Mr. Powers [Incident-Based Event

Report]."  Plff. Opp. at 17.  The alleged omitted details include the following:  (1) no description of

either Powers' or Burdyn's activities from Powers' running of the red light until Burdyn decided to

pull him over; (2) no mention of probable cause to search the cigarette box; (3) no mention of the

location of the cigarette box; (4) no statement of Officer McQueen or his mental impressions; (5)

no suggestion that there was suspicion of any weapon; (6) no description of the unknown object

being manipulated by Powers.  Plff. Opp. at 17-18.  Plaintiff has not refuted Officer Burdyn's sworn

Declaration with any substantive evidence but rather has once again raised insignificant questions

about Burdyn's Declaration.  These questions do not create a genuine issue of material fact as to this

search.

 Plaintiff employs similar tactics in her efforts to preserve her claims of excessive force.  She

states that Dr. Arden's report is inconsistent with Federal Defendants' claims that they did not use

excessive force against Powers.  Plaintiff offers no medical expert to counter the expert opinions of

Dr. Arden but attempts to discredit him through a misreading of the opinion he offers.  See Plff. Op.

at 21; PSGI at ¶ 17.  First, Plaintiff emphasizes what Defendant's medical expert, Jonathan Arden,

M.D., could not state in his report but provides no medical expert to counter his report.  See Plff.

Opp. at 21 ("Defendants' own expert witness cannot deny the possibility that the injuries evidenced

in the autopsy report and photographs did not occur during Mr. Powers arrest and custody, although

he suggests one cannot establish that they were either.").  Plaintiff then states that Arden "admits at

least some of the injuries are consistent with strikes by an 'elongated object.'" Id.  Plaintiff does not

accurately describe Arden's statement on this point.  Although Arden stated that  some of the injuries

"**theoretically** are consistent with strikes by an elongated object, but their features do not suggest

this to be more probable than being caused by impacts with another surface or object."  Id.

Furthermore, Dr. Arden observed that the injuries were inconsistent with Plaintiff's allegations of

the use of police night sticks (Am. Compl. at ¶¶ 21, 24 & 41):  "A soft-tissue injury caused by

striking with a cylindrical object, such as a police baton, typically recapitulates the configuration of

the striking portion of the object, resulting in a rectangular or elongated bruise.  In contrast, the

bruise to the right shin was irregularly shaped.  The injuries to the lower back and thighs consisted

of areas of bleeding in the subcutaneous (under the skin) tissues; none of these had any patterned

surface components, as would be likely if these were caused by strikes with a baton."  Arden Dec.

at ¶ 5.

        Plaintiff provides an additional inaccurate description of Federal Defendants' evidence in an

attempt to shore up insignificant claims.  Plaintiff states that "the Declarations do not indicate that

Officer McQueen did not strike Mr. Powers."  Plff. Opp. at 21.  This is simply not true.  All three

declarations state that no physical force was used on Powers.  See Burdyn Dec. at ¶ 14 ("At no time

during the arrest was the use of force against Mr. Powers necessary, and no physical force was used

on him."); Giles Dec. at ¶ 7 ("no force was required by any officer at the scene to control him, and

no force was used"); Beres Dec. at ¶ 5 ("no force was required by any officer at the scene to control

him, and no force was used on Mr. Powers during the transport"). Plaintiff has not offered a shred of evidence to show that Federal Defendants used excessive force and caused Powers' injury.

Plaintiff's total failure to provide any affirmative proof regarding her allegations of unlawful search and excessive force belies the weakness of Plaintiff's Fourth Amendment claims. Federal Defendant's evidence shows that Burdyn and Giles conducted a lawful search of Powers and his property and that they did not employ excessive force against Powers. There are no disputes as to any genuine material fact concerning either the lawfulness of the search or the use of force against Plaintiff. Accordingly, this Court should dismiss all of Plaintiff's Fourth Amendment claims against the Plaintiff.

