## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA A. POWERS-BUNCE,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | |
| v.      ) | Civil Action No. 06-1586 (RMC) |
|      ) | |
| DISTRICT OF COLUMBIA, *et al.*,      ) | |
|      ) | |
| Defendants.      ) | |
|      ) | |

## MEMORANDUM OPINION

On July 15, 2004, Terence Anthony Powers committed suicide in a holding cell at the Metropolitan Police Department's Third District precinct headquarters only hours after he was arrested for possession of cocaine with intent to distribute and driving with a suspended license. Mr. Powers' mother, Plaintiff Patricia Powers-Bunce, has sued the District of Columbia and several individual Metropolitan Police Department ("MPD") and United States Secret Service ("USSS") officers, seeking to hold them legally accountable for her son's suicide.

Before the Court is the Federal Defendants' Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Dkt. # 35], the District of Columbia Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment [Dkt. # 31], and Plaintiff's Motion for Discovery [Dkt. # 41]. The Motions to Dismiss will be granted in part and denied in part and the Motion for Discovery will be denied.

## I. BACKGROUND

### A.    Factual Background

The following facts are based on Plaintiff's Amended Complaint. *See* Dkt. # 26.

Sometime on July 15, 2004, Officer Burdyn and Sergeant Giles of the USSS allegedly saw a car fail to stop at a red light at the intersection of Massachusetts Avenue and Dupont Circle in Northwest Washington, D.C.  Am. Compl. ¶¶ 10-11.  The precise time of the stop and subsequent arrest is unknown because the officers failed to prepare a traffic violation citation.  *Id*. ¶ 11.  After the officers learned that Mr. Powers did not have a valid driver's license, he was arrested.  *Id*. ¶¶ 13, 15.  A search of his car incident to the arrest located cocaine and possession with intent to distribute cocaine was added to the charges.  *Id*. ¶¶ 14-15.

Mr. Powers was taken to the Third District precinct of the MPD at around 1:30 a.m. on July 15, 2004.  *Id*. ¶ 16.  While there, "Mr. Powers was interrogated by Officers Giles, Brudyn [sic], and other MPD officers, without being apprised of his constitutional rights, without being booked and without being processed."  *Id*. ¶ 17.  The Amended Complaint alleges that during the interrogation and at various other times, "Officers Giles, Brudyn [sic] and other officers of the MPD questioned Mr. Powers in an emotionally abusive manner, including leading Mr. Powers to believe that he was going to jail . . . and questioning him in such a way so as to cause Mr. Powers a serious belief that he would be seriously harmed if he were to go to jail."  *Id*. ¶ 18.  The Amended Complaint further alleges that at all times during the interrogation, the Watch Commander and Sergeant Gamble of the MPD supervised the interrogation, they were aware of what went on during the interrogation, and knew that Mr. Powers had not been properly booked or entered into the arrest book.  *Id*. ¶¶ 19, 29.

The Amended Complaint alleges that during the interrogation and thereafter, Mr. Powers was "extremely concerned, nervous, worried and anxious, based on the threats of Officers Giles, Brudyn [sic] and other officers of the MPD that he would be going to jail."  *Id*. ¶ 20.

Statements reflecting this fear were allegedly made to Officers Giles and Burdyn in the presence of Sergeant Gamble and the Watch Commander. *Id.*

The Watch Commander and Sergeant Gamble "either placed or were aware that Mr. Powers had been placed in a separate jail cell, away from the general population." *Id.* ¶ 27. Plaintiff alleges that this segregation of Mr. Powers was done because, *inter alia*, Mr. Powers was gay, Defendants knew that he was gay, and the segregation was meant to "intimidate, isolate and scare" Mr. Powers and emphasize that "he would be harmed if he were to go to jail [and] be placed in general population with other inmates." *Id.* ¶¶ 27-28. Mr. Powers was placed in a jail cell away from other detainees around 2:00 a.m. and he was not permitted to make a phone call or have any other contact with anyone outside the Third District precinct after he was detained. *Id.* ¶ 32. No one checked on Mr. Powers while he was alone in his cell between 2:30 a.m. and 4:16 a.m. *Id.* ¶ 34. At around 4:16 a.m., Defendants found Mr. Powers hanging from the bars of the jail cell from a pair of tube socks tied in a knot. *Id.* ¶ 37. Mr. Powers' body was transported to the Office of the Medical Examiner and his death was recorded at 8:35 a.m. on July 15, 2004; the cause of death was identified as "suicide by hanging." *Id.* ¶¶ 38-39.

