## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| PATRICIA A. POWERS-BUNCE, Individually, | * | |
| And as Personal Representative of the | * | |
| ESTATE OF TERENCE ANTHONY POWERS | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Case No. 06-1586 (RMC) |
| | * | |
| THE DISTRICT OF COLUMBIA, *et al.* | * | |
| | * | |
| Defendants. | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, OTHER
## CAUSES OF ACTION AND DAMAGES

Plaintiffs, Patricia A. Powers-Bunce, individually and as the Personal

Representative of the Estate of Terence Anthony Powers, by and through counsel,

M. Celeste Bruce, Esq., Ellen B. Flynn, Esq. and Rifkin, Livingston, Levitan &

Silver, LLC file the Second Amended Complaint pursuant to the Order of this

Honorable Court dated April 22, 2008 for the sole purpose of adding the Federal

Tort Claims Act Counts against the Federal Defendants. Plaintiffs Second

Amended Complaint relates back to the date of the original Complaint. In support

thereof, Plaintiffs state:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Subject matter jurisdiction is founded upon District of Columbia Code

§ 11-921. Personal jurisdiction is founded upon District of Columbia Code § 13-423.

2.     Jurisdiction in this Court over Plaintiffs' claims alleged under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* is proper as the United States Secret Service has failed to make final disposition of the Plaintiffs' claim within six months after proper notice was given on July 13, 2006 to Mark J. Sullivan, Director United States Secret Service and Kathy Sease, Paralegal Specialist, Chief Council's Office, United States Secret Service.

3.     The decedent, Terence Anthony Powers was a resident of the District of Columbia.  Mr. Powers was Caucasian and gay.  The Personal Representative of the Estate, Plaintiff Patricia A. Powers-Bunce is a resident of the State of Maryland.

4.     The individual Defendants are citizens of the United States residing in and/or engaging in a habitual vocation in the District of Columbia.

5.     Defendant, the District of Columbia, is a municipal corporation licensed to and doing business in the District of Columbia.

6.     The Washington Metropolitan Police Department ("MPD") is an agency of the District of Columbia.

7.     Defendants Ramsey, McCoy, Watch Commander and Gamble, at all times relevant hereto, were police officers employed by the MPD.

8.     At all times relevant hereto, Officers Brudyn and Giles were employees of the United States Secret Service including at the time of Mr. Powers' arrest and death.

9.     Officers Giles and Brudyn were agents of the District of Columbia.

10.    Defendants Ramsey, McCoy, Watch Commander, Gamble, as well as Officers Brudyn and Giles, at all times relevant hereto, were acting under the color of state law and within the scope of their employment.

11.    On July 15, 2004, the decedent, Terence Anthony Powers was unlawfully arrested and/or picked up and transported by Officers Brudyn and Giles after they had unlawfully stopped Terence Powers for allegedly running a red light at the intersection of Massachusetts Avenue and Dupont Circle, Northwest Washington, D.C.

12.    The actual time of the traffic stop and subsequent arrest is undocumented as there is no traffic violation citation written on the traffic charge. The failure to document the traffic stop is in violation of Metropolitan Police Department policies and procedures.

13.    It is clear from the reports that Mr. Powers was followed by Officers Brudyn and Giles for approximately seventeen (17) city blocks between the location of the alleged traffic violation and the stop.

14.    A Washington Area Law Enforcement System check revealed that his driving permit status was suspended.

15.    Pursuant to uncorroborated information gleaned from the report provided by law enforcement personnel at the time of his death, Mr. Powers was observed retrieving an object from behind the passenger seat of his vehicle and placing it in a cigarette box. Allegedly, inside the cigarette box were five (5) plastic

bags containing a white powder substance that allegedly tested positive for cocaine, although lab reports confirming this have not been made available to Plaintiffs.

16.    Mr. Powers was placed under arrest for possession with intent to distribute and for not having a valid drivers permit by Officers Brudyn and Giles, acting under color of law as police officers and as the servants, agents and employees of Defendant, District of Columbia

17.    At or around 0130 hours on July 15, 2004, Mr. Powers was taken to the 3rd District of the Metropolitan Police Department, located at 16th and U Streets, NW, Washington D.C.

