UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PATRICIA A. POWERS-BUNCE,       )<br>                                                        )<br>          Plaintiff,                              )<br>                                                        )<br>     v.                                              )<br>                                                        )<br>DISTRICT OF COLUMBIA, *et al.*,   )<br>                                                        )<br>          Defendants.                         )<br>                                                        ) | Civil Action No. 06-1586 (RMC) |

**MEMORANDUM OPINION**

Terence Anthony Powers hanged himself in a holding cell at the Third District precinct of the District of Columbia Metropolitan Police Department ("MPD") shortly after he was arrested by the United States Secret Service. Mr. Powers' mother, Patricia Powers-Bunce sued the District of Columbia and several individual MPD and Secret Service officers, for herself and as personal representative of Mr. Powers' estate, seeking to hold them legally accountable for her son's suicide. D.C. is the sole remaining Defendant. Pending before the Court is D.C.'s motion for judgment on the pleadings, or in the alternative, for summary judgment [Dkt. # 89]. For the reasons explained herein, the Court will grant D.C.'s alternative motion for summary judgment on Plaintiff's federal law claim (Count I), and will decline to exercise supplemental jurisdiction over the remaining local law claims (Counts II-IV). Plaintiff's local law claims will be dismissed without prejudice.

**I.  FACTS**

At approximately 12:40 a.m. on July 15, 2004, Secret Service Officer Michael Burdyn observed a vehicle run a red light at the intersection of Massachusetts Avenue and Dupont Circle in Northwest Washington, D.C. He stopped the vehicle. The vehicle was driven by Mr.

Powers.[1] After Officer Burdyn found five small plastic packets of what appeared to be cocaine in a cigarette box, Mr. Powers was removed from the vehicle and told to sit on the sidewalk against a stone wall. Mr. Powers "kept getting up and down and trying to walk around." Pl.'s Opp'n to Mot. for Summ. J. [Dkt. # 91] ("Pl.'s Opp'n"), Ex. 2 (Burdyn Dep.) at 64. Mr. Powers appeared "nervous and jittery at the scene." *Id.* When the tests confirmed that the substance in the packets was cocaine, Officer Burdyn arrested Mr. Powers for possession with intent to distribute cocaine and transported Mr. Powers to the MPD's Third District precinct for processing.

Upon arrival at the Third District precinct cellblock, Officer Burdyn searched Mr. Powers' person and recovered another small plastic packet of cocaine from Mr. Powers' front jeans pocket. Unlike the other packets, this packet was only half full. At that point, Officer Burdyn suspected that Mr. Powers might have been under the influence of cocaine. *Id.* at 68. This suspicion was based on the half-full packet of cocaine recovered from Mr. Powers' person and Mr. Powers' "nervous attitude, jittery attitude." *Id.* at 68-69. After completing his search of Mr. Powers, Officer Burdyn transferred custody of Mr. Powers to MPD Officers Rhonda Winters, the cellblock technician, and Cheryl McClaine, the station clerk. Neither Officer Winters nor Officer McClaine witnessed Officer Burdyn search Mr. Powers. Pl.'s Opp'n, Ex. 6 (Winters Dep.) at 59; *id.*, Ex. 8 (McClaine Dep.) at 71. Nor had either MPD officer been trained to identify persons under the influence of narcotics. Winters Dep. at 65; McClaine Dep. at 18. At no time did Officer Burdyn inform Officer Winters or Officer McClaine of his observations of Mr. Powers' behavior. Def.'s Statement of Material Facts ¶ 12; Pl's Resp. to Def's Statement of Material Facts ¶ 12.

---

[1] There was a passenger in the vehicle with Mr. Powers. The passenger was not arrested.