> **B.**     **Plaintiff offers no substantive evidence to show that Federal Defendants violated Powers' Fifth Amendment Rights.**

Plaintiff fails to meet the standard for proving claims brought under the Fifth Amendment for pretrial detainee suicides. In its March 28, 2007 Memorandum Opinion, this Court described this standard which consists of two prongs: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety. Mem. Op. at 13 (citing Collins v. Seeman, 462 F.3d 757, 760-61 (7th Cir. 2006)). In prison suicide cases, the first prong (the objective element) is met by virtue of the suicide itself, as "[i]t goes without saying that suicide is a serious harm." Id. (internal quotations omitted). The second, subjective component of an Eighth Amendment (analogous to the Fifth Amendment on this issue) claim requires a dual showing that the defendant:  (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk. Id.

Plaintiff's claims that Federal Defendants violated Powers's Fifth Amendment rights succumb to the same flaws that undermine her Fourth Amendment claims. Once again Plaintiff provides no substantive evidence to counter Federal Defendants' factual submissions on these points but makes conclusory allegations that lack factual support and proffers only impeachment evidence.

Plaintiff begins her argument with a defense of the sufficiency of her pleadings. Plff. Opp. at 22-24. She then quotes eleven paragraphs of her Amended Complaint. Plff. Opp. at 23-24. The form and substance of her argument is an implicit admission that Plaintiff has no facts to support her allegations. After quoting her Amended Complaint at length, Plaintiff makes several allegations that are either immaterial or are solely impeachment evidence.

Plaintiff's allegation that Federal Defendants failed properly to monitor Powers has no factual support. Plaintiff asserts that Powers "was not booked or processed and items that posed a danger to his health and safety were not removed from his possession." Plff. Opp.at 24; PSGI at ¶ 13; Krupo Dec. at ¶ 15. Plaintiff fails to name the items that should have been removed from Powers' possession nor provides expert testimony setting forth this standard of care. Furthermore, the allegation is not an accurate description of the evidence because before Beres transported Powers to the Third District Station, Federal Defendants removed his belt and other personal belongings which "were taken from him to ensure the safety of himself and the officers." Giles Dec. at ¶ 6.

Plaintiff also asserts that Federal Defendants did not monitor Powers in accordance with MPD policies and procedures but fails to state those specific policies and procedures. Plff. Opp. at 24-25; PSGI at ¶ 13; Krupo Dec. at ¶ 15. Plaintiff does not directly allege that the forty minute to one hour time period between Burdyn's last contact with Powers and his suicide was too long and

has not provided expert testimony to establish the appropriate standard of care. <u>See</u> Burdyn Dec. at ¶ 15. Plaintiff also fails to provide any substantive evidence to refute Officer Burdyn's time line.

Plaintiff has also offered no substantive evidence of Defendant's deliberate indifference to Powers as a pretrial detainee (alleged Fifth Amendment violations). Plaintiff offers arguments which suggest that the USSS should have known that Powers was suicidal and thus should have monitored him accordingly: (1) this was Powers' first arrest, (2) he became more nervous as the arrest escalated, and (3) he was intoxicated. Plff. Opp. at 24-25; Krupo Dec. at ¶ 11; PSGI at ¶ 10. This information does not suggest that any special suicide monitoring of Mr. Powers was required.

Plaintiff has failed to show either of the two parts of the second prong (deliberate indifference). Neither Sergeant Giles nor Officer Burdyn received any indications that there was any risk, let alone a substantial one, that Mr. Powers would commit suicide. Mr. Powers appeared calm, made no statements and took no actions suggesting that he was suicidal. Burdyn Dec at ¶ 14; Giles Dec at ¶ 7; Beres Dec at ¶ 5. The record shows that Burdyn and Giles did not disregard that risk but rather truly and reasonably believed that Mr. Powers was not suicidal. <u>Id.</u> The declarations proffered support the conclusion that Federal Defendants displayed no deliberate indifference to Powers' safety and health and properly followed the appropriate procedures for detaining an arrestee.