According to the Amended Complaint, excessive force was used on Mr. Powers during his arrest and detention. *Id.* ¶ 21. An autopsy was conducted on Mr. Powers and contusions and other injuries and bruises were observed. *Id.* ¶¶ 21, 39-41. Plaintiff alleges that the injuries "were sustained during the arrest and detention [of Mr. Powers] by Officers Giles and/or Brudyn [sic]." *Id.* ¶ 21. The Complaint alleges that there was no indication that Mr. Powers was combative during the arrest and confinement that ended with his suicide and "[u]nder no circumstances could the officers or other MPD officers have believed that the force used was necessary under the

circumstances." *Id*. ¶¶ 22-24, 26.

**B.     Procedural Background**

Plaintiff first filed suit in D.C. Superior Court on July 14, 2006. Defendants removed the case to this Court on September 13, 2006.

On March 28, 2007, this Court granted in part, and denied in part, the Federal Defendants' and the District Defendants' Motions to Dismiss. *See* Dkt. ## 24, 25 (hereinafter, "Mem. Op."). Initially, the Federal Defendants included Michael J. Sullivan, Chief of the USSS; Officer Michael Burdyn and Sergeant Benita Giles of the USSS-Uniformed Division; and the USSS-Uniformed Division. In its Memorandum Opinion, the Court dismissed Michael J. Sullivan and the USSS-Uniformed Division and required Plaintiff to file a more definite statement as to the constitutional claims against Officer Burdyn and Sergeant Giles ("the individual Federal Defendants"). The Court dismissed Plaintiff's unlawful search and seizure claims without prejudice. Finally, the Court dismissed the common law claims filed against the individual Federal Defendants as beyond the Court's jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); 28 U.S.C. § 2680(h).

In the same Memorandum Opinion, the Court dismissed with prejudice Plaintiff's Eighth, Fourteenth, and Fifth Amendment claims against Chief Charles H. Ramsey, Commander Larry D. McCoy, and Sergeant Regina W. Gamble ("the individual District Defendants") in their official capacities, as well as the survival and wrongful death actions in their entirety. The Court also dismissed without prejudice Plaintiff's claims based on "unlawful search and seizure" and "excessive force" against all of the District Defendants as well as the intentional infliction of emotional distress and gross negligence claims against the individual District Defendants. The Court

-4-

ordered Plaintiff to provide a more definite statement with respect to her Fifth Amendment claims against the individual District Defendants in their personal capacities. The Court denied the District's motion to dismiss the Fifth Amendment claim against the District. Finally, the Court allowed the intentional infliction of emotional distress and an ordinary negligence claim to stand against the District.

## II. LEGAL STANDARDS

On April 16, 2007, Plaintiff filed an Amended Complaint, advancing civil rights and constitutional claims, Am. Compl. ¶¶ 43-50, as well as common law claims of intentional infliction of emotional distress, *id*. ¶¶ 51-53, gross negligence, *id*. ¶¶ 54-57, and a claim against the District of Columbia for failure to train and supervise its officers, *id*. ¶¶ 58-62.

The Federal Defendants renew their motion to dismiss, arguing that Plaintiff's Complaint fails to withstand scrutiny under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the alternative, Federal Defendants assert that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. The District Defendants also move to dismiss pursuant to Rule 12(b)(6), and in the alternative, ask for summary judgment.

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no

action of the parties can confer subject[]matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor, *Macharia*, 334 F.3d at 67; *Holy Land Found. for Relief & Dev.*

*v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), and the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965. But the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

## C.     Federal Rule of Civil Procedure 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

**A.     Constitutional Claims**

1.     *Fourth Amendment Claims*

Count I of the Amended Complaint alleges that Mr. Powers' Fourth Amendment rights were violated because of "an unlawful traffic stop and illegal search" of his vehicle and property, as well as "the use of unreasonable and unnecessary force" during his detainment. *See* Am. Compl. ¶¶ 43-50.

a.     "Unlawful Search and Seizure" Claim

In its March 28, 2006 Memorandum Opinion and Order, the Court concluded that the original Complaint contained "insufficient facts . . . to state a claim for an unlawful search and seizure," Mem. Op. at 9-11, and dismissed the claim without prejudice.

Plaintiff's Amended Complaint fares no better than its predecessor for the "unlawful search and seizure" claim because it once again offers mere speculation and conclusory statements. *See Browning*, 292 F.3d at 242 (courts need not accept as true legal conclusions alleged in a complaint). According to the Amended Complaint, Officer Burdyn and Sergeant Giles observed Mr.