18.    While in the care and custody of the MPD, Mr. Powers was interrogated by Officers Giles, Brudyn and other MPD officers, without being apprised of his constitutional rights, without being booked and without being processed.   The interrogation of Mr. Powers did not conform to the general orders, policies and procedures of the MPD.

19.    During the interrogation and at other various times, Officers Giles, Brudyn and other officers of the MPD questioned Mr. Powers in an emotionally abusive manner, including leading Mr. Powers to believe that he was going to jail for the alleged drug possession and questioning him in such a way so as to cause Mr. Powers a serious belief that he would be seriously harmed if he were to go to jail.

20.    At all times during the interrogation, the Watch Commander and Sgt. R. W. Gamble of the MPD supervised and were aware of the interrogation of Mr.

Powers; were aware of the threats made to Mr. Powers; and were aware of the conduct of the interrogation, including the statements made by both the officers and Mr. Powers.

21.     During the interrogation and thereafter, Mr. Powers became extremely concerned, nervous, worried and anxious, based on the threats of Officers Giles, Brudyn and other officers of the MPD that he would be going to jail. Mr. Powers asked repeatedly if he were going to jail and stated on numerous occasions that he could not go to jail. These statements were made to Officers Giles and Brudyn, and Sgt. Gamble and the Watch Commander either heard or were made aware of Mr. Powers' statements, concerns, and generally nervous and anxious state of mind.

22.     Officers Giles and/or Brudyn used excessive force on Mr. Powers during his arrest and detention. During the autopsy, contusions were identified on Mr. Powers that were consistent with being struck repeatedly with a night stick or similar weapon. Mr. Powers sustained injuries on his buttocks, back of legs, abdomen, back, shins, and fingers. These contusions were recent bruising and were inflicted at or near the time that Mr. Powers was illegally stopped, searched, arrested and brought to the Third District. Upon information and belief, these bruises were sustained during the arrest and detention by Officers Giles and/or Brudyn.

23.     Mr. Powers was not combative nor did he require force to be subdued.

24.     Mr. Powers did not, at any time relevant hereto, attempt to flee the scene; allegedly consented to a search of his vehicle; did not attempt to resist arrest; and did not, in any way, attempt to escape from the officers.

25.     Mr. Powers did not threaten nor assault Officers Giles and/or Brudyn nor any member of the MPD; nor was there any basis to believe that they were being threatened.  Yet the officers used force on Mr. Powers that was unnecessary, unreasonable, excessive and that violated Mr. Powers' constitutionally protected rights.

26.     The use of excessive force caused Mr. Powers serious injury in the form of contusions on his body, including his buttock, back of legs and shins as well as serious emotional harm including fear of being injured while in custody.

27.     Under no circumstances could the officers or other MPD officers have believed that the force used was necessary under the circumstances.

28.     Defendants Watch Commander and Sgt. Gamble, either placed or were aware that Mr. Powers had been placed in a separate jail cell, away from the general population.  Mr. Powers was allegedly segregated, among other reasons, because he was gay.  Based on information and belief, the placement of Mr. Powers in a separate isolated cell was meant to emphasize the statements that he would be harmed if he were to go to jail if he were to be placed in general population with other inmates since he was gay, and designed to intimidate, isolate and scare Mr. Powers.

29.     At all times relevant hereto, Defendants and Officers Giles and Brudyn knew that Mr. Powers was gay or had a reasonable belief that he was gay.

30.     At all times relevant hereto, Offices Giles and Brudyn, as well as Sgt. Gamble and the Watch Commander knew that Mr. Powers had not been properly booked or entered into the arrest book, yet was being held, improperly and in violation of his civil rights in a jail cell.

31.     Clearly and observably, Mr. Powers had been traumatized by the arrest, the interrogation, and the assault on him while in custody.  Mr. Powers' stated fears that he could not go to jail as well as his behavior while in custody should have signaled to Officers Giles and Brudyn, Defendant Gamble as well as the Watch Commander that Mr. Powers could possibly harm himself.   Defendants recklessly disregarded the risks to Mr. Powers' health and/or safety.