Mr. Powers was placed in cellblock 6 at approximately 2:00 a.m.[2]  Officer Burdyn read Mr. Powers his *Miranda*[3] rights at approximately 2:10 a.m.  Officer Burdyn returned to cellblock 6 at approximately 2:30 a.m. to obtain general information from Mr. Powers.  Despite MPD General Orders and Standard Operating Procedures requiring cellblock officers to visit all persons detained in the cellblock at half hour intervals and to record the visits in a logbook,[4] no one checked on Mr. Powers between approximately 2:30 a.m. and 4:15 a.m.  In addition, no logbook was maintained and the video surveillance system was not recording.  At approximately 4:15 a.m., Officer Burdyn returned to have Mr. Powers sign two notices of infraction.  He found Mr. Powers "sitting on the floor up against the bars facing the wall away from the hallway . . . ."  Burdyn Dep. at 105.  Mr. Powers had hanged himself with his tube socks.  Officer Burdyn gave Mr. Powers "a nudge to see if he was responsive or conscious" but received "[n]o response."  Burdyn Dep. at 105.  Officer Burdyn alerted Officer Winters.

When Officer Winters arrived, Officer Burdyn "tried to untie the socks, but they just, they came right off.  They sort of unraveled."  *Id.*  Officer Winters then felt Mr. Powers' neck, behind his ear, searching for a pulse but she did not feel one.  Winters Dep. at 98-99.  At that point, Officer Winters alerted Sergeant Regina Gamble, who summoned emergency medical personnel.  No officer attempted to resuscitate Mr. Powers.  The medical examiner determined that Mr. Powers died by hanging.

---

[2]  There were no other detainees in cellblock 6.

[3]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]  Officer Winters testified that prior to this incident she was never instructed or reprimanded for failing to perform or document the required visits.  Winters Dep. at 72.

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248.  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Id.*; *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary

judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

In Count I of her Second Amended Complaint Plaintiff seeks to hold D.C. liable for Mr. Powers' suicide, alleging violations of his "civil rights." 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.[5] "In order to hold a municipality liable for civil rights violations of its employees under 42 U.S.C. § 1983, the municipality must have acted in accordance with a 'government policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy.'" *Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). It is a plaintiff's "burden to establish that a municipality has a custom or practice abridging her constitutional or statutory rights." *B.R. v. District of Columbia*, 524 F. Supp. 2d 35, 40 (D.D.C. 2007) (citing *Monell*, 436 U.S. at 694);

---

[5] D.C. is considered a "person" for purposes of § 1983. *See, e.g.*, *Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990).

*see also Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) ("To impose liability on the District under 42 U.S.C. § 1983, [plaintiff] must show not only a violation of his rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation.") (internal quotation marks and citation omitted). "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985). "*Respondeat superior* or vicarious liability will not attach under § 1983, and therefore, a municipality cannot be held liable solely because it employs a tortfeasor." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 141 (D.D.C. 2007) (internal quotation marks and citations omitted).

Plaintiff alleges that D.C. violated the Due Process Clause of the Fifth Amendment.[6] "[C]ourts have held that pretrial detainees" such as Mr. Powers have a "due-process right under the Fifth and Fourteenth Amendments to be free from prison officials' 'deliberate indifference' to their substantial medical needs." *Powers-Bunce*, 479 F. Supp. 2d at 153 (citing *O.K. v. Bush*, 344 F. Supp. 2d 44, 61 n.23 (D.D.C. 2004)). "Courts have consistently held that this right belonging to pretrial detainees is 'at least as great as' the analogous Eighth Amendment right and, therefore, generally treat the two claims as analytically identical." *Id.* (citing *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992)); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment

---

[6] "Individuals suing the District for constitutional due process violations must do so under the Fifth Amendment, and not the Fourteenth, as the District — which is not a state — is subject to the Due Process Clause of the Fifth Amendment." *Estate of Gaither v. District of Columbia*, Civil Action No. 03-1458, 2009 WL 2916430, at *13 n.10 (D.D.C. Sept. 8, 2009); *see also Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007) ("the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia").

protections available to a convicted prisoner"). "Because a pretrial detainee's rights under the Fifth Amendment are at least as great as those under the Eighth Amendment, applying the Eighth Amendment 'deliberate indifference' standard to measure whether" Plaintiff has shown a violation of Mr. Powers' "clearly established Fifth Amendment rights is appropriate." *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 189 (D.D.C. 2009).