Plaintiff has, therefore, failed to satisfy the second prong of the "deliberate indifference test" adopted by this Court in its March 28, 2006 opinion. Accordingly, this Court should dismiss Plaintiff's Fifth Amendment claims against Federal Defendants Giles and Burdyn with prejudice or, alternatively, enter summary judgment in favor of Federal Defendants.

### C.    Federal Defendants are Entitled To Qualified Immunity.

Consistent with the oft-cited opinion of Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982), Federal Defendants have established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id., citing Procunier v. Navarette, 434 U.S. 555, 565 (1978); Wood v. Strickland, 420 U.S.308, 322 (1975); accord, Wilson v. Layne, 526 U.S. 603, 609 (1999); Crawford-El v. Britton, 523 U.S. 574, 587-88 (1998).  "'[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Wilson, 526 U.S. at 614-15, quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). Given that Plaintiff has failed to support speculative claims of excessive force with evidence of any kind, none of the allegations advanced by her set forth constitutional violations. Even accepting the allegations of the Complaint in a light most favorable to the Plaintiff, Plaintiff cannot establish that only USSS/UD officers or even only the police generally had responsibility for whatever caused the injury to Mr. Powers' body.  Because Plaintiff cannot maintain that the Federal Defendants violated any of Mr. Powers' clearly established rights, the Federal Defendants should enjoy qualified immunity. Consequently, Plaintiff's claims should be dismissed, or the Court should enter judgment in favor of the Federal Defendants.[1]

---

[1]    Moreover, individual liability for damages for violation of constitutional rights is predicated upon personal responsibility.  Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir. 1984). Plaintiff's speculative claims cannot establish personal responsibility of the Federal Defendants.  For the same reason, as well as failure to state a valid claim, Plaintiff's state-law equivalent claims also fail.

As discussed in Section I A and B <u>supra</u>, Plaintiff has presented no evidence to show that Sergeant Giles and Officer Burdyn committed any Fourth or Fifth Amendment violations. Giles and Burdyn did not violate the Fourth Amendment because they did not unlawfully search Mr. Powers or his property and did not use excessive force in arresting him. They did not violate the Fifth Amendment because they did not have "**actual knowledge** of the substantial risk of suicide and responded with deliberate indifference." <u>See</u> <u>Hare v. City of Corinth, Miss.</u>, 74 F.3d 633, 650 (5th Cir. 1996)(emphasis added). "Mere negligence by governmental actors can never constitute a fifth amendment violation." <u>Committee of U.S. Citizens Living in Nicaragua v. Reagan</u>, 859 F.2d 929, 948 (D.C. Cir. 1988), interpreting <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986) and <u>Daniels v. Williams</u>, 474 U.S. 327, 334 (1986). Plaintiff cannot establish that the circumstances suggested that Mr. Powers was suicidal. Plaintiff offers no affirmative proof to refute that Federal Defendants properly confined and monitored Mr. Powers. Even if the Court concluded that Powers' drug use should have alerted police to more than a general risk of suicide, the law was not clearly established that drug use alone required extra precautions against suicide.

Plaintiff is unable to establish that Federal Defendants committed constitutional violations. Plaintiff recognizes that this inability is fatal to her position that Federal Defendants are not entitled to qualified immunity.[2] She has no facts on her side which demonstrate that Federal Defendants committed constitutional violations. In order to compensate for this serious flaw, Plaintiff turns to the law for rescue. However, her grasp for the law ultimately rests on a request for discovery in this

---

[2] Plaintiff mistakenly refers to Federal Defendants as "District Employees" in the first paragraph of her argument. <u>See</u> Plff. Opp. at 27 ("Defendants next argue that suit against the District Employees in their official capacity is duplicative of the action against the District.").

case.  Plff. Opp. at 29 ("The determination of whether an individual defendant is entitled to qualified immunity is factual question, and as such, a determination on this issue at this stage is premature.").