Powers "running a red light" and they then proceeded to follow Mr. Powers "for approximately 17 blocks." Am. Compl. ¶¶ 10, 12. A check of the Washington Area Law Enforcement System (WALES) "revealed that [Mr. Powers'] driving permit status was suspended." *Id*. ¶ 13. After he was stopped, the officers observed Mr. Powers "retrieving an object from the behind the passenger seat of his vehicle and placing it in a cigarette box. Allegedly, inside the cigarette box were 5 plastic bags containing a white powder substance that allegedly tested positive for cocaine, although lab reports confirming this have not been made available to Plaintiff[]." *Id*. ¶ 14.

Based on this narrative of events, there is simply no basis for this Court to conclude that the officers' conduct violated Mr. Powers' Fourth Amendment rights to be free from an unlawful search and seizure. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Plaintiff has "not nudged [her] claim across the line from conceivable to plausible," and therefore her "unlawful search and seizure" claim must be dismissed with prejudice. *See Twombly*, 127 S. Ct. at 1974.

       b.     <u>"Excessive Force" Claim</u>

Claims of excessive force arising from an unlawful arrest are typically based on a violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In its earlier opinion, the Court concluded that Plaintiff's excessive force claim in the original Complaint should be dismissed without prejudice because the only allegations – that Mr. Powers "had 'some bruising' that was 'consistent with' blows from police batons" and that Mr. Powers was "not combative" – "fail[ed] to state a claim for excessive force in violation of the Fourth Amendment." Mem. Op. at 10.

Plaintiff renews her "excessive force" claim in the Amended Complaint.

> Officers Giles and/or Brudyn [sic] used excessive force on Mr.
> Powers during his arrest and detention. During the autopsy,
> contusions were identified on Mr. Powers that were consistent with
> being struck repeatedly with a night stick or similar weapon. Mr.
> Powers sustained injuries on his buttocks, back of legs, abdomen,
> back, shins, and fingers. These contusions were recent bruising and
> were inflicted at or near the time that Mr. Powers was illegally
> stopped, searched, arrested and brought to the Third District. Upon
> information and belief, these bruises were sustained during the arrest
> and detention by Officers Giles and/or Brudyn [sic].

Am. Compl. ¶ 21. Plaintiff is entitled to all inferences that run in her favor from the factual

averments of her Amended Complaint. *Twombly*, 127 S. Ct. at 1965. While this claim is not much

more robust than the original – it alleges that Officer Giles and Sergeant Burdyn used excessive force

– this is sufficient, under these circumstances, to overcome a motion to dismiss and allow discovery.

2.     *Fifth Amendment Claims*

In the original Complaint, Plaintiff asserted that Defendants violated Mr. Powers'

Fifth Amendment right to due process when they showed deliberate indifference to his substantial

medical needs by failing to prevent his suicide. The Court dismissed with prejudice the Fifth

Amendment claim against the individual District Defendants in their official capacity as redundant

to the claim against the District itself. The Court further dismissed with prejudice the Fifth

Amendment claim against the Federal Defendants in their official capacity as barred by sovereign

immunity. Plaintiff was ordered to submit a more definite statement of her Fifth Amendment claim

against the individual Defendants in their personal capacities. Finally, the District's motion to

dismiss the Fifth Amendment claim was denied. Defendants now move to dismiss the Fifth

Amendment claims against the District of Columbia and the individual Defendants in their personal

capacities based on the Amended Complaint.

a.    Claim against the District of Columbia

In its Memorandum Opinion, the Court interpreted Plaintiff's allegations that the District of Columbia failed to provide "proper training" and to "instruct officers of [their] heightened duty to prevent injury and harm to detainees in their direct care and control" and to supervise officers properly as allegations of Fifth Amendment violations. *See* Mem. Op. at 11. The Court explained that a municipality like the District of Columbia is not liable for the unconstitutional conduct of its employees based on *respondeat superior* or vicarious liability; however, it can be held liable if it maintains a policy that causes a constitutional violation. *Id.* at 12 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)). In cases involving detainee suicides, the D.C. Circuit has held that a municipality cannot be held liable under § 1983 "unless the inadequate police training alleged and proved rises to the level of a 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Dorman v. District of Columbia*, 888 F.2d 159, 163 (D.C. Cir. 1989) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

The Court noted that Plaintiff did not explain how the District's training policies were deficient and she did not allege that the failure to supervise officers was systematic within the MPD. Mem. Op. at 12. However, the Court did find that, pursuant to *Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996), Plaintiff alleged enough facts to survive a motion to dismiss under Rule 12(b)(6).