32.     Sgt. Gamble, the Watch Commander and other officers of the MPD failed to ensure Mr. Powers' safety; were deliberately indifferent to his health and/or safety; and violated his constitutional rights by failing to remove clothing articles that Mr. Powers used to commit suicide, i.e., his socks.

33.     At or around 0200 hours Mr. Powers was placed in a jail cell, isolating him from the general detainees.  The view into the jail cell was partially blocked from view.  Mr. Powers was not permitted to make a phone call or make any other contact with anyone from outside the Third District after he was detained.

34.     According to the Police Report, but unsubstantiated, at or around 0230 hours, police officers allegedly checked on Mr. Powers in his jail cell.

35.     Defendants did not check on Mr. Powers while he was alone in his jail cell between 0230 and 0416.  The failure or refusal to check on or otherwise observe Mr. Powers during this almost 2 hour period was in direct violation of the general orders, policies and procedures of the MPD.

36.     Defendants, including the Watch Commander and Sgt. Gamble, and Officers Giles and Brudyn knew that they had not removed items that could be used to cause harm to Mr. Powers, and that Mr. Powers could be in danger of inflicting self-harm yet failed to check on Mr. Powers in his jail cell for almost a 2 hour period.  The failures to check on Mr. Powers and remove items that could be used to cause him harm created a known substantial risk that serious harm would occur, in the form of his suicide.

37.     Officers Giles and Brudyn, Defendant Gamble and Watch Commander were aware that there were certain sensitivities related to Mr. Powers, including his highly emotional state, his stated fear that he could not go to jail, and that he was capable of hurting himself with items that they failed to remove from his possession.

38.     At or around 0416 hours, no one having checked on Mr. Powers during this intervening time span in violation of the general orders even though he was alone and away from the general population of detainees, Defendants found Mr. Powers hanging from the bars of the jail cell from his tube socks tied in a knot.  It was reported that there was no sign of life from Mr. Powers.

39.     Medics were summoned and confirmed that there was no sign consistent with life.  Mr. Powers' body then was transported to the Office of the Medical Examiner.  His time of death is recorded as 8:35 a.m. on July 15, 2004.

40.     Dr. Constance Diangelo, Medical Examiner, ruled the cause of death as suicide by hanging.  Dr. Diangelo found abraded and muscle hemorrhage to the neck with compression and dry tissue of the neck.  The laryngeal structure was found to be undamaged and intact.

41.     Dr. Diangelo also documented contusions to the lateral chest, back, thighs and shins of Mr. Powers' body.  There was no indication or evidence in the police reports that Mr. Powers had been combative at any time.

42.     An independent medical examiner found that some of the bruising to Mr. Powers' back, buttocks and legs was consistent with inflicted blows and excessive force used upon him by police officer night sticks.

43.     At the time of his death, and all times relevant hereto, Mr. Powers was under the custody, care, control and regulations of the MDP, its agents and/or employees.

## Count I: Violations of Civil Rights

44.     This Count adopts and incorporates by reference herein as if set forth in full, paragraphs 1-43.

45.     Following the unlawful traffic stop and illegal search of Mr. Powers vehicle and property, without which Mr. Powers would have been eligible for citation release and alive today, Defendants unlawfully isolated Mr. Powers;

intentionally failed to monitor him; violations of MPD general orders, policies and procedures; and showed deliberate indifference for his safety and well being, thus, violating his constitutional rights under the 4th (unlawful search and seizure and excessive force) and 5th Amendments of the U.S. Constitution.

46.     The aforesaid intentional violations of Mr. Powers' rights by the use of unnecessary and unreasonable segregation techniques and the use of unreasonable and unnecessary force were the proximate cause of Mr. Powers' death and caused him to endure great conscious pain and suffering.