In order to survive summary judgment, Plaintiff must show (1) "a predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). "Under the first prong," Plaintiff must show "a predicate claim of deliberate indifference by prison officials . . . ." *Id.* "To show deliberate indifference," Plaintiff must establish "that officials had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." *Id.* "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" prohibited by the Eighth Amendment. *Id.* at 838.

Establishing a predicate claim of deliberate indifference by prison officials where the harm at issue is a prison suicide "requires a dual showing that the defendant: (1) subjectively knew the prisoner was at a substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). "With respect to the first showing, it

is not enough that there was a danger of which a prison official *should have been* aware, rather, the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotation marks and citation omitted) (emphasis in original). "In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Id.* "Liability cannot attach where the defendants simply were not alerted to the likelihood that the prisoner was a genuine suicide risk." *Id.* (quotation marks, alterations and citation omitted).

Judged against this standard, it is clear that Plaintiff has failed to show a predicate constitutional violation with respect to D.C.'s failure to prevent Mr. Powers from hanging himself. The record is bereft of any evidence that either MPD Officer Winters or MPD Officer McClaine had subjective knowledge of Mr. Powers' suicidal tendencies. Drawing all justifiable inferences in Plaintiff's favor, at most the facts adduced by Plaintiff establish that Secret Service Officer Burdyn should have known that Mr. Powers was a suicide risk, given his suspicion that Mr. Powers was under the influence of cocaine and his observation of Mr. Powers' jittery behavior. But even that inference is a giant leap. Plaintiff has proffered no evidence that cocaine-users are a greater suicide risk or that jittery behavior is a warning sign of impending suicide. In any event, there is no evidence that Officer Burdyn communicated either his suspicion of Mr. Powers' cocaine use or his observation of Mr. Powers' jittery behavior to either Officer Winters or Officer McClaine. Nor is there evidence that either Officer Winters or Officer McClaine was aware that Mr. Powers might have been under the influence of cocaine. Each testified to not having witnessed Officer Burdyn's search of Mr. Powers. Finally, even assuming that Officer Winters and/or Officer McClaine should have been aware of Mr. Powers' cocaine use, there is no evidence that either officer actually drew

the inference that Mr. Powers was a suicide risk. Therefore, Plaintiff's § 1983 claim against D.C. for failing to prevent Mr. Powers' hanging cannot survive summary judgment. *See id.* (affirming summary judgment for defendants because "the record is devoid of any evidence from which it could be inferred that they were alerted to the likelihood that Collins was at substantial risk for committing suicide").

Plaintiff also seeks to hold D.C. liable under § 1983 for failing to attempt to revive Mr. Powers after he was discovered unconscious in the holding cell. She relies on *Bradich v. City of Chicago*, 413 F.3d 688 (7th Cir. 2005), but that case is distinguishable. There, the Seventh Circuit reversed the district court's grant of summary judgment in favor of the individual "lockup keepers" because there were genuine issues of material fact about whether the lockup keepers were deliberately indifferent in their response to discovering a hanging prisoner. *See* 415 F.3d at 690-92. The court affirmed the district court's grant of summary judgment in favor of the City of Chicago, finding that the plaintiff's argument "that Chicago did not ensure that all of its employees followed all of its policies all of the time" to be "incompatible with *Monell*." *Id.* at 690. The court explained:

> The Estate does not argue that the City *systematically* fails to enforce its written policies and instead maintains informal policies that violate the Constitution. The record does not contain data implying that the suicide rate in Chicago's lockups is abnormally high. The Estate concentrates on the facts of this case, and the employment history of the lockup keepers on duty, rather than anything from which an informal policy of general applicability could be inferred. That one lockup keeper was not retrained according to the City's policies is a shortcoming in the enforcement of sound policies, not an independent violation of the Constitution.