This Court recognized in its March 2003 Memorandum Opinion in this case that government officials sued individually and asserting qualified immunity are entitled to early resolution of the defense and are entitled to dismissal of allegations that fail to state a violation of clearly established law. Mem. Op. at 16-17, citing Saucier v. Katz, 533 U.S. 194, 200-201 (2001) and Behrens v. Pelletier, 516 U.S. 299, 306 (1996).  Given this exacting standard as well as Plaintiff's  conclusory allegations and her utter lack of any evidence disputing the material facts established by the Federal Defendants, this Court should either dismiss all of Plaintiff's consistutional claims against Federal Defendants or enter judgment in their favor.

II.    **PLAINTIFF HAS NOT SHOWN THAT THIS COURT HAS ANY JURISDICTION OVER HER COMMON LAW CLAIMS AGAINST FEDERAL DEFENDANTS AND HAS OFFERED NO SUBSTANTIVE EVIDENCE SHOWING THAT A GENUINE ISSUE OF MATERIAL FACT EXISTS REGARDING THOSE CLAIMS.**

Under the Federal Tort Claims Act (FTCA),  when the Attorney General's designee has filed a certification that the original defendant was acting within the scope of his employment, such certification has the following two effects: (1) it requires the substitution of the United States for the federal employee as the defendant in the lawsuit; and (2) it converts the lawsuit into an action against the United States under the FTCA.  See 28 U.S.C. §§ 1346(b), 2671 et seq.; see also Haddon v. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995); Vanover v. Hantman, 77 F. Supp.2d 91, 97 (D.D.C. 1999), aff'd, 38 Fed.Appx. 4 (D.C. Cir. 2002).  On December 7, 2006,  Rudolph Contreras, Civil Chief, United States Attorneys Office for the District of Columbia, executed a certification verifying that Sergeant Giles and Officers Burdyn, among others, were acting within the scope of

their authority as employees of the United States at the time of the suicide. <u>See</u> R. 21.[3]  Therefore,

if Plaintiff is bringing a FTCA claim, the proper defendant is the United States, not Sergeant Giles

and Officer Burdyn, which Plaintiff has not disputed.

While Plaintiff does not explicitly rely on the FTCA in the Amended Complaint, even if she

did in her efforts to advance the gross negligence and intentional infliction of emotional distress

causes contained in the original complaint, these claims also fail.     In advancing these common law

claims, Plaintiff repeats the same unsupported allegations made in support of her claims of

constitutional violations.  She baldly asserts *inter alia* that the Federal Defendants illegally stopped

Powers, conducted  an unreasonable search and seizure, failed to follow established practices and

policies, failed to communicate necessary information concerning Powers to MPD, and did not

properly monitor him.  Plaintiff maintains that all of these actions constitute both intentional

infliction of emotional distress and gross negligence.

To prevail on a claim of intentional infliction of emotional distress, plaintiff must prove three

elements: (1) defendant acted in an extreme and outrageous manner (2) which was intentionally or

recklessly calculated (3) to cause plaintiff severe emotional distress.  <u>Joyce v. U.S.</u>, 795 F. Supp. 1,

5 (D.D.C. 1992) (citing <u>Green v. American Broadcasting Companies, Inc.</u>, 647 F.Supp. 1359, 1362

(D.D.C. 1986)).  Recently, the D.C. Circuit stated that "under D.C. tort law, a family member can

only recover for IIED [intentional infliction of emotional distress] if she was 'present' when the

extreme or outrageous conduct took place."  <u>Pitt v. District of Columbia</u>, No. 05-7157, 2007 WL

1814970, 2007 U.S. App. LEXIS 15178, Slip Op. at *1 (D.C. Cir. June 26, 2007).  Noting that the

_____

[3]  "R." refers to the docket number where the cited document appears in the record for this
case.

14

term "present" meant physical proximity, the Court found nothing to suggest that the wife was "in any way physically 'present' at the location where this affidavit was prepared or filed." Id. at *29. Plaintiff did not present any facts showing that the Defendants' conduct was either "extreme and outrageous" or intentionally calculated to cause Plaintiff severe emotional distress. Likewise, there is no evidence showing that Plaintiff Patricia A. Powers-Bunce was present when the alleged extreme and outrageous conduct took place. Indeed, the Amended Complaint alleges that she did not learn of her son's death until July 28, 2004 (thirteen days after his July 15, 2004 suicide). Am. Compl. at ¶ 57. Accordingly, Plaintiff clearly cannot recover for intentional infliction of emotional distress under the law of the District of Columbia.

Plaintiff also fails to show that Federal Defendants committed gross negligence. There is no substantive evidence suggesting that Federal Defendants' conduct was such an "extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." District of Columbia v. Henderson, 710 A.2d 874, 876 (D.C. 1998). In fact, Plaintiff has offered no evidence to rebut Federal Defendants' evidence showing that Giles and Burdyn dutifully observed the appropriate standard of care during the arrest and detention of Terrence Anthony Powers. Accordingly, Plaintiff's claim of gross negligence should be dismissed or judgment entered in favor of the Federal Defendants.

## III.    PLAINTIFF'S 56(f) MOTION SHOULD FAIL.

Plaintiff argues that Defendant's summary judgment motion is premature since she has not been able to examine certain evidence. Plaintiff's Statement of Genuine Issues ("PSGI") at ¶ 1, 14-17. She provides a list of items of discovery that she would like to obtain: video recordings of Third District cells (PSGI at ¶ 14), depositions of officers and the Station Clerk (PSGI at ¶¶1, 14), radio

communications (PSGI at ¶ 15), homicide investigation statements (PSGI at ¶ 16), and cross-examination of Federal Defendants' expert (PSGI at ¶ 17).  See also Plff. Opp. at 11-12, 29.

Rule 56(f) permits the Court to "refuse [an] application for [summary] judgment or . . . order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had," if it appears "from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition."  Fed. R. Civ. P. 56(f). The party seeking a continuance must "'state[] concretely' why additional discovery is needed to oppose [the motion]."  Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir. 2006) (quoting Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989)).  The purpose of the Rule is to "prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." Dickens v. Whole Foods Market Group, Inc., 2003 WL 21486821, at *2 n. 5 (D.D.C. Mar. 18, 2003).

However, as a general matter, the Court has broad discretion to deny or limit discovery in order to protect a party from undue burden or expense, and to promote a case's efficient resolution. See Fed. R. Civ. P. 26(c); see, e.g., Brennan v. Local Union No. 639, 494 F.2d 1092, 1100 (D.C. Cir. 1974); Brune v. IRS, 861 F.2d 1284, 1288 (D.C. Cir. 1988); Gallella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973).  Such an order may provide, inter alia, that discovery not be had, that it be delayed, or that it be had only by a method other than that selected by the asking party.  Fed. R. Civ. P. 26(c)(1)-(3).

For instance, it is entirely appropriate for a Court to stay discovery, where there is a dispositive motion pending because it is logical that when

16

the determination of a preliminary question may dispose [of the claims against a party], applications for discovery may properly be deferred until the determination of such questions.

O'Brien v. Arco Corp., 309 F. Supp. 703, 705 (S.D.N.Y. 1969); see also Founding Church of Scientology v. United States Marshals Service, 516 F. Supp. 151, 156 (D.D.C. 1980); Equal Employment Opportunity Comm'n v. Local Union No. 3, 416 F. Supp. 728, 738 (N.D. Cal.1975) (discovery stayed pending resolution of jurisdiction question); Cannon v. United Ins. Co. of Am., 352 F. Supp. 1212, 1214-15 (D.S.C. 1973) (inappropriate to order extensive discovery pending resolution of jurisdiction).

In Bivens litigation in particular, it is necessary to stay discovery until the qualified immunity claims have been resolved. E.g., Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982). As the Supreme Court recognized, qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Importantly, the Supreme Court has long admonished that the question of qualified immunity "should be resolved at the earliest possible stage of a litigation." Anderson v. Creighton, 483 U.S. 635, 646 n. 6 (1987).

Critical for present purposes, the Supreme Court has cautioned that until the "threshold immunity question is resolved, discovery should not be allowed." Harlow, 457 U.S. at 818. As the Supreme Court later emphasized, "[u]nless the plaintiff's allegations state a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526.

The D.C. Circuit, in Moore v. United States, 213 F.3d 705 (D.C. Cir. 2000), specifically upheld the District Court's denial of Plaintiff's motion for discovery in a Bivens case. The Court

17

reasoned that "a district court may deny discovery requests when additional facts are not necessary to resolve the summary judgment motion." Id. at 710 n.3, citing White v. Fraternal Order of Police, 909 F.2d 512, 516-17 (D.C.Cir.1990) (en banc). The Circuit reached a similar conclusion in Curtin v. United Airlines, Inc., 275 F.3d 88 (D.C. Cir. 2001) (non-Bivens case). As here, in Curtin, plaintiffs had "fail[ed] to identify any facts essential to opposing [defendant's] motion as to which discovery is needed . . . [where] all the facts required to decide the summary judgment issue [were] already in the record . . .." Id. at 91. Under these circumstances, the Circuit concluded that discovery was unnecessary. Id. A similar conclusion is warranted in this case.

Plaintiff Powers-Bunce is not entitled to discovery before this Court rules on Defendant's motion for summary judgment because Plaintiff has failed to identify a genuine issue of material fact as to which discovery is necessary. At bottom, Federal Defendants have successfully established that they are shielded from suit under the doctrine of qualified immunity. The Supreme Court held that "[u]nless the plaintiffs' allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).[4] As explained in the Section I C, supra (discussing Federal Defendants' entitlement to qualified immunity), Plaintiff's allegations fall far short of establishing that Federal Defendants violated clearly established law. Moreover, Federal Defendants have established that Plaintiff's claims are not viable. Accordingly, Plaintiff's request for discovery should not foreclose Federal Defendants' motion for summary judgment.

---

[4] A defendant's right is to "immunity from suit" not a "defense to liability." Id.; see also Cleavinger v. Saxner, supra, 474 U.S. at 207-208.

## IV.    <u>CONCLUSION</u>

WHEREFORE, Federal Defendants respectfully submit that this Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment should be granted and that Plaintiffs' Motion for Discovery under Rule 56(f) should be denied.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739

Counsel for Federal Defendants

## CERTIFICATE OF SERVICE_____

I hereby certify that on this 16th day of July, 2007, I caused the foregoing Federal Defendants' Reply to Plaintiff's Opposition to Federal Defendants' Renewed Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment and Federal Defendants' Opposition to Plaintiff's Motion for Discovery under Rule 56(f), Memorandum of Points and Authorities in Support Thereof, and Federal Defendants' Reply to Plaintiff's Statement of Genuine Issues to be served on Counsel for the Plaintiff and Counsel for the District of Columbia Defendants by the Electronic Case Filing system or, if this means fails, then by mail, postage prepaid, addressed as follows:

M. Celeste Bruce, Esq.
Rifkin, Levingston, Levitan & Silver, LLC
6305 Ivy Lane, Suite 500
Greenbelt, MD 20770

Dana K. DeLorenzo
Assistant Attorney General
Office of the Attorney General for the
  District of Columbia
441 4th Street, N.W., Sixth Floor South
Washington, D.C. 20001

                                                            /s/
                                          _____
                                          OLIVER W. McDANIEL, D.C. BAR # 377360
                                          Assistant United States Attorney
                                          Civil Division
                                          555 Fourth Street, N.W.
                                          Washington, D.C.  20530
                                          (202) 616-0739