> The Complaint does, however, generally recount the circumstances of Mr. Powers's suicide and makes the assertion that the District's "failure to provide proper training and supervision showed . . . deliberate indifference to the safety of civilians with whom its officers detain [sic], bring into custody[,] and to whom they owe a

> heightened duty with regard to their personal safety." Thus, drawing
> all reasonable inferences in her favor, Plaintiff alleges that the
> District's failure to train its police officers in the proper detection and
> treatment of potentially suicidal detainees amounts to deliberate
> indifference to the rights of detainees.

Mem. Op. at 12 (quoting Compl. ¶ 49).

In its Renewed Motion to Dismiss, the District of Columbia argues that the Amended

Complaint fails to state a claim upon which relief can be granted "because [Plaintiff] failed to allege

sufficient facts that the District defendants violated the decedent's constitutional rights." D.C. Defs.'

Mem. at 17.  In the absence of any other argument specific to the claim against the District – and not

the individuals – the Court once again will deny the request to dismiss the Fifth Amendment claim

against the District of Columbia.  Whether the claim against the District can survive discovery is a

question to be resolved on another day.

          b.    <u>Claim against the Individual Defendants in their Personal Capacities</u>

In order to establish that the individual Defendants were "deliberately indifferent" in

violation of the Fifth Amendment, Plaintiff must allege that they "had subjective knowledge of [Mr.

Powers'] serious medical need and recklessly disregarded the excessive risk to [his] health or safety

from that risk."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  In its initial

opinion, the Court ruled that Plaintiff's "factual averments [were] too vague and conclusory for the

Court to conduct a meaningful analysis of the individual Defendants' motions to dismiss" and

ordered Plaintiff "to file more specific factual allegations supporting her contention that the

individual Defendants knew, or should have known, that Mr. Powers was potentially suicidal when

he was placed alone in the holding cell."  *See* Mem. Op. at 18.  The Court reminded Plaintiff that

there is no vicarious liability for constitutional violations. *Id.* (citing *Bell v. City of Washington, D.C.*, No. 05-1372, 2006 WL 1933815, at *3 (D.D.C. July 10, 2006) ("A § 1983 claim can only be brought against a government official who was personally and directly involved in the wrongful acts.")).

In response to the Court's opinion, Plaintiff's Amended Complaint alleges that "[e]ach and every Defendant is also liable for their direct violations of Mr. Powers' civil and constitutional rights." *See* Am. Compl. ¶ 49. While the Amended Complaint contains more allegations, it still fails to state a claim upon which relief can be granted.

The Court looks to the two-part analysis laid out in *Farmer v. Brennan*, 511 U.S. 825 (1994), to decide whether a Fifth Amendment violation was perpetrated by the individual Defendants. Under *Farmer*, (1) the alleged deprivation must be sufficiently serious, meaning that the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," *Id.* at 834, and (2) the official must have a "sufficiently culpable state of mind," *id.* In order to state a claim and establish liability, a government official must be "deliberate[ly] indifferen[t] to a substantial risk of serious harm to [a pretrial detainee]." *Id.* at 828. There can be no governmental liability "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Each individual defendant must be alleged to have *personally* committed or participated in the unconstitutional act. *See, e.g.*, *Nowlin v. Dir., Dist. of Columbia Dep't of Corr.*, 689 F. Supp. 26, 27 (D.D.C. 1988) (prerequisite to individual liability under § 1983 is "a showing of direct responsibility for the improper action").

Here, the First Amended Complaint identifies no particular wrongdoings whatsoever by Chief Ramsey or Commander McCoy. Accordingly, the Court will order that any constitutional claims against Chief Ramsey and Commander McCoy be dismissed with prejudice. *See Bell*, 2006 WL 1933815, at * 3. The Court also concludes, upon review of the Amended Complaint and the Defendants' motions, that the Fifth Amendment claims against the remaining individual Defendants (Officer Giles, Officer Burdyn, the unnamed Watch Commander, and Sergeant Gamble) should be dismissed with prejudice because each of these Defendants is entitled to qualified immunity.

Constitutional claims against individual government officials raise the issue of qualified immunity, which should be resolved "at the earliest possible stage in litigation." *Saucier*, 533 U.S. at 200-01. The Court ordered Plaintiff to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) in order to better assess whether her allegations could withstand dismissal due to qualified immunity. *See* Mem. Op. at 17 (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 289 (3d Cir. 2006) ("[A] lack of factual specificity in the complaint . . . precludes the district court from engaging in a meaningful qualified immunity analysis. The appropriate remedy is the granting of a defense motion for a more definite statement under Federal Rule 12(e).")).

Qualified immunity shields a government official from liability under § 1983 provided that the official's conduct did not violate a clearly established constitutional right of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To determine whether qualified immunity applies, a court must make a two-fold inquiry. First, a court must determine whether a plaintiff's allegations, taken as true, show that the official's conduct violated a constitutional or statutory right. *See Saucier*, 533 U.S. at 201; *Int'l Action Ctr. v. United States*,

-14-

365 F.3d 20, 24 (D.C. Cir. 2004).   Second, if the plaintiff's allegations show a constitutional

violation, the court must then examine whether the constitutional right in question was clearly

established at the time of the alleged violation. *Saucier*, 533 U.S. at 201.

With regard to the individual Federal Defendants, Plaintiff alleges in the Amended

Complaint that Officers Giles and Burdyn "had knowledge of Mr. Powers' emotional condition and

needs and recklessly disregarded the excessive risk." Am. Compl. ¶ 46.   At best, Plaintiff's claims

against the Federal Defendants encompass a negligence claim about the manner in which Mr. Powers

was confined.   However, the D.C. Circuit, following the Supreme Court, has held that "mere

negligence by governmental actors can never constitute a fifth amendment violation." *See Comm.*

*of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 948 (D.C. Cir. 1988) (interpreting

*Davidson v. Cannon*, 474 U.S. 344, 347 (1986) and *Daniels v. Williams*, 474 U.S. 327, 334 (1986)).

Because Plaintiff fails to provide factual averments from which it could be inferred that the

individual Federal Defendants violated any of Mr. Powers' clearly established Fifth Amendment

rights, the Fifth Amendment claim against them must be dismissed. *See Barham v. Ramsey*, 434

F.3d 565, 572 (D.C. Cir. 2006) ("Qualified immunity protects government officials from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.") (internal quotations

omitted).

The Fifth Amendment claim against Sergeant Gamble and the Watch Commander

– the only remaining individual District Defendants – will also be dismissed because Plaintiff has

failed to present facts to support a constitutional violation.   The Amended Complaint alleges that

"Sergeant Gamble and the Watch Commander had knowledge of Mr. Powers' emotional condition

and needs" and that Mr. Powers' "stated fears that he could not go to jail as well as his behavior while in custody should have signaled to . . . Defendant Gamble as well as the Watch Commander that Mr. Powers could possibly harm himself." *See* Am. Compl. ¶¶ 10, 30. The Amended Complaint also alleges that Sergeant Gamble and the Watch Commander showed deliberate indifference by failing to remove Mr. Powers' socks and failing to check on him in his cell. *Id*. ¶¶ 31, 35. These allegations are insufficient to support the claim that Sergeant Gamble or the Watch Commander acted with the intent to deprive Mr. Powers with a "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834; *see also Payne v. Churchich*, 161 F.3d 1030 (7th Cir. 1988) (court found no due process violation against police officer based on pretrial detainee's suicide; evidence that the decedent had a "tattoo [that] questioned life" and that he "cursed angrily" did not raise the issue of whether the police officer had knowledge of, or even reason to suspect, a substantial risk of suicide). The Amended Complaint alleges no facts from which the Court could infer that Mr. Powers' suicide was based on, or caused by, a constitutional violation committed by Sergeant Gamble or the Watch Commander. The claim against them must be dismissed.[1]

### B.    Common Law Claims

In its earlier opinion, the Court dismissed without prejudice the common law claims

---

[1] The District of Columbia argues that it would be inconsistent to allow the Fifth Amendment claim against the District to survive while dismissing Fifth Amendment claims against the individual Defendants. *See* D.C. Defs.' Mem. at 21 n.9. The Court disagrees. Under *Monell*, a municipality can be held liable if it maintains a policy that causes a constitutional violation. 436 U.S. at 693. While the Court finds that Plaintiff has set forth no allegations that Sergeant Gamble or the Watch Commander, D.C. employees, committed a constitutional violation, that does not preclude discovery on whether a Fifth Amendment violation occurred otherwise and, necessarily, whether the District is liable.

for intentional infliction of emotional distress and gross negligence against the Federal Defendants and the individual District Defendants.  The Court denied the District's motion to dismiss these claims.  Defendants now renew their motions to dismiss based on the allegations in the Amended Complaint.

             1.    *Claims against the Federal Defendants*

The FTCA is the exclusive remedy for obtaining damages based on tortious conduct committed by a federal employee within the scope of his employment.[2]  28 U.S.C. § 1346(b); 28 U.S.C. § 2679(b)(1); *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997).  In its earlier Memorandum Opinion and Order, the Court concluded that, because Plaintiff failed to exhaust her administrative remedies before filing suit, the Court lacked jurisdiction over Plaintiff's tort claims against the Federal Defendants.  *See* Mem. Op. at 19-20.  Accordingly, Counts II-V of the initial Complaint against the Federal Defendants were dismissed without prejudice.  *Id*.

Plaintiff again attempts to advance claims against the individual Federal Defendants for the common law claims of intentional infliction of emotional distress and gross negligence in Counts II and III of the Amended Complaint, for conduct occurring within the scope of their employment.  Am. Compl. ¶¶ 51-57.  However, nothing has changed in the Amended Complaint; Plaintiff did not assert a FTCA claim, nor did she name the United States as a defendant.  Moreover, Plaintiff did not respond to this jurisdictional point in her opposition briefs.  Accordingly, Plaintiff's tort claims against the Federal Defendants are once again dismissed, without prejudice, for lack of

---

[2] The FTCA does not apply to Plaintiff's constitutional claims.  *See* Mem. Op. at 19 n.2 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims.")).

jurisdiction.  *See Simpkins*, 108 F.3d at 371-72 (dismissal for lack of jurisdiction based on a failure

to exhaust FTCA's procedural requirement should be without prejudice); LCvR 7.1(b); *Hester v.*

*District of Columbia*, 433 F. Supp. 2d 71, 78 (D.D.C. 2006) (courts may treat arguments as conceded

when they are not opposed).

>             2.        *Claims against the Individual District Defendants*

              In its earlier opinion, the Court noted that the original Complaint did not appear to

include the individual District Defendants in the claims for intentional infliction of emotional

distress and gross negligence.  *See* Mem. Op. at 21.  "But even assuming that Plaintiff meant to

include the individual District Defendants in those Counts, the Complaint still fails to allege a viable

claim against them."  *Id*.  If these claims were brought against the District Defendants in their official

capacities, such claims would be redundant to the claims against the District of Columbia and would

be subject to dismissal on that basis.  Alternatively, if the claims were against those Defendants in

their personal capacities, the Complaint failed to allege facts demonstrating that they engaged in any

wrongdoing.  As such, these counts were dismissed without prejudice as against the individual

District Defendants.

              In an abundance of caution, the District renews its motion to dismiss any common

law claims in the Amended Complaint against the individual District Defendants.  Plaintiff did not

respond to the District's argument, thereby conceding it.  *See Hester*, 433 F. Supp. 2d at 78.  Any

such claims against the individual District Defendants, whether based on their official capacities or

their personal capacities, will be dismissed with prejudice.

3.    *Claims against the District of Columbia*

The Court previously ruled that Plaintiff stated a claim for intentional infliction of emotional distress and negligence against the District. The District renews its motion to dismiss, and in the alternative, moves for summary judgment on these claims.

a.    Negligence Claim

The Court earlier found that Plaintiff did not state a claim for gross negligence, but that she did state a claim for ordinary negligence. *See* Mem. Op. at 26. The Court construed the claim for gross negligence and "direct liability to the District of Columbia for failure to train and supervise" in concert (Counts III and VI of the original Complaint) as an allegation that (1) the District has a duty to ensure the safety of persons it detains, (2) it failed to provide its officers with adequate training regarding the detection of potentially suicidal detainees, and (3) as a result, the individual Defendants failed to realize that Mr. Powers was suicidal and placed him alone in a cell where he killed himself. *Id*. "Those allegations are sufficient to state a claim for ordinary negligence."[3] *Id*. (citing *Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C. 2001) ("Generally in order to prevail on a claim of negligence, the plaintiff must establish a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff.")). The District conceded that "evidence that the police violated the general order [regarding the

_____

[3] The Court also found that preparation of an "Incident-Based Event Report," also known as a "P.D. 251," minutes after Mr. Powers' suicide, satisfied the requirements of D.C. Code § 12-309 (2004). *See* Mem. Op. at 22-25. Section 12-309 states that any person wishing to bring a personal injury action against the District of Columbia must, within six months of sustaining the injury, notify the Mayor in writing "of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is sufficient notice under this section."

monitoring of detainees] is relevant for the jury to consider in a *negligence* case."  D.C.'s Reply at

10 [Dkt. # 22].

      The District of Columbia now asks this Court to dismiss all "common law claims

against the District of Columbia" in the Amended Complaint.  *See* D.C. Defs.' Mem. at 27.  Plaintiff

has once again alleged gross negligence (*see* Am. Compl ¶¶ 54-57), but provides no new allegations

to bolster her claim.  However, as was the case before, when read in concert, the Court finds that

Plaintiff has sufficiently laid out an allegation of *ordinary* negligence through Count III (Gross

Negligence) and Count IV (Direct Liability to the District of Columbia for Failure to Train and

Supervise).  The District does not specifically argue otherwise.  The Court will allow a claim of

ordinary negligence against the District to stand.[4]

### b.   Intentional Infliction of Emotional Distress Claim

      With regard to intentional infliction of emotional distress, the Court found that

Plaintiff adequately stated a claim against the District of Columbia in its initial Memorandum

Opinion and Order, based on Officer Burdyn and Sergeant Giles acting as "servants, agents and

---

    [4] The Court will dismiss Plaintiff's alternative theory for a negligence claim (or intentional infliction of emotional distress claim).  *See* Pl.'s Opp'n to District Defs.' Mot. to Dismiss at 20 ("Arguably, [] there are in essence two negligence claims: one that Plaintiff brings on behalf of the decedent in her capacity as the personal representative, and one in her own right."); *see also* Am. Compl. ¶ 57 (in the gross negligence claim, Ms. Powers-Bunce alleges that no one from the MPD notified her of her son's death and that she learned this information approximately two weeks later).  Ms. Powers-Bunce has not alleged that she was within the requisite "zone of danger" for a recovery.  *See Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990) ("if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence.").

employees" of the District.  *See* Mem. Op. at 27 (citing *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362,

373 (D.C. 2003) ("[E]lements of [a *prima facie* case of intentional infliction of emotional distress]

are: (1) 'extreme or outrageous conduct' which (2) 'intentionally or recklessly' causes (3) 'severe

emotional distress to another.'")).

      The District of Columbia now moves for summary judgment on the issue of agency

and, relatedly, intentional infliction of emotional distress.  In support of its contention, the District

attaches a declaration that USSS officers Giles and Burdyn were not acting as agents of the District

of Columbia and/or the Metropolitan Police Department during the relevant time periods in the

Amended Complaint.  The Court will grant the District's motion for summary judgment on the

agency issue and will dismiss the intentional infliction of emotional distress claim accordingly.

      The District of Columbia may only be sued for the torts of police officers acting as

agents if there exists a *respondeat superior* relationship between the officers and the District.  *See*

*Bostic*, 906 A.2d at 332; *Wade v. District of Columbia*, 310 A.2d 857, 863 (D.C. 1973).  In order to

establish this relationship, a plaintiff must show that a "master-servant relationship existed between

[the alleged tortfeasor] and the District, and that the incident at issue occurred while [the tortfeasor]

was acting within the scope of his employment."  *Bostic*, 906 A.2d at 332 (citing *Moorehead v.*

*District of Columbia*, 747 A.2d 138, 142 (D.C. 2000); *Giles v. Shell Oil Corp.*, 487 A.2d 610, 611

(D.C. 1985)).  "This master-servant relationship is established by evaluating the following factors:

'(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to

discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the

regular business of the employer.'"  *Bostic*, 906 A.2d at 332 (quoting *Moorehead*, 747 A.2d at 143).

Based on the following evaluation of these factors, the Court concludes that the USSS officers were not acting as agents for the District of Columbia.

First, unlike the MPD, the USSS-Uniformed Division is a permanent police force established by Congress, formerly under the United States Department of Treasury, and now under the direction of the Secretary of Homeland Security. *See* U.S.C. § 3056(g) ("The [USSS] shall be maintained as a distinct entity within the Department of Homeland Security and shall not be merged with any other Department function."); *see also* 18 U.S.C. § 3056A. Personnel in the USSS report to the Director of the USSS, who reports directly to the Secretary of Homeland Security. 18 U.S.C. § 3056(g). USSS officers have authority to make arrests as authorized by Congress, and Congress has granted them "privileges and powers similar to those of the members of the [MPD]," 18 U.S.C. § 3056A(b)(2), but that power is carried out under the Direction of the Secretary of Homeland Security, not the District of Columbia.

Second, Officer Giles and Sergeant Burdyn did not become agents or instrumentalities simply by making arrests in the District. *See United States v. Lima*, 424 A.2d 113, 119 (D.C. 1980) (en banc) ("The fact that a private person makes a citizen's arrest does not automatically transform that individual into an agent of the state.").

Third, the District of Columbia has no cooperative agreement with the USSS that might arguably render Officer Giles and Sergeant Burdyn agents of the District. *See Bostic*, 906 A.2d at 330-31 (finding that the District was not liable for Capitol Police Officer's tort because, *inter alia*, no cooperative agreement existed under D.C. Code § 5-113.17 between MPD and Capitol Police). Under D.C. Code § 5-133.17 (2001), the MPD is authorized to enter into cooperative

agreements with federal law enforcement agencies, including the USSS. *See* § 5-133.17(d)(21) & (22). The Federal Defendants attest that there is no such agreement between the MPD and the USSS that could form the basis for liability here. *See* Fed. Defs.' Mem. at 13.

Fourth, the Federal Defendants attest that the District of Columbia does not authorize the USSS to make arrests in the District and does not hire, train, supervise, or otherwise control USSS personnel. *See* D.C. Defs.' Mem., Decl. of Assistant Chief Shannon Cockett ¶¶ 3-4. Nor are the USSS personnel paid by the MPD or the District. *Id.* ¶ 5.

Summary judgment is appropriate here because the USSS officers are not District employees, and there is no master-servant or other agency relationship between the District and the USSS or its officers on which to base the District's liability. The Court recognizes that in many cases, summary judgment may be premature before discovery is conducted. *See, e.g.*, *Juergens v. Urban Title Servs.*, No. 06-1524, 2008 U.S. Dist. LEXIS 7618, at *48 (D.D.C. Feb. 4, 2008). The Court also recognizes that the Amended Complaint should be reviewed in the light most favorable to the Plaintiff. *See Anderson*, 477 U.S. at 255. However, the Court "may take judicial notice of laws, statutes, and other matters of public record," and chooses to do so here. *See Bostic*, 906 A.2d at 331-32 (noting that "[s]uch a rule is self-evident under our system of jurisprudence. Indeed, to require a litigant . . . to prove statutes enacted by Congress for the District of Columbia would be absurd."). In sum, because "it is the United States, not the District of Columbia, that is responsible for their selection, engagement, payment, control, and discharge, . . . the District of Columbia does not have any of the control over the activities" of the USSS or its officers "necessary to establish a *respondeat superior* relationship pursuant to which it might be liable for their actions." *Id.* at 332.

-23-

Plaintiff's claim of intentional infliction of emotional distress against the District based on the actions of Officer Giles and Sergeant Burdyn will be dismissed and the District's motion for summary judgment on the issue of agency will be granted.

## C.    Plaintiff's Motion for Discovery

Plaintiff argues that Defendants' dispositive motions are premature since she has not been able to examine certain evidence. *See* Pl.'s Opp'n to Fed. Defs.' Mem. at 11-12, 29. She provides a list of items that she would like to obtain through discovery, including video recordings of Third District precinct cells, depositions of officers and the Station Clerk, radio communications, homicide investigation statements, and cross-examination of Federal Defendants' expert.

A court has broad discretion to deny or limit discovery in order to protect a party from undue burden or expense, and to promote efficient resolution of a case. *See* Fed. R. Civ. P. 26(c); *Brennan v. Local Union No. 639*, 494 F.2d 1092, 1100 (D.C. Cir. 1974). It is not unusual to deny discovery requests when additional facts are not necessary to resolve a dispositive motion. *See Moore v. United States*, 213 F.3d 705, 710 n.3 (D.C. Cir. 2000). The instant motions can be resolved without discovery; therefore, Plaintiff's Motion for Discovery [Dkt. # 41] will be denied as moot. This, of course, does not preclude Plaintiff from pursuing discovery on the remaining claims going forward.

## IV.  CONCLUSION

In sum, Count I of the Amended Complaint (violation of civil rights) will be dismissed in part; Count II (intentional infliction of emotional distress) will be dismissed entirely; Count III (gross negligence) will be dismissed in part; and Count IV (direct liability to the District

of Columbia for failure to train and supervise) will not be dismissed.   Plaintiff's Motion for

Discovery [Dkt. # 41] and Federal Defendants' Motion for Leave to File Supplemental

Memorandum in Support of their Renewed Motion to Dismiss [Dkt. # 36] will be denied as moot.

The individual District Defendants will be dismissed from this case.   A memorializing order

accompanies this Memorandum Opinion.


Date: March 27, 2008                                      _____/s/_____

                                                          ROSEMARY M. COLLYER
                                                          United States District Judge