47.     Officers Giles and Brudyn, as well as Sgt. Gamble and the Watch Commander had knowledge of Mr. Powers' emotional condition and needs and recklessly disregarded the excessive risk, in this case suicide, to Mr. Powers' health and/or safety.

48.     There is no videotape of Mr. Powers' confinement while at the 3rd District in violation of the MPD general orders, policies and procedures.

49.  At all material times the individual Defendants were acting as police officers on behalf of and subject to the direction of the District of Columbia.

50.     The District of Columbia is liable for any violations of Mr. Powers' civil and/or constitutional rights.  Each and every named individual Defendant is also liable for their direct violations of Mr. Powers' civil and constitutional rights.

51.     The violation of Mr. Powers' civil and constitution rights led directly to the death of Mr. Powers and to the injuries and damages suffered by Mr. Powers and his survivors.

## Count II: Intentional Infliction of Emotional Distress

52.    This Count adopts and incorporates by reference herein as if set forth in full, paragraphs 1-51.

53.    At all material times, Officer Brudyn and Officer Giles individually and as servants, agents and employees of the Defendants, District of Columbia intentionally inflicted upon Mr. Powers emotional distress by using unreasonable and unnecessary force; by deliberately isolating him and thereafter, failing to observe and monitor him.

54.    As a result of the aforesaid intentional infliction of emotional distress the decedent suffered anxiety and mental anguish to the degree that he committed suicide.

## Count III: Gross Negligence

55.    This Count adopts and incorporates by reference herein as if set forth in full, paragraphs 1-54.

56.    At all material times, the actions of Officer Brudyn and Office Giles individually and as servants, agents and employees of the Defendant, District of Columbia, constituted gross negligence in that their conduct exhibited a wanton and reckless disregard for the rights of the decedent.

57.    As a result of Defendants wanton act of deliberately isolating the decedent and thereafter, failing to observe and monitor him, Mr. Powers committed suicide without another human being seeing him, hearing him or coming to his aid.

58.     Moreover, no one from the Metropolitan Police Department notified the family of Mr. Powers' death on July 15, 2004.  Instead, on or about, July 27th 2004, Mrs. Powers-Bunce received a voice mail asking that she retrieve her car from the impound lot.  On July 28th, 2004, Mrs. Powers-Bunce went to retrieve her car and was then directed to the Medical Examiners Office where she learned her son had died while in police custody.

## Count IV:  Direct Liability to the District of Columbia for Failure to Train and Supervise

59.     This Count adopts and incorporates by reference herein as if set forth in full, paragraphs 1-58.

60.     The District of Columbia failed and/or refused to provide proper training and supervision to its officers before the incident with Terence Anthony Powers.

61.     The city's failure to provide proper training and supervision showed gross negligence and/or deliberate indifference to the safety of civilians with whom its officers detain, bring into custody and to whom they owe a heightened duty with regard to their personal safety.

62.     The police department failed to effectively instruct officers of this heightened duty to prevent injury and harm to detainees in their direct care and control.

63.     The city's failure to properly train and supervise its officers demonstrates a gross disregard for constitutional rights and was directly related to

the death of Terence Anthony Powers and to the injuries and damages suffered by his survivors.

WHEREFORE, Plaintiffs, Patricia A. Powers-Bunce and the Estate of Terence Anthony Powers, by and through its Personal Representative, Patricia A. Powers-Bunce, hereby demand judgment as to all Counts set forth herein for compensatory damages in the amount of $10,000,000.00 and punitive damages in the amount of $10,000,000.00 against all Defendants, jointly and severally, plus pre-judgment and post-judgment interest and costs, and any other relief that the Court deems appropriate.

Respectfully submitted,

RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC

/S/

_____

M. Celeste Bruce, Esq.
D.C. Bar Number 438343

6305 Ivy Lane, Suite 500
Greenbelt, Maryland  20770

301/345-7700 phone
301/345-1294 facsimile

## **JURY TRIAL DEMAND**

Plaintiffs demands Trial by jury.

/S/

_____
M. Celeste Bruce, Esq.
D.C. Bar Number 438343

Date:  April 29, 2008