*Id.* (emphasis in original).

So too here. Plaintiff's argument that "the General Orders of the MPD requir[e] that

the officer attempt to restore consciousness" proves the point that no D.C. custom or policy caused the failure to revive Mr. Powers. Pl.'s Opp'n at 40. Indeed, Plaintiff concedes that Officers Winters and McClaine "fail[ed] to follow the Metropolitan Police Department's General Orders and Policies and Procedures which were designed to protect persons in custody of the MPD from the risk of suicide, among other risks." *Id.* at 42. *Monell* established that "municipalities are not vicariously liable under 42 U.S.C. § 1983 for their employees' errors" and "are liable only for their own policies." *Bradich*, 413 F.3d at 690. Therefore, Plaintiff's § 1983 claim against D.C. for failing to attempt to revive Mr. Powers cannot survive summary judgment. *See id.*

Plaintiff argues that "liability may be imposed on a municipality upon a showing of deliberate indifference exhibited by a pattern of inadequate training, supervision and discipline of police officers." Pl.'s Opp'n at 46 (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)). While true, Plaintiff overlooks that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality — a 'policy' as defined by our prior cases — can a city be liable for such failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). At most, the facts adduced here show that Officers Winters and McClaine were inadequately trained and supervised. That falls far short of showing that "such inadequate training . . . represent[s] 'city policy.'" *Id.* at 390. In other words, even drawing all inferences in Plaintiff's favor, it cannot be fairly said that "the failure to provide proper training" to Officers Winters and McClaine "represent[s] a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.*; *see also Dorman v. District of Columbia*, 888 F.2d 159, 165 (D.C. Cir. 1989) (municipality not liable as a matter of law for inadequacy of police training where "there is

no evidence of a *conscious choice* or a *policy* of deliberate indifference") (emphasis in original).[7]

Each of Plaintiff's remaining claims, intentional infliction of emotional distress (Count II), gross negligence (Count III), and negligent supervision and training (Count IV), assert violations of D.C. law. 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over non-federal law claims if "the district court has dismissed all claims over which it has original jurisdiction."[8]  "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009). The Supreme Court has instructed that "[c]ertainly, if the federal claims [supporting supplemental jurisdiction] are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). That being the case here, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining local law claims. Plaintiff's local law claims will be dismissed without prejudice.

---

[7] For the same reasons, Plaintiff cannot hold D.C. liable under § 1983 for any MPD officer's failure "to perform CPR," "to expeditiously obtain assistance from Emergency Medical Services," or "to maintain and operate the video surveillance system." Pl.'s Opp'n at 1-2. Plaintiff has not proffered evidence that any one of those failures is attributable to a conscious choice or a policy of deliberate indifference on D.C.'s part. Indeed, at least with respect to the failure to perform CPR, Plaintiff acknowledges that the officers did not act in accordance "with the General Orders of the MPD." *Id.* at 2.

[8] While Plaintiff is a resident of Maryland, Mr. Powers was a D.C. resident and Plaintiff brings this action on behalf of herself individually and as the personal representative of Mr. Powers' estate. Accordingly, the Court does not have diversity jurisdiction over this matter. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent").

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant D.C.'s alternative motion for summary judgment [Dkt. # 89] on Plaintiff's § 1983 claim (Count I), and will decline to exercise supplemental jurisdiction over the remaining local law claims (Counts II-IV).  Plaintiff's local law claims will be dismissed without prejudice.  D.C.'s motion for judgment on the pleadings [Dkt. # 89] will be denied as moot.  A memorializing Order accompanies this Memorandum Opinion.


Date: October 5, 2009                                          /s/
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge